**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**CALIFORNIA VALLEY MIWOK TRIBE,**
**federally recognized tribe,**
14807 Avenida Central
La Grange, California 95329,

**MILDRED FERN BURLEY**
14807 Avenida Central
La Grange, California 95329,

**SILVIA FAWN BURLEY**
14807 Avenida Central
La Grange, California 95329,

**RASHEL KAWEHILANI REZNOR**
14807 Avenida Central
La Grange, California 95329,

**ANJELICA JOSETT PAULK**
14807 Avenida Central
La Grange, California 95329,

**TRISTIAN SHAWNEE WALLACE**
14807 Avenida Central
La Grange, California 95329,

**DAVEEN RONELLE WILLIAMS**
14807 Avenida Central
La Grange, California 95329,

**DARYL STEVEN BURLEY**
14807 Avenida Central
La Grange, California 95329,

**WILLIAM DAVID BURLEY JR. III**
14807 Avenida Central
La Grange, California 95329,

and,

**MICHELE DENISE BURLEY**
14807 Avenida Central
La Grange, California 95329,

**Civ No. -**

**COMPLAINT FOR DECLARATORY**

**AND INJUNCTIVE RELIEF**

v.

**DEB HAALAND, U.S. Secretary of the
Interior, in her official capacity,
Department of the Interior
1849 C Street, N.W.
Washington, DC 20240,**

**BRYAN NEWLAND, Assistant Secretary for
Indian Affairs, in his official capacity,
Department of the Interior
1849 C Street, N.W.
MS-4660-MIB
Washington, DC 20240,**

**AMY DUTSCHKE, Regional Director,
Bureau of Indian Affairs, in her official
capacity, Pacific Regional Office – Bureau of
Indian Affairs
2800 Cottage Way, Room W-2820
Sacramento, CA 95825,**

*Defendants.*

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.   Plaintiffs, the California Valley Miwok Tribe ("Tribe"), by and through and upon

resolution of its General Council, and select enrolled members—Mildred Burley, Silvia

Burley, Rashel Kawehilani Reznor, Anjelica Josett Paulk, Tristian Shawnee Wallace,

Daryl Steven Burley, William David Burley III, Michele Denise Burley, Daveen Ronelle

Williams (collectively the "Plaintiffs")—file this Complaint against Defendants the

United States Department of the Interior and agency officials including Deb Haaland,

Brian Newland, Amy Dutschke, Harley Long, Carol Rogers-Davis, and unknown Does 1-10, in their official capacities as officers and employees of the Bureau of Indian Affairs ("Defendants" or "BIA" or the "Agency"), and allege as follows:

2. Despite established legal precedent, its role as a trustee to Indian polities, and historical and binding Indian law principles that should guide the BIA's better judgment, Defendants have recklessly trod into the thicket of tribal membership head-long. Defendants devised an unprecedented method to undermine tribal sovereignty by employing a regulatory process that has long deviated from the bedrock notice-and-comment rulemaking requirements of federal law while also violating the United States Constitution.

3. Specifically, Defendants' actions overstep the boundary into intratribal matters and unnecessarily interfere with an Indian tribe's right to self-government and self-determination. They achieve this by employing a regulatory procedure that was promulgated without notice-and-comment, and by using those regulations to determine ancestral and race-based criteria for the Agency to select individuals it deems to meet Agency-created membership criteria, rather than that based on tribal law. These selected individuals are then permitted to participate in the formation of a tribal constitution and tribal law for an already existing federally recognized Indian tribe.

4. Such actions contravene the notice-and-comment rulemaking mandate of the Administrative Procedure Act.   Furthermore, Defendants' actions also violate the Fourteenth and Fifteenth Amendments of the U.S. Constitution by establishing a governmentally determined race-based qualification for participation in the creation of

tribal law, governing documents, and in an electoral, federally administered referendum for the "reorganization" or "organization" of a federally recognized tribal government's constitution or governing documents.

5.  Over nearly twenty years, and as addressed in several lawsuits, the Agency has taken numerous actions with respect to the California Valley Miwok Tribe.   However, no regulation, statute, court order, or judgment mandates or authorizes Defendants to utilize the "Certificate of Degree of Indian Blood" form (sometimes called a "CDIB card"), or the Agency's related unpublished procedures. There is no authority permitting the Agency to use those procedures or rely on Certificate of Degree of Indian Blood information to determine whether an individual, regardless of their membership status in an Indian tribe, meets the Agency-created ancestral lineage criteria sufficient to participate in the "organization" or reorganization of a *currently* federally recognized Indian tribe.

6.  The use of the Certificate of Degree of Indian Blood has been widely criticized since its introduction and, notably, no regulation dictates its use or scope.

7.  For nearly four decades, Defendants have bypassed notice and-comment rulemaking regarding the Certificate of Degree of Indian Blood, despite recognizing its necessity for legitimizing any use of Certificate of Degree of Indian Blood.   In the early 2000s, over a span of more than dozen years, Defendants attempted to promulgate regulations concerning the Certificate of Degree of Indian Blood but ultimately abandoned these efforts.

8.  Simply put, no authority mandates or permits Defendants to use the Certificate of Degree

of Indian Blood form, nor Defendants' unpublished Certificate of Degree of Indian Blood procedures and racial criteria, to determine whether any individual meets the federally established ancestral-lineage-criteria sufficient to participate in the reformation of a *currently* federally recognized Indian tribe. Defendants' procedure bears a disturbing resemblance to the infamous and reprehensible, "scratch test" employed by the BIA to access whether "Indians" were "civilized enough" to manage their own property during the Allotment Era over a century ago.

9.   Even if the Certificate of Degree of Indian Blood form and its related procedures could be justified for determining an individual's compliance with federally established ancestral lineage criteria sufficient for participating in the reformation of a *currently* federally recognized Indian tribe, Defendants have violated the Administrative Procedure Act by not promulgating regulations for use of the Certificate of Degree of Indian Blood in the manner described in this matter or in *any process.*

10.  This Court must conclude that use of the Certificate of Degree of Indian Blood, both generally, and in this instance, contravenes the Administrative Procedure Act's mandate that such rules be promulgated in accordance with notice-and-comment rulemaking.

11.  This Court should halt Defendants' unconstitutional racial practices against Indigenous peoples before the BIA extends a legacy of oppression that is antithetical to contemporary federal policies and Supreme Court precedent.

**JURISDICTION**

12.  This Court has jurisdiction under Article III, section 2, of the United States Constitution and under 28 U.S.C. § 1331 because the claims in this action arise under the Constitution

5

and laws of the United States including under federal common law.

13. Declaratory relief is authorized pursuant to the Declaratory Judgments Act, 28 U.S.C.§§ 2201-2202, and the All Writs Act, 28 U.S.C. § 1651.

14. The actions and decisions of Defendants are reviewable under the Administrative Procedure Act, 5 U.S.C. §§ 553 and 701-706 ("APA"). Specifically, Defendants have consented to suit, the Defendant's actions are reviewable by the Court, and a remedy is available under the various provisions of the APA, including 5 U.S.C. § 702 (providing for judicial review of agency action under the APA), 5 U.S.C. § 704, 5 U.S.C. § 705, and 5 U.S.C. §§ 706(2)(A), 706(2)(B), and 706(2)(C). In reviewing Defendants' actions this Court "shall decide all relevant question of law, interpret constitutional and statutory provisions and determine the meaning of applicability of the terms of an agency action."

## VENUE

15. Venue is proper in the District of Columbia under 28 U.S.C. § 1391(e) because the Defendant officials reside in this district and the challenged agency decision was made in this district. *See generally, Alabama v. U.S. Army Corps of Eng'rs*, 304 F. Supp. 3d 56, 62 (D.D.C. 2018).

16. There is a strong nexus of the claims at issue in this case to the District of Columbia because Plaintiff's claims here "focus on the interpretation of federal statutes." *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 128-29 (D.D.C. 2001).

17. Furthermore, "[t]he Government cannot reasonably claim to be inconvenienced by litigating in this district; after all, this is its home forum." *Stewart v. Anzar*, 308 F. Supp. 3d 239, 248 (D.D.C. 2018).

18. The interpretation of the Administrative Procedure Act, Indian Reorganization Act (IRA), the Agency's statutory authority, and the Plaintiffs' constitutional arguments and rights under the Constitution have broad-reaching, national policy implications and therefore the Plaintiffs' choice of venue has a substantial nexus to Defendants headquarters federal district court.

19. Therefore, the venue is proper in this Court.

## PARTIES

20. California Valley Miwok Tribe is a federally recognized Indian tribe appearing on all annual announcements since the enactment of P.L. 103-454, 108 Stat 4791 (1994) as well as in United States Federal Register notices reporting a government-to-government relationship with and extending services to Indian tribes, dating back to 1972.   *See* "American Indians and Their Federal Relationship, Department of Interior," BIA (1972); *see also* Notice, Indian Tribal Entities that have a Government-to-Government Relationship with the United States, 44 Fed Reg 7235, 7236 (Feb. 6, 1979), EX 3 60 Fed. Reg. 9250 (Feb. 16, 1995); 67 Fed. Reg. 46328, 46328 (Jul. 12, 2002) (formerly the Sheep Ranch Rancheria of Me-Wuk Indians of California); 89 Fed. Reg. 944, 944 (Jan. 8, 2024). *See also,* Exhibit 1 (Letters of May and June 2002 between tribe and BIA following procedure that a recognized tribal government provides notice to the United States of its name change). The United States conferred tribal status and officially recognized the Tribe's organization as a distinct political entity in 1935. *See California Valley Miwok Tribe v United States,* No. Civ. S-A2-09L2 FCD GCH at 2 (Memo & Order Jul 1, 2004).

21.     The Tribe was not terminated under the California Rancheria Act, Pub. L. No. 85-671, 72 Stat. 619 (1958). The United States has represented in various court filings that the Tribe was not terminated. *See, e.g.*, *California Valley Miwok Tribe v United States* No. Civ. S-A2-09L2 FCD GCH, n.4 (Memo & Order Jul 1, 2004).

22.     The United States Circuit Court for the District of Columbia noted that the United States accepted one or more individual Plaintiffs as members of the Tribe. *See Cal. Valley Miwok Tribe v. United States*, 515 F.3d 1262 (D.C. Cir. 2008).

23.     The Tribe is made up of duly enrolled members pursuant to the Tribe's enrollment ordinance. Those identified in the following paragraphs have chosen to participate in this matter.

24.     Plaintiff Mildred Burley is a duly enrolled member of the Tribe pursuant to the Tribe's enrollment ordinance. Mrs. Burley is a full-blooded Miwok Indian and is one of the last known speakers of the Miwok language in North America.

25.     Plaintiff Silvia Burley is a duly enrolled member of the Tribe pursuant to the Tribe's enrollment ordinance and governing document. Ms. Burley has also been recognized as a member and leader of the Tribe by both Defendants and courts.

26.     Rashel Kawehilani Reznor is a duly enrolled member of the Tribe pursuant to the Tribe's enrollment ordinance and governing document.

27.     Plaintiff Anjelika Paulk is a duly enrolled member pursuant to the Tribe's enrollment ordinance and governing document.

28.     Tristian Shawnee Wallace is a duly enrolled member pursuant to the Tribe's enrollment ordinance.

29.    Daryl Steven Burley is a duly enrolled member pursuant to the Tribe's enrollment ordinance.

30.    William David Burley III is a duly enrolled member pursuant to the Tribe's enrollment ordinance.

31.    Michele Denise Burley is a duly enrolled member pursuant to the Tribe's enrollment ordinance.

32.    Daveen Ronelle Williams is a duly enrolled member pursuant to the Tribe's enrollment ordinance.

33.    Defendant United States Department of the Interior is a department of the executive branch of the United States Government reporting directly to the President of the United States.

34.    Defendant Deb Haaland is the Secretary of the Department of the Interior ("Secretary") and is sued in her official capacity.

35.    Defendant Brian Newland is the Assistant Secretary for Indian Affairs in the Department of the Interior overseeing the Bureau of Indian Affairs ("AS-IA") and is sued in his official capacity.

36.    Defendant Amy Dutschke is the Pacific Region Director for the Bureau of Indian Affairs reporting to Assistant Director – Indian Affairs Brian Newland ("Director") and is sued in her official capacity.

## FACTS AND GENERAL ALLEGATIONS

37.    Plaintiffs incorporate paras. 1-14 in these facts and general allegations.

38.     The California Valley Miwok Tribe is recognized by the United States as a sovereign

Indian tribe.

39.     The Tribe's federal recognition predates the Indian Reorganization Act.    On April 5,

1916, the United States acquired approximately one acre of land at Sheep Ranch,

California, for homeless Indians, using funds allocated by Congress for such purchases.

40.     In 1934 Congress enacted the Indian Reorganization Act, Pub. L. 73-383, 48 Stat. 984

(1934) ("IRA"), "to conserve and develop Indian lands and resources; to extend to

Indians the right to form business and other organizations; to establish a credit system for

Indians; to grant certain rights of home rule to Indians; to provide for vocational

education for Indians; and for other purposes."

41.     The Tribe withstood attempts by the United States Bureau of Indian Affairs ("BIA")

efforts to terminate it under the California Rancheria Act, Pub. L. 85-671, 72 Stat. 619,

85 Cong. (1958).

42.     "Congress has expressly repudiated the policy of terminating recognized Indian

tribes…."    Pub. L. 103-454, § 103(5), 108 Stat. 4791 (1994), 25 U.S.C. § 479a Note.

Absent an Act of Congress to the contrary, Indian tribes retain their inherent sovereign

authority to establish their own membership criteria and to admit or deny membership to

any individual.    No Act of Congress divested the California Valley Miwok Tribe of

California of its sovereign right to establish membership criteria or to admit or deny

membership to any individual.

43.     The United States has acknowledged certain individual Plaintiffs as possessing "Indian status" recognizing their enrollment as tribal members and engaging in federal relations with them periodically.

44.     Defendants accepted the Tribe's June 2002 resolution, by and through several Plaintiffs in this matter, which changed the name of the Tribe from Sheep Ranch Rancheria to the California Valley Miwok Tribe.

45.     Furthermore, Defendants have engaged relations with the Tribe, through several Plaintiffs in this matter, by entering into multiple contracts under the Indian Self Determination Act, Pub. L. 93-638 ("ISDA" or "638").

46.     Under Section 16 of the Indian Reorganization Act, an Indian tribe "shall have the right" to reorganize its government by adopting "an appropriate constitution and bylaws." 25 U.S.C. § 5123(a).

47.     Technical revisions to IRA Section 16 in 2004 added subdivision (h) to expressly acknowledge that Indian tribes retain the sovereign right to be governed by traditions and customs, written documents of their choosing, or any other means of political organization.   *See* 25 U.S.C. § 5123(h).

48.     Defendants promulgated regulations to implement IRA Section 16 at Title 25, Part 81, of the Code of Federal Regulations ("CFR").   According to these regulations, a request for the Secretary's assistance in reorganizing the Tribe's government must be made by the tribal government itself or a majority of the members of the Tribe. 25 C.F.R. §§ 81.6, 81.57(b).

49.    Based on information and belief, Defendants currently lack a request from the Tribe or a valid request from any petitioner to conduct or assist in the conducting of a Secretarial Election under IRA Section 16 or according to 25 CFR Part 81.

50.    From October 2021 until January 2023, Defendants held two organizational meetings and introduced a process by which individuals believing they had ancestral ties to the Tribe could submit application using the Certificate of Degree of Indian Blood form, along with related processes described by Defendants.

51.    On or about, October 29, 2021, the Tribe discovered that the Bureau of Indian Affairs, Central California Agency posted a Public Notice to its internet website. That Notice purports to call an "initial meeting" to "determine eligibility to participate in organization of the Tribe" on or about November 30, 2021, at 1:30 p.m. Exhibit 2.

52.    On November 30, 2021, the Agency held an online meeting to describe the process it will follow to organize California Valley Miwok Tribe under the Indian Reorganization Act to draft a tribal constitution.

53.    The Agency stated that its effort to organize the California Valley Miwok Tribe under an IRA constitution is pursuant to directives contained in the 2015 Decision by then-Assistant Secretary – Indian Affairs Kevin Washburn, which set forth criteria to determine which persons are eligible to participate in organization of the Tribe and set a procedure for such organization.

54.    Based on information known to the Plaintiffs, at or about the time of the November 20, 2021, meeting Defendants described the following procedures:

a. Persons claiming to be eligible for membership in the Tribe must download a Certificate of Degree of Indian Blood ("CDIB") form from the Agency's website, complete the form, and submit the form with supporting documentation to the Agency by January 14, 2022.

b. The Agency will determine whether the person has demonstrated lineal descent from:

    i. Persons listed on the August 13, 1915, Census of Indians at or near Sheep Ranch, Calaveras County, California;

    ii. Descendants of Mabel Hodge Dixie; or

    iii. Jeff Davis, listed on the June 6, 1935, Approved List of Voters for Indian Reorganization Act of Sheep Ranch Rancheria, Calaveras County, California.

c. If the Agency determines a person to be ineligible, under the above criteria, a person may appeal against that decision under the disenrollment regulations of 25 C.F.R. Part 62.

d. The Agency will hold a meeting of all persons it independently determines to be eligible for membership for the purposes of drafting and ratifying a constitution.

55.    At the November 2021 meeting BIA described the process it will use to organize the Tribe under an IRA Constitution.

    1) Each individual wanting to be an eligible participant must submit a Certificate of Degree of Indian Blood application to BIA by January 14, 2022. The CDIB will be used to determine lineal descendancy.

2) BIA's evaluation of the CDIB must show the applicant is a lineal descendant from one of three groups:

   a. An individual on the August 13, 1915, census;

   b. An individual on the June 6, 1935, approved list of voters (only Jeff Davis); or

   c. Descendants of Mabel Hodge Dixie.

3) The Superintendent will issue a determination of eligibility to each applicant based on the CDIB within sixty days.

4) An applicant receiving an unfavorable determination will have thirty days to appeal against the decision following the procedures in 25 CFR Part 62.

5) BIA will organize a meeting of eligible participants for a Secretarial Election under 25 CFR Part 81.

56. Procedures described by Defendants on or about November and December 2021 are neither established in the 2015 Washburn Decision, any other decision nor do they conform to the BIA's regulations under 25 C.F.R. Part 81 for Secretarial Election Procedures and are not found in any publicly available document.

57. All Plaintiffs submitted their applications on or about January 14, 2022, for the second time in two years.

58. The Agency received an unknown number of applications on or before January 12, 2022.

59. The Agency did not issue a Certificate of Degree of Indian Blood determination in accordance with any previously used form or format or procedure to the Plaintiffs.

60.    The Agency instead issued letters to individuals that submitted applications stating that

such individuals were, or were not, eligible to participate in the Agency's organization

process.    Those letters stated that individuals who were determined not to be eligible to

participate may appeal to the Agency's decision under 25 CFR Part 61.    True and

correct copies of an exemplar letter the Agency issued to Plaintiffs are attached hereto as

Exhibits 3.

61.    The Agency received and responded to an unknown number of appeals from the letters

the Agency issued in response to individuals that submitted Certificate of Degree of

Indian Blood forms but were determined by the Agency to be not eligible to participate in

the Agency's organization process.

62.    The Agency continues to possess all Plaintiffs' application documents, from both

instances that Plaintiffs submitted application without returning them to Plaintiffs.

63.    On or about May 31, 2022, Assistant Secretary – Indian Affairs issued a Letter,

purportedly modifying the 2015 Decision.

64.    On or about September 30, 2022, the Central California Agency ("Agency") issued a

public notice that it "plans to assist the California Valley Miwok Tribe, aka Sheep Ranch

Rancheria (Tribe) with organization of a formal government structure by individuals who

are eligible to participate in such a process."

65.    In that same announcement, the Agency required individuals to register for a virtual

meeting held on November 28, 2022, where the Agency would "provide information

concerning the organizing process and procedures that will be used to determine

eligibility to participate in organization of the Tribe based on applicable Department and

Bureau decisions regarding organization of the Tribe."    No reference to the applicable decisions was provided.    The agency also did not cite any statutory or regulatory authority to conduct the publicly noticed process.

66.    The Agency held a virtual meeting on November 28, 2022.

67.    On November 29, 2022, the Agency issued a public notice that the Agency "plans to assist the [Tribe] with organization of a formal government structure by individuals who are eligible to participate in such a process, consistent with the December 30, 2015, decision by the Assistant Secretary – Indian Affairs, as revised May 31, 2022, by the Assistant Secretary – Indian Affairs."    The Agency required "a descendant of a person listed on [one of four government documents that] want to be considered for participation in the organization process [to submit] the Certificate of Degree of Indian Blood (CDIB) form along with supporting documentation…."    The Agency required all such persons to "show lineal descendancy" from one of four groups or individuals.    The Agency established a deadline for all submissions on January 12, 2023. Again, the agency did not cite any statutory or regulatory authority to conduct the process or to use Certificate of Degree of Indian Blood in the process.    A true and correct copy of the public notice is attached hereto as Exhibit 4.

68.    On July 31, 2023, the Agency issued a public notice that it intended to hold the "next organizational meeting for the [Tribe]" on August 30, 2023, "in person at the Calaveras County Fairgrounds, with a virtual option for those who cannot attend in person."    The Agency limited participation in the meeting to those individuals who produced a "photo ID" and who had received a letter from the Agency determining that the individual was

16

"eligible to participate."   The Agency further limited the opportunity to ask questions or make statements to "those eligible to participate in the Organization of the [Tribe]."   A true and correct copy of the public notice is attached hereto as Exhibit 5.   The Agency prohibited individual participants from being represented by counsel.

69.   The Agency stated its purpose for the August 30, 2023, meeting was "to discuss the process in which a proposed governing document will be developed to move forward to an eventual petition for a Secretarial Election."

70.   On August 30, 2023, the Agency held a meeting at the Calaveras County Fairgrounds, and virtually, for the purpose of establishing a process by which a proposed governing document would be developed in preparation for an eventual petition for Secretarial Election.

71.   The Agency controlled the format, content, and subjects of the August 30, 2023, meeting. During that meeting the Agency:

    A.   Stated its decision that the Agency would form a Constitution Committee from a list of individuals the Agency determined were eligible to participate in a Secretarial Election who expressed interest in participating on the Constitution Committee before the end of the meeting.

    B.   Stated its decision that the Agency would select, at random, individuals to participate on the Constitution Committee by September 8, 2023.

    C.   Stated its decision that the Agency would participate in meetings of the Constitution Committee.

D.   Stated its decision that the Agency would direct the Constitution Committee to consider one of two starting places for drafting a governing document, and that individuals the Agency determined were eligible to participate in a Secretarial Election may indicate a preference for one of those two starting places before the end of the meeting.

E.   Stated its decision that the governing document drafted by the Constitution Committee would be circulated to individuals the Agency determined were eligible to participate in a Secretarial Election.

F.   Stated its decision that the Agency would use the governing document drafted by the Constitution Committee as the foundation for a petition for a Secretarial Election.

G.   Stated its decision that the remedy for individuals objecting to the governing document drafted by the Constitution Committee was to not sign a petition for Secretarial Election. *See* Exhibit 6 at page 23. (transcript of Aug. 30, 2023, Organizing Meeting).

72.   On September 14, 2023, the Plaintiffs, through counsel, requested the names of individuals the Agency appointed to the Constitution Committee and information related to the Constitution Committee's meetings.   The Plaintiffs also requested copies of the presentation and transcript from the August 30, 2023, meeting.   Defendants replied on September 15, 2023, but refused to answer Plaintiffs' questions about the Constitution Committee.

73.    On September 18, 2023, the Plaintiffs, through counsel, again requested the names of individuals the Agency appointed to the Constitution Committee and information related to the Constitution Committee's meetings.    Defendants did not respond.

74.    On September 29, 2023, the Plaintiffs, through counsel, issued a final request for the names of individuals the Agency appointed to the Constitution Committee and information related to the Constitution Committee's meetings.    Almost two weeks later, Defendants replied that no individuals had been appointed to the Constitution Committee but withheld any further information.

75.    In and or around January 2024, by Defendants selected eight (8) individuals for its constitutional committee, and on about January 18, 2024, Defendants held a virtual meeting of its selected individuals of the constitutional committee to "Develop Proposed Constitution."    Exhibit 7.

76.    No regulation dictates the use or scope of Certificate of Degree of Indian Blood, defines Defendants' procedures for issuing a CDIB, or describes the criteria Defendants apply.

77.    For almost four decades, Defendants have never completed Notice and Comment Rulemaking regarding any process for the use of Certificate of Degree of Blood. Defendants are aware that rulemaking is necessary to legitimize the use of Certificates of Degree of Indian Blood for *any* purpose.    Beginning in approximately 1999, Defendants attempted to promulgate regulations concerning the Certificate of Degree of Indian Blood, but they ultimately abandoned the effort by 2014. At no time during the Defendants' effort to promulgate regulations did Defendants propose rules for using the Certificate of Degree of Indian or Alaskan Blood for the purposes alleged in this matter.

19

78.  In 1986, the Interior Board of Indian Appeal found that notice that notice and comment rulemaking is necessary to make the CDIB procedures lawful. *Underwood v Dep. Asst. Sec.*, 14 IBIA 3 (1986).   The Agency is well-aware that the Interior Board of Indian Appeals has found that that CDIBs were solely to facilitate determining eligibility of persons for federal programs and its use even for purposes that arose out of that use and practice was questionable without notice and comment rulemaking.

79.  Indeed, the BIA lacks the authority to issue an order or directive to use the Certificate of Indian Blood procedure without notice and comment rulemaking, as neither Supreme Court precedent nor any express act of Congress grants it this power.

80.  Nonetheless, the BIA now divines from the penumbras of various documents and judicial *dicta*, that the BIA <u>must</u> "reorganize" the Tribe through an off-brand use of the Certificate of Degree of Indian Blood procedure. Defendants required individuals to involuntarily submit Certificate of Degree of Indian Blood applications for Defendants' review to determine whether they may participate in reformation of the Tribe's government.

81.  The use of the Certificate of Degree of Indian Blood has long been criticized for its use generally and Defendants are well aware that notice and comment rulemaking are necessary to make its use lawful for *any* purpose. There are no regulations governing Defendants' use of a federally created Certificate of Degree of Indian Blood to determine ancestral lines for participation in federally supervised electoral processes or to determine ancestral participation in tribal processes to reform the government of a federally recognized Indian tribe.

82.  The Certificate of Degree of Indian Blood is an internal device of the Bureau of Indian Affairs created and implemented without public notice or comment and in this case is a racial classification chosen by Defendants not the Tribe itself.

83.  There is no general congressional authority for Defendants to issue Certificates of Degree of Indian Blood, instead Congress has, from time-to-time provided that eligibility for benefit is based on a specific degree of blood quantum in which Defendants have chosen to implement the statutory directive by issuing a Certificate of Degree of Indian blood.

84.  There is no reference to "Certificates of Degree of Indian Blood" at all in Title 25 of the Code of Federal Regulations or in the Statutes at Large.

85.  Because there is no mandate by Congress to the BIA or any agency to create or continue to issue Certificates of Degree of Indian Blood for the purpose of choosing participation in federally supervised activities based on race, such action is violative of the Constitution.

86.  A determination of ancestry may be implied by congressional definitions of "Indian" and "Alaska Native" that use blood quantum. None of those definitions generally apply to whether an individual may be a member of the Tribe, and none of those definitions apply to a tribal request for Secretarial election under the IRA. In other words, the United States designation of "Indian status" is a derivative of the hallmarks of an Indian tribal entities' determination, under tribal law, that an "Indian" is a member of a polity with which the United States is conducting relations.

87.  No provision of the current Bureau of Indian Affairs Manual refers to the policy or procedures of the Certificate of Indian Blood for purposes described herein.

88.   The Agency has, at times, represented that the Certificates of Degree of Indian Blood are granted for the convenience of the government, solely at the assistant secretary's discretion, to facilitate its work in determining eligibility of persons for federal programs. *See generally Underwood v. Deputy Asst. Sec.*, 14 IBIA 3 (Jan 31, 1986).

89.   Since at least 1986 the agency knew that notice and comment rulemaking were required to use the Certificate of Degree of Indian Blood procedure for *any purpose*. "The procedures and rules by which this determination is made [using a Certificate of Degree of Indian Blood form], including the evidentiary standards employed, are known only by BIA, not by those persons affected. These are truly 'hidden regulations,' available only to and known by only the initiated few." *See generally Underwood v. Deputy Asst. Sec.*, 14 IBIA 3, 21 (Jan 31, 1986).

90.   The Agency pursued notice and comment rulemaking related to the collection of information under a Certificate of Degree of Indian Blood process, proposing a rule and seeking comment April 18, 2000. Certificate of Degree of Indian or Alaska Native Blood, 65 Fed. Reg. 20775 (Apr. 8, 2000).

91.   Despite issuing the draft and seeking comments, the BIA has never finalized those regulations.

92.   In 2003, the BIA extended the comment period due to requests from tribes and individuals. Certificate of Degree of Indian or Alaska Native Blood Information Collection, 68 Fed. Reg. 7800, 7800 (Feb. 18, 2003).

93.   By 2006, the BIA stated the further delay was due to "various reasons." Notice of Submission of Information Collection, 73 Fed. Reg. 8054, 8055 (Feb. 12, 2008);

Certificate of Degree of Indian or Alaska Native Blood Information Collection, 71 Fed. Reg. 2268, 2268 (Jan. 13, 2006).

94.    The 2006 Federal Register notice states "This collection was originally approved and assigned OMB Control No. 1076–153 when it was submitted with a proposed rulemaking, 25 CFR Part 70, which was published in the Federal Register on April 18, 2000 (66 FR 20775). The proposed rulemaking has not been finalized due to various reasons. **We received numerous negative comments from individuals and Indian tribal governments.** We, therefore, are rewriting the proposed rule." [emphasis added].

95.    In 2007, Defendants again request further comment for the Certificate of Degree of Indian Blood proposed rule. "One comment was received during or before the close of the public comment period of December 31, 2007. Comment: We received one comment regarding (1) who needs to fill out the form? Is it to be used only for new recognition applications or for all enrolled persons; (2) does this establish a new ''blood'' requirement, i.e., 1⁄8 or 1⁄4; and (3) do not reinvent Enrollment for those who have already done it but have reasonable requirements for new enrollees or those denied." The Agency then responds to the comment, stating, among other things "The Certificate of Degree of Indian or Alaska Native Blood does not establish a new ''blood'' requirement. Rather, CDIBs are used by individuals who want to document their Indian or Alaska native ancestry and degree of Indian blood. **CDIBs do not establish membership in any Indian or Alaska Native tribe.** (3) A CDIB is not an enrollment document. Tribes determine their own membership, and the BIA does not enroll tribal members." [emphasis added].

96.     There has been no federal action to move the regulations forward, and even requests for renewals of collection disappeared from the Federal Register after 2014.

97.     While the Certificate of Degree of Indian Blood form and processes are used for other purposes including as required by existing tribal law to assist specific tribal government to determine membership eligibility, it has not been used by the United States without a federal statute or tribal law authorizing its use.

98.     The Department of the Interior's semi-annual rulemaking agendas between 2000 and 2011 included the proposal to adopt regulations regarding Certificate of Degree of Indian and Alaska Native Blood. The effort was finally withdrawn on Feb. 1, 2011. All the way up until the Fall 2020 semi-annual agenda, Defendants reported that it had "not yet determined" legal authority for the rulemaking. Moreover, Defendants responded "none" to "Information Collection Request" forms to OMB in 2020 and 2021 when queried about "Authorizing Statutes" or "Citations for New Statutory Requirement. Exhibit 8.

99.     Defendants are aware of the unreliability of Indian blood quantum information. In the background section of the 2000 draft regulations, BIA noted:

> "Some early Bureau and tribal records do not indicate degrees of Indian blood or are inconsistent. Changes and corrections have been made to these records without an indication of who made the change or the basis upon which they were made. Errors occurred when individuals submitted delayed or amended birth certificates and delayed death certificates as documentation for Indian blood certification. Amended birth documents often contain unreliable birth data, or data that was received long after the original birth certification has been issued." 65 Fed. Reg. at 20776.

100.    Defendants' use of Certificate of Degree of Indian Blood procedures to determine eligibility of individuals to reorganize the California Valley Miwok Tribe is inconsistent

with the little publicly available information about the intended use of Certificates of Degree of Indian Blood in this matter. And, it is at best, an off-brand use of the Certificate of Degree of Indian Blood that constitutes a legal wrong suffered by the Plaintiffs requiring review by the Court because it (1) violates and impacts rights and privileges held by Plaintiffs, (2) violates the basic tenets of Indian affairs of self-government and self-determination afforded the Plaintiffs as members of the California Valley Miwok Tribe, a federally recognized Tribe, and (3) violates the U.S. Constitution.

101.    The Indian Reorganization Act and it accompanying regulations provides that:

> Any Indian tribe <u>shall have the right to organize</u> for its common welfare, and may adopt an appropriate constitution and bylaws, and any amendments thereto, which shall become effective when— (1) <u>ratified by a majority vote of the adult members of the tribe</u> or tribes at a special election authorized and called by the Secretary under such rules and regulations as the Secretary may prescribe; and (2) approved by the Secretary pursuant to subsection (d) of this section.

Indian Reorganization Act Section 16. [emphasis supplied].

102.    The IRA Section 19 states "The term "Indian" as used in this Act shall include all persons of Indian descent who are members of any recognized Indian tribe…."

103.    Plaintiffs admonish that each federally recognized Tribe "determines whether an individual is eligible for membership." *See https://www.doi.gov/tribes/enrollment* last visited March 26, 2024.

104.    Such an announcement by Defendants is consistent with the notion that "it is equally well settled that, absent Congressional restrictions, an Indian tribe has the power to determine its own membership, at least for purely internal purposes. *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 54-57 (1978).

105.    While, in the specific instance of membership determinations, it is well settled that

Congress may, and in some cases, has made membership determinations for purposes of

distribution of tribal property under the control of the United States no statute grants

Defendants authority to exercise its powers of control over membership

determinations.   *Martinez v. Southern Ute Tribe,* 249 F.2d 915, 920 (10th Cir. 1957),

cert. den., 356 U.S. 960, 78 S. Ct. 998, 2 L. Ed. 2d 1067, reh. den., 357 U.S. 924, 78 S.

Ct. 1374, 2 L. Ed. 2d 1376. More specifically, in this matter, no statute grants the use of

the Certificate of Degree of Indian Blood to determine participation by ancestry in a

process that is internal and inherently driven by tribal law to create tribal law and a new

governing document.

106.    In fact, Defendants' Certificate of Degree of Indian Blood application process has chosen

individuals that have not been members of the Tribe to participate in Defendants' process

to reform the Tribe.

107.    Upon information and belief, Plaintiffs have reason to believe that at least one individual

may be participating in Defendants' Certificate of Degree of Indian Blood application

process, despite the fact, based on the individual's own admission under oath in a court of

law, that he is not a member of the California Valley Miwok Tribe.

108.    Furthermore, upon information and belief, Plaintiffs have reason to believe that at least

one individual that is participating in Defendants' Certificate of Degree of Indian Blood

application process is not a member of the Plaintiff Tribe because that individual sought

enrollment in the California Valley Miwok tribe, pursuant to Plaintiff Tribe's enrollment

ordinance, in the mid-2000s, but later withdrew his application.

109. Plaintiffs have reason to believe that at least seven (7) individuals who have never been members of any Indian tribe, including Plaintiff Tribe, and were issued Certificate of Degree of Indian Blood determination letters under the Agency's Certificate Degree of Indian Blood process, in this matter—as described above—that purportedly entitles them to participate in reforming the Tribe's government ad create tribal law.

110. The Agency's use of the Certificate of Degree of Indian Blood to determine which individuals met Indian ancestral requirements determined *solely* by the Agency to participate in the reorganization, or organization, of the Tribe is the first time the Agency has used the Certificate of Degree of Indian Blood and its unnoticed processes for such purpose.

## FIRST CLAIM FOR RELIEF

### (Violation of the Administrative Procedure Act—Rule Making

### 5 U.S.C. §§ 553, 702, 704, & 706)

111. Plaintiffs incorporate by reference each fact and allegation in this Complaint.

112. Congress established the Administrative Procedure Act ("APA") to control agency rulemaking, adjudication, and other decision-making.

113. Under the APA, broadly applicable rules and regulations must be adopted through notice-and-comment rulemaking that enables public review of the agency's proposal and ensures the agency is accountable to public opinion.

114. The APA requires federal agencies to publish a "[g]eneral notice of proposed rule making" in the Federal Register and, after such notice, to "give interested persons an opportunity to participate in the rule making" through submission of comments, views, or

arguments.    5 U.S.C. 553(b), (c).    Section 553 reflects Congress's commitment to "public participation and fairness to affected parties."    *Dia Nav. Co. v. Pomeroy*, 34 F.3d 1255, 1265 (3d Cir. 1994) (quoting *Batterton v. Marshall*, 648 F.2d 694, 705 (D.C. Cir. 1980).

115.   Compliance with § 553 is essential to the scheme of administrative governance established by the APA. Procedures promulgated under § 553 reflect Congress's view that informed decision making requires agency decisions to afford interested persons an opportunity to communicate their views to an agency because openness, explanation, and participatory democracy in rulemaking assures legitimacy of administrative norms. *Transport Assoc. of America v. Dept. of Trans.*, 900 F.3d 369 (D.C. Cir. 1990).

116.   The use of Certificate of Degree of Indian Blood is not excepted under § 553(a) and rulemaking cannot be avoided under § 553(b)(A) because rights and interests of Plaintiffs as members of a federally recognized Indian tribe are at stake.

117.   Defendants have broadly applied and used the Certificate of Degree of Indian Blood for thousands of individual applicants over decades to assist in their determination of eligibility for statutory benefits and services that are based on Indian Status but never to determine whether individuals may participate in the formation of tribal law for an already federally recognized Tribe nor for participation in an Agency-assisted organization of a tribal government nor has the BIA ever used the CDIB form or procedures to determine if the individuals have Indian status under tribal law.

118. Defendants required Plaintiffs and other individuals to submit an application for a Certificate of Degree of Indian Blood to participate in Defendants' Agency-initiated process to form or reform the Tribe's governance system.

119. The use of the Certificate of Degree of Indian Blood as alleged in this Complaint constitutes a "rule" under the Administrative Procedure Act.

120. Defendants have broadly applied and used the Certificate of Degree of Indian Blood form and the related unpublished procedures for thousands of individual applicants over decades to assist in Defendants' determination of eligibility for statutory benefits and services but never to determine ancestral lines to select individuals the Agency deems to meet Agency-created criteria to allow those individuals to participate in the formation of a constitution and tribal law for an already and currently federally recognized Tribe.

121. Defendants have not published rules or regulations pertaining to the Certificate of Degree of Indian Blood form or procedures through notice-and-comment rulemaking for any purpose.

122. There are also no published rules or regulations that apply the Certificate of Degree of Indian Blood to any part of the IRA, which forms the basis for an Indian tribe to request the Secretary to approve its form of government.

123. Defendants' requirement that individuals submit Certificate of Degree of Indian Blood applications was part of a process Defendants designed, without notice and comment rulemaking, to reform the California Valley Miwok Tribe's governance system under the Indian Reorganization Act or other law or policy.

124. Defendants' Certificate of Degree of Indian Blood form and related processes violate the Administrative Procedure Act because Defendants are applying general rules, requirements, and procedures without notice-and-comment rulemaking in what the Interior Board of Indian Appeals calls "hidden regulations."

125. The Agency's use of the Certificate of Degree of Indian Blood, without notice and comment rulemaking, is an underground regulation of "general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy' that impacts Plaintiffs' rights in violation of the Administrative Procedure Act, § 553.

**SECOND CLAIM FOR RELIEF**

**(Violation of U.S. Constitution Fourteenth (Equal Protection)**

**and Fifteenth Amendments (Race-Based voting preference))**

126. Plaintiffs incorporate by reference each fact and allegation in this Complaint.

127. "A tribe which has been recognized [by Congress or administrative procedures] may not be terminated except by an Act of Congress."   Pub. L. 103-454, 108 Stat. 4791, 103d Cong. (1994), Sec. 103(4).

128. The California Valley Miwok Tribe, formerly known as the Sheep Ranch Rancheria, was never terminated by an act of Congress including in accordance with the California Rancheria Act of 1958. Public Law 85-671(72 Stat. 619).

129. Federal recognition of an Indian tribe is based on political association, not race. Necessarily, membership or citizenship in an Indian tribe derives from the inherent political authority as sovereign polities separate from the United States. Thus, Indian

status is derived from political association is that which is recognized by the United

States vis-a-vis individuals.

130.   As the Supreme Court admonishes, "[a]ncestry can be a proxy for race." *Rice v.*

*Cayetano*, 528 U.S. 495, 496 (2000).

131.   Agency action that uses an individual's ancestry as a proxy for voter qualification, to

participate in an electoral event determined necessarily by Defendants, then organized and

administered by Defendants, based on a process that used ancestry to determine whether

an individual possesses Indian status violates the Fourteenth and Fifteenth Amendments to

the U.S. Constitution.

132.   Defendants request to non-Indians and non-Tribal Indians for completed Certificate of

Degree of Indian Blood applications including its form, as required to be certified as

voters in Defendant's novel reorganization or organization of an already federally

recognized Indian tribes fundamentally racialized action.

133.   The Supreme Court of the United States has held that non-federally recognized individuals

organized and funded by a state for purposes of a constitutional ratification vote may not

restrict eligibility to vote on the bases of race. *Rice v. Cayetano*, 528 U.S. 495 (2000). This

is especially the case when racialized categorization is not derived from an Indian tribal

entity's inherent power over members or citizens but that of the state or federal

government.

134.   Upon the BIA's determination that the California Valley Miwok Tribe was required to

organize or reorganize, Defendants created a process that mandated those that wished to

participate in the Agency-created process to submit an application that included a

completed Certificate of Degree of Indian Blood form which Defendants would use to determine tribal ancestry, and in turn, use that ancestry to determine eligibility to participate in the creation of tribal law and eligibility to vote for tribal governing documents in an election that Defendants would administer and oversee.

135. Defendants' process did not allow for members of the Tribe, regardless of race, to participate in Defendants' process for reforming the Tribe's government.

136. The Certificate of Degree of Indian Blood has no relation to whether an applicant individual has rights flowing from a federally recognized Indian tribe, a lawful political entity under tribal law, which includes that tribe's laws and rules related to membership.

137. Defendants' use of the Certificate of Degree of Indian Blood form and processes to identify individuals eligible to participate and vote in the creation of tribal law and formation of governing documents for the Tribe is a race-based federal determination prohibited by the Fourteenth and Fifteenth Amendments. Stated another way, at best use of the Certificate of Degree of Indian Blood form and processes is a *de facto* determination whether an applicant individual is or is not a non-Indian-individual ineligible for the benefits and services provided by the United States, and therefore ineligible to participate in the Agency's action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court:

1. Declare Defendants' use of the Certificate of Degree of Indian Blood, including its instructions, form, and procedures, in the absence of notice-and-comment rulemaking, to be a violation of the APA.

2.    Alternatively, declare that Defendants use of Certificate of Degree of Indian Blood procedures as described in this complaint, without notice and comment rulemaking, to determine eligibility to create a federally recognized Indian tribe's law and governance system violates the APA.

3.    Declare that Defendants have engaged in conduct that deprives Plaintiff Tribe of its rights by using the unnoticed Certificate of Degree of Indian Blood to determine ancestry to participate in a federal process to create a federally recognized tribe's tribal law and governance system depriving the federally recognized tribe, the California Valley Miwok Tribe, Fourteenth, rights under the U.S. Constitution.

4.    Declare that Defendants have engaged in conduct that deprives individual Plaintiffs of their rights   because the use of the Certificate of Degree of Indian Blood to determine ancestry for participation in a federal process to create law and governance for a federally recognized Indian tribe violates the individual Plaintiffs' Fourteenth and Fifteenth Amendment rights as Indians, as well as their Fourteenth Amendment rights as citizens of the United States to be free from unlawful and discriminatory action on bases of race.

5.    Declare and Order Defendants to cease and desist from using the Certificate of Degree of Indian Blood form or processes, for these purposes, without first completing notice-and-comment rulemaking and promulgating regulations in accordance with the APA.

6.    Declare and Order Defendants to cease and desist from using the Certificate of Degree of Indian Blood form or process to determine eligibility of individuals to create tribal law or a governance system for a federally recognized tribe.

7.    Issue injunctive relief to prevent further application of the CDIB criteria until a compliant

rulemaking process is completed.

8.      Order Defendants to set aside their actions to reorganize the Tribe using the Certificate of

Degree of Blood Quantum or related process used in this matter.


Dated:          April 2, 2024                        Respectfully submitted,

                                                     **PEEBLES KIDDER BERGIN & ROBINSON LLP**

                                          By:  _____
                                                     Peter D. Lepsch (D.C. Bar No. 495548)
                                                     Peebles Kidder Bergin & Robinson LLP
                                                     401 9th Street, NW, Ste. 700
                                                     Washington, DC 20015
                                                     (202) 450-5106
                                                     plepsch@ndnlaw.com

                                                     Patrick R. Bergin (D.C. Bar No. 493585)
                                                     Peebles Kidder Bergin & Robinson LLP
                                                     2020 L Street, Suite 250
                                                     Sacramento, CA 95811
                                                     (916) 441-2700
                                                     pbergin@ndnlaw.com

                                                     *Attorneys for the California Valley Miwok Tribe*