IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CALIFORNIA VALLEY MIWOK TRIBE, MILDRED FERN BURLEY, SILVIA FAWN BURLEY, RASHEL KAWEHILANI REZNOR, ANGELICA JOSETT PAULK, TRISTIAN SHAWNEE WALLACE, DAVEEN RONELLE WILLIAMS, DARYL STEVEN BURLEY, WILLIAM DAVID BURLEY JR. III, MICHELE DENISE BURLEY,** <br> Plaintiffs, <br><br> v. <br><br> **DEB HAALAND, SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,** <br> Defendants. | Case No. 1:24-cv-00947-TSC |

## <u>FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS</u>

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

Matthew Marinelli
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0293
Fax: (202) 305-0506
matthew.marinelli@usdoj.gov

*Attorney for Federal Defendants*

**Of counsel:**

Janet Fealk
Department of the Interior
Office of the Solicitor
Pacific Southwest Region
Sacramento, CA

**TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................... 1

II.    FACTUAL AND LEGAL BACKGROUND .......................................................... 3

    A.    The Indian Reorganization Act and Secretarial Elections ...................... 3

    B.    California Valley Miwok Tribe History ................................................... 5

    C.    Litigation history .................................................................................... 6

        1.    CVMT I and II ............................................................................ 7

        2.    2011 Decision and CVMT III .................................................... 8

        3.    The 2015 Washburn Decision .................................................... 9

        4.    The Burley Faction's Challenge to the Washburn Decision, including the process for determining eligibility to participate in CVMT organization ................................................. 9

        5.    The District of New Mexico's rejection of the Burley Faction's efforts to obtain the CVMT's funds......................................... 11

        6.    Challenges to Interior's attempt to conduct a Secretarial Election under the Washburn Decision in 2019 ...................................... 12

        7.    California State Court litigation ................................................ 13

        8.    Administrative appeals .............................................................. 13

        9.    The 2022 Newland Decision ..................................................... 14

        10.    Eligibility to Participate in CVMT Organization...................... 15

        11.    Current CVMT Organization Efforts ........................................ 17

III.    LEGAL STANDARD ............................................................................................ 18

IV.    ARGUMENT ......................................................................................................... 19

    A.    Plaintiffs' claims are barred by res judicata and collateral estoppel ..................... 19

        1.    Plaintiffs are estopped from challenging Federal Defendants' use of lineal descent to establish eligibility to participate in CVMT organization........................................................................ 21

i

2.      Plaintiffs' Complaint is founded on numerous arguments that Plaintiffs are barred from relitigating ........................................................ 25

B.      Plaintiffs lack standing ............................................................................ 26

C.      Plaintiffs' challenge is not ripe for review until Interior issues a final decision ................................................................................................... 30

1.      Plaintiffs' challenge is constitutionally unripe ......................................... 32

2.      Plaintiffs' claims are barred by the prudential ripeness doctrine ............. 34

D.      Plaintiffs' broad programmatic challenge to the absence of CDIB Regulations must fail ........................................................................... 37

V.      CONCLUSION ............................................................................................. 41

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Laboratories v. Gardner,*
  387 U.S. 136 (1967).................................................................................................. 31

*Adams v. FDIC,*
  2018 U.S. Dist. LEXIS 168143 (D.D.C. Sept. 20, 2018) ...................................... 21

*Aguayo v. Jewell,*
  827 F.3d 1213 (9th Cir. 2016) ................................................................................. 4

*Allen v. United States,*
  797 F. App'x 302 (9th Cir. 2019) ............................................................................ 3

*Am. Farm Bureau v. EPA,*
  121 F. Supp. 2d 84 (D.D.C. 2000) .......................................................................... 39

*Am. Forest Res. Council v. United States,*
  77 F.4th 787 (D.C. Cir. 2023)................................................................................. 40

*Am. Petroleum Inst. v. EPA,*
  683 F.3d 382 (D.C. Cir. 2012) ........................................................................... 34, 37

*Animals v. Salazar,*
  713 F. Supp. 2d 20 (D.D.C. 2010) .......................................................................... 27

*Anthony v. Int'l Ass'n of Machinists & Aerospace Workers Dist. Lodge,*
  *1*, 296 F. Supp. 3d 92 (D.D.C. 2017)...................................................................... 19

*Apotex, Inc. v. FDA,*
  393 F.3d 210 (D.C. Cir. 2004).................................................................................. 23

*Aranda v. Sweeney ("CVMT VIII"),*
  2019 U.S. Dist. LEXIS 64432 (E.D. Cal. Apr. 15, 2019)..................... 12, 14, 25, 33

*Asante v. Azar,*
  436 F. Supp. 3d 215 (D.D.C. 2020) ........................................................................ 37

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................................................ 19

*Atl. States Legal Found., Inc. v. EPA,*
  325 F.3d 281 (D.C. Cir. 2003)................................................................................. 35

*Bennett v. Spear,*
  520 U.S. 154 (1997)................................................................................................. 38

*Cal. Valley Miwok Tribe v. Cal. Gambling Control Comm'n,*
  2020 Cal. App. Unpub. LEXIS 642 (Cal. App. Jan. 29, 2020) .............................. 13

*Cal. Valley Miwok Tribe v. Cal. Gambling Control Comm'n*,
   231 Cal. App. 4th 885 (Cal. App. 2014) .......................................................................... 13

*\*Cal. Valley Miwok Tribe v. Haaland ("CVMT IX")*,
   2023 U.S. Dist. LEXIS 206197 (D.D.C. Nov. 17, 2023) ................................................ passim

*Cal. Valley Miwok Tribe v. Jewel ("CVMT IV")*,
   2016 U.S. Dist. LEXIS 147053 (E.D. Cal. Oct. 24, 2016) ...................................... 9, 10, 11, 12

*\*Cal. Valley Miwok Tribe v. Jewell ("CVMT III")*,
   5 F. Supp. 3d 86 (D.D.C. 2013) ........................................................................ 5, 6, 8, 26, 29

*\*Cal. Valley Miwok Tribe v. United States ("CVMT I")*,
   424 F. Supp. 2d 197 (D.D.C. 2006) ...................................................................... 4, 5, 6

*\*Cal. Valley Miwok Tribe v. United States ("CVMT II")*,
   515 F.3d 1262 (D.C. Cir. 2008) ........................................................................ passim

*\*Cal. Valley Miwok Tribe v. Zinke ("CVMT V")*,
   2017 U.S. Dist. LEXIS 84282 (E.D. Cal. May 31, 2017) ................................................ passim

*\*Cal. Valley Miwok Tribe v. Zinke ("CVMT VI")*,
   745 F. App'x 46 (9th Cir. 2018) .................................................. 10, 22, 23, 26, 29, 30

*Cherokee Nation v. Georgia*,
   30 U.S. (5 Pet.) 1, 8 L. Ed. 25 (1831) .......................................................................... 4

*Church v. Biden*,
   2022 U.S. Dist. LEXIS 85170 (D.D.C. May 11, 2022) .................................................... 34

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .......................................................................................... 27

*Common Cause v. Trump*,
   506 F. Supp. 3d 39 (D.D.C. 2020) ...................................................................... 35

*Corrales v. California Gambling Control Com.*,
   93 Cal. App. 5th 286 (Cal. Ct. App. 2023) .................................................................. 13, 14

*Ctr. for Biological Diversity v. U.S. Dep't of the Interior*,
   563 F.3d 466 (D.C. Cir. 2009) .......................................................................... 27

*Davis v. United States*,
   192 F.3d 951 (10th Cir. 1999) .......................................................................... 16

*Dewayne v. United States*,
   2023 U.S. Dist. LEXIS 49755 (D.D.C. Mar. 23, 2023) .................................................... 20

*Donelson v. U.S. Bureau of Prisons*,
   82 F. Supp. 3d 367 (D.D.C. 2015) ...................................................................... 19

*EEOC v. St. Francis Xavier Parochial Sch.*,
   117 F.3d 621 (D.C. Cir. 1997) .......................................................................... 19

iv

*Fed. Express Corp. v. Mineta*,
    373 F.3d 112 (D.C. Cir. 2004) ...................................................................... 36

*Franco v. Dist. of Columbia*,
    422 F. Supp. 2d 216 (D.D.C. 2006) .............................................................. 35

*Friends of Animals v. Haugrud*,
    236 F. Supp. 3d 131 (D.D.C. 2017) .............................................................. 35

*Full Value Advisors, LLC v. SEC*,
    633 F.3d 1101 (D.C. Cir. 2011) .................................................................... 35

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
    460 F.3d 13 (D.C. Cir. 2006) ........................................................................ 37

*Gezahey v. Greater Wash. Oncology Assocs.*,
    2023 U.S. Dist. LEXIS 26124 (D.D.C. Feb. 16, 2023) .................................. 19

*Habliston v. FINRA Regul., Inc.*,
    2017 U.S. Dist. LEXIS 11691 (D.D.C. Jan. 27, 2017) ................................... 33

*Hale v. Collis*,
    2022 U.S. Dist. LEXIS 135583 (D.D.C. July 29, 2022) ................................. 23

*Harrison v. Norton*,
    2004 U.S. App. LEXIS 9404 (D.C. Cir. 2004) ......................................... 24, 25

*Harrison v. Norton*,
    429 F. Supp. 2d 83 (D.D.C. 2006) ................................................................ 24

*Herbert v. Nat'l Acad. of Scis.*,
    974 F.2d 192 (D.C. Cir. 1992) ...................................................................... 18

*Karake v. U.S. Dep't of Homeland Sec.*,
    672 F. Supp. 2d 49 (D.D.C. 2009) ................................................................ 35

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ...................................................................................... 18

*Lujan v. Defs. Of Wildlife*,
    504 U.S. 555 (1992) ................................................................................. 27, 28

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ................................................................................. 39, 40

*Mohn v. United States*,
    2021 U.S. Claims LEXIS 2844 (Ct. Cl. Dec. 21, 2023) ................................. 24

*Moms Against Mercury v. FDA*,
    483 F.3d 824 (D.C. Cir. 2007) ...................................................................... 18

*Montana v. United States*,
    440 U.S. 147 (1979) ...................................................................................... 20

*Nat'l Ass'n of Home Builders v. Norton,*
    415 F.3d 8, (D.C. Cir. 2005) ............................................................ 38

*Nat'l Parks Conservation Ass'n v. U.S. Dep't of the Interior,*
    794 F. Supp. 2d 39 (D.D.C. 2011) .................................................. 41

*Nat'l Post Office Mail Handlers, etc. v. Am. Postal Workers Union,*
    907 F.2d 190 (D.C. Cir. 1990) ........................................................ 24

*Neitzke v. Williams,*
    490 U.S. 319 (1989) ........................................................................ 19

*Nevada v. DOE,*
    457 F.3d 78 (D.C. Cir. 2006) .......................................................... 36

*Norton v. S. Utah Wilderness All. ("SUWA"),*
    542 U.S. 55 (2004) .................................................................... 39, 40

*Ohio Forestry Ass'n v. Sierra Club,*
    523 U.S. 726 (1998) ................................................................ 34, 36

*Oregonians for Floodplain Prot. v. U.S. Dept. of Com.,*
    334 F. Supp. 3d 66 (D.D.C. 2018) .................................................. 29

*Papago Tribal Utility Auth. v. Fed. Energy Regul. Comm'n,*
    628 F.2d 235 (D.C. Cir. 1980) ........................................................ 31

*Perry v. U.S. Dep't of Educ.,*
    2021 U.S. Dist. LEXIS 15947 (D.D.C. Jan. 28, 2021) .................. 28

*Pub. Citizen v. Heckler,*
    653 F. Supp. 1229 (D.D.C. 1986) .................................................. 41

*Racing Enthusiasts & Suppliers Coal. v. EPA,*
    45 F.4th 353 (D.C. Cir. 2022) ........................................................ 38

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n,*
    324 F.3d 726 (D.C. Cir. 2003) ........................................................ 39

*Renne v. Geary,*
    501 U.S. 312 (1991) ........................................................................ 18

*Roberts v. Roth,*
    594 F. Supp. 3d 29 (D.D.C. 2022) .................................................. 32

*Rosales v. United States,*
    89 Fed. Cl. 565 (Fed. Cl. 2009) ...................................................... 26

*S. Pac. R. Co. v. United States,*
    168 U.S. 1 (1897) ............................................................................ 20

*Sandy Lake Band of Miss. Chippewa v. United States,*
    714 F.3d 1098 (8th Cir. 2013) .................................................... 3, 15

*Schuck v. Butz*,
    500 F.2d 810 (D.C. Cir. 1974) ........................................................................ 41

*Sheptock v. Fenty*,
    707 F.3d 326 (D.C. Cir. 2013) ........................................................................ 23

*Sparrow v. United Air Lines, Inc.*,
    216 F.3d 1111 (D.C. Cir. 2000) ...................................................................... 18

*State Farm Mut. Auto. Ins. Co. v. Dole*,
    802 F.2d 474 (D.C. Cir. 1986) .................................................................. 31, 36

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) .......................................................................................... 18

*Texas v. United States*,
    523 U.S. 296 (1998) ........................................................................................ 32

*Thomas v. United States*,
    189 F.3d 662 (7th Cir. 1999) ............................................................................ 4

*Torres Advanced Enter. Sols., LLC*,
    884 F.3d 338 (D.C. Cir. 2018) ........................................................................ 19

*Trudeau v. FTC*,
    456 F.3d 178 (D.C. Cir. 2006) ........................................................................ 38

*Twin Rivers Paper Co. v. SEC*,
    934 F.3d 607 (D.C. Cir. 2019) ........................................................................ 18

*Tyson v. U.S. Postal Serv.*,
    2024 U.S. Dist. LEXIS 57365 (D.D.C. Mar. 29, 2024) .................................. 23

*United States v. Jicarilla Apache Nation*,
    564 U.S. 162 (2011) .......................................................................................... 3

*Vietnam Veterans of Am. v. Shinseki*,
    599 F.3d 654 (D.C. Cir. 2010) ........................................................................ 28

*Warren v. Dist. of Columbia*,
    353 F.3d 36 (D.C. Cir. 2004) .......................................................................... 19

*Weissman v. Nat'l R.R. Passenger Corp.*,
    2020 U.S. Dist. LEXIS 136540 (D.D.C. July 31, 2020) .................................. 18

*Whale & Dolphin Conservation v. Nat'l Marine Fisheries Serv.*,
    573 F. Supp. 3d 175 (D.D.C. 2021) ................................................................ 41

*Williams v. Wilkie*,
    320 F. Supp. 3d 191 (D.D.C. 2018) ................................................................ 18

*Zukerberg v. D.C. Bd. of Elections & Ethics*,
    999 F. Supp. 2d 79 (D.D.C. 2013) ...................................................... 31, 32, 33

**Constitutions**

U.S. Const. art. III, §§ 1-2 ........................................................................... 18

**Statutes**

25 U.S.C. § 5123 ............................................................................................ 4

25 U.S.C. § 5123(c)(1) ................................................................................... 5

25 U.S.C. § 5125 ............................................................................................ 5

25 U.S.C. § 5129 ............................................................................................ 3

5 U.S.C. § 553 .............................................................................................. 41

5 U.S.C. § 553(e) .......................................................................................... 40

5 U.S.C. § 706(1) ..................................................................................... 39, 41

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................... 18, 41

**Regulations**

25 C.F.R Part 2 ............................................................................................ 35

25 C.F.R. § 81.19-20 ..................................................................................... 17

25 C.F.R. § 81.43-44 ........................................................................ 17, 33, 38

25 C.F.R. § 81.45(c) .......................................................... 17, 29, 31, 33, 36

25 C.F.R. § 81.62 .......................................................................................... 17

25 C.F.R. Part 81 ................................................................................ 32, 37, 38

25 C.F.R. Part 81 (2024) ................................................................................. 5

**Other Authorities**

30 Fed. Reg. 10,098 (Aug. 13, 1965) .............................................................. 5

44 Fed. Reg. 7235 (Feb. 6, 1979) ................................................................... 6

44 Fed. Reg. 7236 (Feb. 6, 1979) ................................................................... 6

Pub. L. No. 85-671, 72 Stat. 619 (1958) ........................................................ 5

## I.       INTRODUCTION

For over twenty years, Plaintiff Silvia Burley and her family members (the "Burley Faction" or "Plaintiffs") have sought control of the California Valley Miwok Tribe ("CVMT") and opposed the greater CVMT Community's efforts to organize under the Indian Reorganization Act ("IRA"). The Burley Faction's efforts have been rejected by three United States District Courts and two United States Courts of Appeals in nine separate opinions. And on two prior occasions, the Burley faction unsuccessfully sought (as it does now) to halt interim steps that might lead to an election on a CVMT Constitution and finally settle decades-long issues surrounding CVMT organization. The third time is not the charm.

Plaintiffs' present case challenges the process by which Federal Defendants identified individuals as eligible to participate in CVMT's initial governmental organization. That process, under which applicants must show that they are descended from specific Miwok Indians who lived in Calaveras County, California, was put into place by Assistant Secretary-Indian Affairs ("AS-IA") Kevin Washburn in 2015 ("Washburn decision").[1] Plaintiffs now claim that: 1) Federal Defendants were required to complete notice and comment rulemaking prior to collecting such genealogical information through a Certificate of Degree of Indian Blood ("CDIB") form; and 2) the use of that the CDIB form to collect genealogical information to determine eligibility to participate in CVMT organization violates the Constitution. Plaintiffs' claims must be dismissed for several reasons.

First, one of the Burley Faction's prior judicial losses resolved the very claims and issues

---

[1] In 2022, AS-IA Bryan Newland issued a decision ("the Newland decision") modifying the Washburn Decision by adding a fourth category of eligible groups. But the Newland decision made no change to the nature of the requirements established by the Washburn decision – applicants must show lineal descent from specifically named Miwok ancestors.  As discussed below, the Newland decision is presently being challenged before Judge Cobb.

they seek to relitigate here. Plaintiffs challenged the Washburn decision on several grounds, including Federal Defendants' use of lineal descent to determine eligibility to participate in CVMT organization. Both the Eastern District of California and the Ninth Circuit rejected this attack on the use of lineal descent. Plaintiffs now seek to recast their attack on the use of lineal descent as an attack on the CDIB form that BIA is using to provide the genealogical information necessary to determine lineal descent. The doctrines of res judicata and collateral estoppel bar Plaintiffs from reviving that claim here. Moreover, the Burley Faction's many judicial defeats preclude them from establishing many foundational elements of their Complaint. Plaintiffs thus fail to state a claim on which relief can be granted.

Second, even if Plaintiffs' claims were not precluded, they should be dismissed for other reasons. For one, Plaintiffs have a standing problem. Plaintiffs' alleged injuries flow from an allegedly flawed use of the CDIB form to demonstrate eligibility under the Washburn decision in the ongoing CVMT organizational process. But those alleged harms are tied to the potential culmination of that process in a CVMT Constitution following an election.  And Plaintiffs can only speculate that they will dislike the outcome of an election that may not change the CVMT's organizational status.  For similar reasons, Plaintiffs' challenge to BIA's use of the CDIB forms—an interim step in a not-yet-final process—is constitutionally and prudentially unripe. Moreover, Plaintiffs' broad attack on the CDIB program must be dismissed because it is an improper programmatic claim.

This Court need not, and should not, reach the merits of Plaintiffs' pretextual challenges to BIA's use of the CDIB form to obtain basic genealogical information to determine eligibility to participate in the CVMT's organizational process. Plaintiffs cannot revive their precluded attack on the Washburn decision's use of lineal descent by recasting it as a challenge to the

manner in which BIA is collecting information about descent (the CDIB forms). Nor can Plaintiffs challenge an interim step in an ongoing and unfinished electoral process that is uncertain to yield any change in the CVMT's governance. Because Plaintiffs' claims are precluded, this Court should dismiss the Complaint with prejudice. Even if the court found that the claims were not precluded, the claims should be dismissed without prejudice as unripe.

## II.     FACTUAL AND LEGAL BACKGROUND

### A.  The Indian Reorganization Act and Secretarial Elections

Congress's enactment of the IRA in 1934 "marked a shift away 'from assimilation policies and toward more tolerance and respect for traditional aspects of Indian culture.'" *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 181 n.8 (2011) (citation omitted). "Although the sovereign nature of Indian tribes cautions the Secretary not to exercise freestanding authority to interfere with a tribe's internal governance, the Secretary has the power to manage '*all* Indian affairs and [] *all* matters *arising out of Indian relations*.'" *Cal. Valley Miwok Tribe v. United States* ("*CVMT II*"), 515 F.3d 1262, 1267 (D.C. Cir. 2008) (quoting 25 U.S.C. § 2) (alteration in original). "The exercise of this authority is especially vital when, as is the case here, the government is determining whether a tribe is organized, and the receipt of significant federal benefits turns on the decision." *Id*.

The IRA authorizes Indian Tribes to organize by ratifying a Constitution. The IRA requires that a group organizing as a Tribe must be "at a minimum, a significant portion of the Indians who live on the reservation [or] for whom the reservation was established." *Allen v. United States*, 797 F. App'x 302, 306-07 (9th Cir. 2019); *Sandy Lake Band of Miss. Chippewa v. United States*, 714 F.3d 1098, 1101 (8th Cir. 2013) ("The term 'tribe' refers to 'any Indian tribe, organized band, pueblo, or the Indians residing on one reservation.'"); 25 U.S.C. § 5129. "[A]

3

tribe may qualify for additional federal benefits by organizing its government under the IRA].”
*CVMT II*, 515 F.3d at 1264.

Where a Tribe has never been organized, and seeks to do so under the IRA, Interior has
authority to ensure that organization under the IRA “reflect[s] majoritarian values.” *Id.* at 1267-
68. Interior’s decisions, such as decisions to approve or disprove “proposed constitutions,”
should be upheld if “permissible.” *Id.* at 1268. Once organized, “every tribe is ‘capable of
managing its own affairs and governing itself.’” *Id.* at 1263 (quoting *Cherokee Nation v.
Georgia*, 30 U.S. (5 Pet.) 1, 16, 8 L. Ed. 25 (1831)). But groups of individuals purporting to
represent an unorganized tribe do not enjoy similar power to define that tribe’s membership. *Cal.
Valley Miwok Tribe v. United States* (“*CVMT I*”), 424 F. Supp. 2d 197, 200-03 (D.D.C. 2006),
*aff’d by CVMT II*. So when a Tribe seeks to organize under the IRA, the “Secretary properly
exercises discretion not to approve a governing document when it does not ‘reflect the
involvement of the whole tribal community.’” *Aguayo v. Jewell*, 827 F.3d 1213, 1224 (9th Cir.
2016) (quoting *CVMT II*, 515 F.3d at 1266-67). Regardless of whether a tribe is organized under
the IRA, Interior retains authority to examine whether its efforts to engage in government-to-
government relations “promote a tribe’s political integrity” and ensure “that the will of tribal
members is not thwarted by rogue leaders.” *Cal. Valley Miwok Tribe v. Zinke* (“*CVMT V*”), 2017
U.S. Dist. LEXIS 84282, at *20 (E.D. Cal. May 31, 2017) (citing *CVMT II*, 515 F.3d at 1267).

Under the IRA, a Secretarial election is a federal election. 25 U.S.C. § 5123; 25 C.F.R.
81.4 (defining “Secretarial election”); *Thomas v. United States*, 189 F.3d 662, 667 (7th Cir.
1999). Under Section 16 of the IRA, tribes have “the right to organize for [their] common
welfare, and may adopt an appropriate constitution and bylaws, and any amendments thereto.”
*Id*. at § 5123(a). The Secretary enacted regulations governing the process of calling and

conducting Secretarial elections pursuant to the IRA. 25 C.F.R. Part 81 (2024). A tribe or petitioner may request an election by submitting an appropriate tribal resolution, ordinance, or petition, along with the language to be voted on and a list of members eligible to vote. *Id*. § 81.6. In response to a valid request, the Secretary "shall call and hold an election as required by [§ 5123(a)]." 25 U.S.C. § 5123(c)(1).

**B.  California Valley Miwok Tribe History**

The United States has worked to assist Calaveras County's Miwok Indians for over 100 years. *CVMT I*, 424 F. Supp. 2d at 198. "In 1916, the [United States] acquired approximately 0.93 acres in Calaveras County, California [the Sheep Ranch Rancheria] for the benefit of these Indians." *Cal. Valley Miwok Tribe v. Jewell ("CVMT III")*, 5 F. Supp. 3d 86, 89 (D.D.C. 2013). In 1934, Congress passed the IRA and directed Interior to hold referendum elections for each Tribe to vote on whether to the accept the Act's applicability to the Tribe. 25 U.S.C. § 5125.

In January 1935, Interior found only one adult Indian residing on the Sheep Ranch Rancheria – Jeff Davis. *CVMT III*, 5 F. Supp. 3d at 89. Davis voted in favor of the IRA, but there were no efforts by Davis or others to organize the Rancheria under the IRA. *Id.*

In 1958, Congress passed the California Rancheria Act, which directed Interior to develop plans for distributing rancheria land and assets to individual owners and to terminate the rancherias. Pub. L. No. 85-671, 72 Stat. 619.4. Under Interior's regulations, any adult Indian residing on an "unorganized rancheria" could request a distribution. 30 Fed. Reg. 10,098-99 (Aug. 13, 1965). In 1965, BIA determined that Mabel Hodge Dixie was the only Indian living on Sheep Ranch. *CVMT I*, 424 F. Supp. 2d at 198. BIA officials did not complete all requirements of the California Rancheria Act and did not terminate the Rancheria. *See CVMT III*, 5 F. Supp. 3d at 89. Mabel Dixie died in July 1971. *Id.* After probate proceedings, the CVMT land was

inherited by Ms. Dixie's common law husband and four sons, including Yakima Dixie and Melvin Dixie. *Id.* Yakima Dixie lived on the Rancheria after Ms. Dixie passed away. *In re $323,647.60 in Funds Belonging to Cal. Valley Miwok Tribe*, No. 18 CV 01194 JAP/KBM, 2019 U.S. Dist. LEXIS 25723, at *9 n.8 (D.N.M. Feb. 19, 2019).

In 1979, Interior began publishing lists of federally recognized tribes in the Federal Register. On its first list, Interior included the "Sheep Ranch Rancheria of Me-Wuk Indians." 44 Fed. Reg. 7235, 7236 (Feb. 6, 1979). The tribe has appeared on the list since that time.

In approximately 1994, Silvia Burley sought aid from the BIA in tracing her Indian heritage. *CVMT III*, 5 F. Supp. 3d at 90. Ms. Burley once had connections to the nearby Jackson Rancheria but apparently was not enrolled with that Tribe. *Id.* By 1998, Ms. Burley contacted Mr. Dixie. *Id.* Mr. Dixie stated that he agreed to enroll Burley, who was his "distant relative," and her family to help them obtain federal Indian services. *CVMT I*, 424 F. Supp. 2d at 198 n.2. With Mr. Dixie's agreement, Ms. Burley, her daughters (Rashel Reznor and Anjelica Paulk), and her granddaughter (Tristian Wallace) were accepted as members. *See CVMT III*, 5 Supp. 3d at 90. Shortly thereafter, Ms. Burley commenced an "long-running leadership dispute . . . that has resulted in actions in state courts, federal courts, and administrative agencies." *CVMT V*, 2017 U.S. Dist. LEXIS 84282, at *2.

## C.  Litigation history

From 1998 to present, multiple factions purporting to represent the CVMT have been embroiled in disputes regarding the Tribe's organizational status and leadership. These long-running disputes resulted in at least nine opinions by federal courts in Washington, D.C., California, and New Mexico. Federal Defendants highlight below several decisions that provide factual and legal background regarding the Burley Faction's many efforts to seize the CVMT.

6

1.      *CVMT I* and *II*

Prior to 2006, "a small cluster of people within the California Valley Miwok tribe" led by Silvia Burley claimed to approve a CVMT constitution on behalf of a tribe of five members, four of whom were Ms. Burley and her descendants. *CVMT II*, 515 F.3d at 1263. The fifth member was Yakima Dixie. Ms. Burley attempted to "organize the tribe" in 2000, when "she and a group of her supporters adopted a constitution and requested the secretary to call an election for its ratification." *Id*. at 1265. "[T]he Secretary never called the election" and "[r]ather than press the matter, Burley withdrew her request for a vote on the constitution." *Id*. The Burley faction next purported to "adopt[] a new constitution" in 2001 but "[t]he Secretary informed her that the constitution was defective and the tribe still unorganized." *Id*. Ms. Burley filed suit challenging the rejection of her Constitution. This Court and the D.C. Circuit upheld BIA's decision to decline to approve the Burley Constitution because the CVMT, by the Burleys "own admission, has a potential membership of 250." *CVMT II*, 515 F.3d at 1267. Based on its understanding of the CVMT's potential membership, the Circuit criticized the Burley Faction's adoption of "a constitution to govern the tribe without so much as consulting its membership." *Id*. at 1263. Because their proposed Constitution "was not ratified by anything close to a majority of the tribe," the Circuit held that the Burley Faction's "antimajoritarian gambit deserves no stamp of approval from the Secretary." *Id.* at 1267; *CVMT V*, 2017 U.S. Dist. LEXIS 84282, at *5-6.

While recognizing the inherent sovereign power of tribes to regulate their internal and social relations, the D.C. Circuit held that the IRA allows the Secretary to reject a constitution that failed to reflect the involvement of the whole tribal community. The Circuit held that "the Secretary lawfully refused to approve the proposed constitution," thereby confirming that the Burley Constitution is a legal nullity and the CVMT remains unorganized. *Id*. at 1263. The

Circuit made clear that any subsequent effort to "organiz[e] under the [IRA] must reflect majoritarian values." *Id*. at 1267-1268.

### 2.      2011 Decision and *CVMT III*.

In 2011, then-AS-IA Larry Echo Hawk reversed prior Interior decisions and, among other things, determined that "the Tribe's entire citizenship consists solely of" Yakima Dixie, Silvia Burley, and three of Ms. Burley's descendants. *CVMT III*, 5 F. Supp. 3d at 95. A group led by Mr. Dixie challenged AS-IA Echo Hawk's decision. The Burley Faction intervened. *Id*. at 88. This Court again rejected the position that the Burley Faction represents the majority of the CVMT, "conclud[ing] that the Assistant Secretary erred when he assumed that the Tribe's membership is limited to five individuals . . . , thereby ignoring multiple administrative and court decisions that express concern about the nature of the Tribe's governance." *Id*. at 88. The Court found that it was unreasonable for AS-IA Echo Hawk to ignore:

> that the record is replete with evidence that the Tribe's membership is potentially significantly larger than just these five individuals. For instance, from at least as early as 1997, the BIA recognized that the Tribe consisted of a "loosely knit community of Indians in Calaveras County," and at various times over the last twelve years, the BIA claimed that the Tribe consisted of at least 250 individuals. *The BIA received genealogies from at least 242 individuals in response to the notice it placed in the newspapers in 2007.* Even Burley at one time represented to a federal district court that the Tribe consists of at least 250 individuals. Indeed, the D.C. Circuit took judicial notice that the potential membership of the Tribe consisted of 250 individuals.

*Id.* at 98 (citations omitted and emphasis added). The Court also held that AS-IA Echo Hawk arbitrarily concluded that the CVMT was governed by a General Council comprised of two Burley Faction members and Yakima Dixie. *Id*. at 92, 99-100. The Court remanded to Interior for reconsideration. In doing so, the Court admonished Interior that organization must include a larger "tribal community," a "loosely knit community of Indians in Calaveras County" that had a potential membership of over 250. *Id*. at 98.

3.      **The 2015 Washburn Decision**

Then-AS-IA Kevin Washburn issued the Department's decision on remand in 2015. He determined that the CVMT's membership was not limited to the Burley Faction, holding "based on the record and previous federal court decisions," that 1) "the Tribe's membership is more than five people"; and 2) a "General Council" formed by Ms. Burley in 1998 "does not consist of valid representatives of the Tribe." *CVMT V*, 2017 U.S. Dist. LEXIS 84282, at *8-9. Instead of installing the Burley Faction as the entirety of the CVMT, AS-IA Washburn "found that the United States does not recognize any leadership for the Tribe, including the [Burley] General Council." *Id*. at *16. AS-IA Washburn identified three sets of descendants or heirs as eligible to participate in the CVMT's organization – the "eligible groups."[2] *Id.* at *11-12; *Cal. Valley Miwok Tribe v. Haaland* ("*CVMT IX*"), 2023 U.S. Dist. LEXIS 206197, at *5-6 (D.D.C. Nov. 17, 2023) ("[R]ecord show[ing] that there are far more than five people eligible to take part in the organization of the Tribe") (quoting Washburn decision).

4.      **The Burley Faction's Challenge to the Washburn Decision, including the process for determining eligibility to participate in CVMT organization.**

Several months after the Washburn decision was issued, the Burley Faction sought to enjoin its implementation. *Cal. Valley Miwok Tribe v. Jewel* ("*CVMT IV*"), 2016 U.S. Dist. LEXIS 147053, at *1-2 (E.D. Cal. Oct. 24, 2016). They argued "that once the 2013 Constitution is recognized, [Mr.] Dixie will request and obtain the $13 million the Gambling Control Commission is holding in trust for the Tribe pending resolution of the leadership dispute." *Id.* at *6 (citation omitted). The court denied the injunction, finding that the "possibility of injury to

---

[2] AS-IA Washburn identified as the eligible groups: the individuals listed on the 1915 Census of Sheep Ranch Indians and their descendants, the descendants of the 1935 IRA voters list (Jeff Davis), and the descendants of the heirs of Mabel Dixie. *See CVMT IX*, 2023 U.S. Dist. LEXIS 206197, at *6.

plaintiffs is speculative because it is uncertain whether the Regional Director will recognize" a Constitution put forward by Yakima Dixie's group, and even if the Regional Director recognized the Constitution, that decision would be subject to appeal. *Id*. The Court also found that "[i]ssuing an injunction preventing the BIA from determining the Tribe's proper government undermines the public policy favoring the promotion of tribal self-governance." *Id.* at *7-8.

On summary judgment, the Burley Faction argued that they were the entirety or majority of the CVMT based upon the 1998 General Council. Mem. of P. & A. in Supp. of Pls.' Mot. for Summ. J. at 15-16, 35-37, *CVMT V*, No. 16-cv-01345 (Ex. 1). The Faction also argued that the Washburn decision's "Eligible Group System" illegally expanded the CVMT beyond the Burley Faction "based upon <u>descent</u>" from the categories of people identified in the decision. *Id*. at 37-38, Pls.' Cross-Mot. for Summ. J. at 2, *CVMT V*, No. 16-cv-01345. The Court rejected this claim, holding that the Burley plaintiffs were collaterally estopped from challenging the Washburn decision's conclusion that the CVMT consists of more than five members. *CVMT V*, 2017 U.S. Dist. LEXIS 84282, at *14-16 (citing *CVMT I, II, and III*) ("Issue preclusion prevents plaintiffs from relitigating whether the Tribe consists of more than five members."). The Court also held that AS-IA Washburn's determination "that the United States does not recognize a tribal government is reasonable." *Id.* at *16. Finally, the Court upheld AS-IA Washburn's "treat[ment of] lineal descendants of individuals listed on census base rolls as the eligible members for organizational purposes" because the Burley Faction failed to meet its burden of showing that the decision was arbitrary and capricious. *Id.* at *18-19, *21-22.

The Ninth Circuit affirmed, holding that while "Tribal membership is a matter to be determined by the tribe, . . . the Department of the Interior also has the responsibility to ensure that organized tribes are representative of potential membership." *Cal. Valley Miwok Tribe v.*

*Zinke* ("*CVMT VI*"), 745 F. App'x 46, 47 (9th Cir. 2018) (citations omitted).[3]

Plaintiffs unsuccessfully sought rehearing *en banc*. They argued, among other things, that the panel decision wrongly upheld the Washburn decision's determination that approximately 200 members of the eligible groups could participate in the CVMT organization process. Pet. for Panel Reh'g and Reh'g En Banc at 8-9, *Cal. Valley Miwok Tribe v. Zinke*, No. 17-16321 (9th Cir. Feb. 4, 2019), 2017 U.S. 9th Cir. Briefs LEXIS 5105, at *8.

### 5.    The District of New Mexico's rejection of the Burley Faction's efforts to obtain the CVMT's funds.

The Burley Faction raised the same arguments again as defendants in interpleader in a case in the District of New Mexico. The Burley Faction sought control of funds owed to the CVMT as a member of a class of Tribes in *Ramah Navajo Chapter v. Zinke*, No. 90CV957 (D.N.M.). *In re $323,647.60 in Funds*, 2019 U.S. Dist. LEXIS 25723, at *4-5. They asked the Court to lift a stay protecting the funds "and issue an Order to Show Cause why the . . . funds should not be distributed to the four members of the Burley family and the estate of Yakima Dixie, as the only 'actual' members of the Tribe." *Id.* at *11. The Burleys argued that Mr. Dixie's death mooted the dispute over CVMT leadership and that there was no need for the CVMT to organize because the Burleys constituted the entire Tribe. *Id.* at *11-12.

The Court rejected the Burley Faction's collateral attack on the Washburn decision, holding that Mr. Dixie's death did not nullify the Washburn decision. *Id.* at *12-15. The Court instead held that it "cannot determine who represents the Tribe—the Tribe must make that decision, subject to limited BIA oversight." *Id.* at *16. The Court thus declined to lift the stay

---

[3] The Ninth Circuit previously noted that Ms. Burley "and a very small group of supporters went 'rogue' and created a new constitution that was clearly not supported by the majority of the tribe." *Aguayo*, 827 F.3d at 1228 (citing *CVMT II*, 515 F.3d at 1267).

and distribute the funds at issue to the Burleys because "the original reason for the stay still exists: The BIA has not recognized a governing body for the Tribe due to the existence of numerous potential members of the Tribe who did not participate in forming either of the purported governing bodies." *Id*. at *18.

6.    **Challenges to Interior's attempt to conduct a Secretarial Election under the Washburn Decision in 2019**

In April 2019, two groups of Plaintiffs, including the Burley Faction, sought emergency relief in this Court and the Eastern District of California to prevent BIA from proceeding with a Secretarial Election on a CVMT Constitution. First, this Court ruled against the Burley Faction's motions from the bench. It again rejected the Faction's arguments seeking to prevent eligible descendants of different groups of Miwoks from taking steps toward organization. Tr. of Apr. 12, 2019 Arg. at 43:1-44:7, *Cal. Valley Miwok Tribe v. U.S. Dept. of the Interior* ("*CVMT VII*"), No. 19-cv-917 (Ex. 2) ("[T]he Tribe is not formally organized under the Indian Reorganization Act, and the D.C. and the Ninth Circuits have independently rejected Burley's arguments that her family constitutes its only potential members. Moreover, her argument that potential members cannot call for a Secretarial election contravenes what I think is the plain text of the [IRA].").

After this Court denied the Burley Faction's PI motion, the Eastern District of California rejected a similar motion from a different faction. *Aranda v. Sweeney*, 2019 U.S. Dist. LEXIS 64432, at *1-2 (E.D. Cal. Apr. 15, 2019) ("*CVMT VIII*").  The BIA then conducted the Secretarial Election. That election was invalidated after voting concluded because "a significant genealogical error was discovered." *CVMT IX*, 2023 U.S. Dist. LEXIS 206197, at *6.[4] The

---

[4] As discussed below, Interior's genealogical research into the group of individuals who Interior had thought were eligible to participate in the initial organization under the Washburn decision revealed that many such individuals did not qualify.

CVMT was thus left unorganized.

### 7. California State Court litigation

The Burleys also unsuccessfully tried to have the Faction recognized as the CVMT in California's state courts. *See Cal. Valley Miwok Tribe v. Cal. Gambling Control Comm'n*, 2020 Cal. App. Unpub. LEXIS 642, at *15-17 (Cal. App. Jan. 29, 2020) (describing four trial court and four appellate opinions). Ms. Burley sought an order requiring California's Gaming Commission to pay her millions of dollars in gaming funds that the Commission held in trust for the CVMT. *Cal. Valley Miwok Tribe v. Cal. Gambling Control Comm'n*, 231 Cal. App. 4th 885, 890, 896 (Cal. App. 2014). The Court found that, despite the Burley Faction's arguments to the contrary, there was "strong evidence of a very active tribal dispute" regarding leadership. *Id*. at 900-04. And it held that the Commission's withholding the funds was justified because the Commission could not "resolve intratribal disputes over membership and leadership." *Id*. at 907.

Undeterred, the Burley Faction filed another lawsuit in California state court seeking to reframe its claim that it constitutes the entire CVMT after Yakima Dixie's death. That court held that the Faction's effort to revive claims was barred by res judicata. *Cal. Valley Miwok Tribe*, 2020 Cal. App. Unpub. LEXIS 642, at *24-38; *id*. at *41-55 (imposing sanctions on a prior Burley attorney for a "frivolous appeal" seeking to release gaming funds to the Burley Faction even though the tribal membership and leadership dispute was not resolved and the BIA had not established a government-to-government relationship with a tribal leadership body.); *Corrales v. California Gambling Control Com.*, 93 Cal. App. 5th 286, 292, 304 (Cal. Ct. App. 2023).[5]

### 8.    Administrative appeals

Plaintiffs have also pursued a host of administrative appeals based on similar legal

---

[5] The Burley Faction appeared and argued that "Corrales's action was premature." *Id.* at 296.

theories. For example, the Burley Faction sought to defeat a 2018 CVMT election effort with an

appeal to the Interior Board of Indian Appeals ("IBIA"). *Burley v. Acting Pac. Reg'l Dir.* 66

IBIA 270 (2019) (Ex. 3). The Faction argued that a decision by the Regional Director to validate

a petition to conduct a Secretarial election for the CVMT was not a final agency action. *Id*. at 2.[6]

Most recently, Ms. Burley argued to the IBIA that the Burley General Council is the CVMT's

governing body – the same arguments she unsuccessfully raised in *CVMT V* and *IV*'s challenges

to the Washburn decision. *Cal. Valley Miwok Tribe v. Cent. Cal. Agency Superintendent, BIA*, 68

IBIA 6, 7 (2021). IBIA dismissed that claim, holding that a subsequent "decision does not afford

Burley another bite at the apple to litigate whether the Department should recognize a governing

body for the Tribe and recognize Burley as a tribal representative." *Id*. at 7, 21.

### 9.     The 2022 Newland Decision

The 2015 Washburn decision identified three sets of descendants or heirs as eligible to

participate in the CVMT's organization. *CVMT V*, 2017 U.S. Dist. LEXIS 84282, at *11-12.

Those three groups were:

> (1) the individuals listed on the 1915 Terrell Census and their descendants; (2) the
> descendants of Rancheria resident Jeff Davis (who was the only person on the 1935
> IRA voters list for the Rancheria); and (3) the heirs of Mabel Dixie.

*Id*.[7] "John Jeff was long believed to be the son of Jeff Davis and, in fact, the vast majority of

those who petitioned for a Secretarial election in 2018 traced their lineage and CVMT

membership to John Jeff (as a descendant of Jeff Davis)." *CVMT IX*, 2023 U.S. Dist. LEXIS

206197, at *7. In 2022, AS-IA Bryan Newland partially revised the Washburn decision because

"Washburn, like many others, assumed that the many descendants of John Jeff 'would be

---

[6] As discussed further below, the administrative appeal was mooted by Interior's invalidation of
the election due to the discovery of an error regarding John Jeff's genealogy. *Id*.

[7] The Washburn decision also included the descendants of Mabel Dixie's heirs.

included in the organizational process.'" *Id.* at *7 (citations omitted). He added the descendants of Miwoks listed on a 1929 census of Calaveras County Indians to the list of groups eligible to participate in CVMT organization to correct for the genealogical mistake. *Id.* at *6-7. Federal Defendants refer to these now four eligible groups as the "CVMT Community."

A different faction—the dozen or so people who were, in fact, within Washburn's eligible groups—sought to "suspend the CVMT organization" efforts by directly challenging the Newland decision in June 2022. *Id.* at *3. But the Burley Faction declined to challenge the Newland decision, waiting almost two years, until April 2024, to challenge one step in the decision's implementation – the collection of genealogical information through CDIB forms.

### 10.    Eligibility to Participate in CVMT Organization

Due to the "significant genealogical error" regarding John Jeff's ancestry, the Burley Faction and most of the CVMT Community would have been excluded from CVMT organization and the CVMT would have been limited to approximately 10 adults if the Washburn decision was not amended. *See CVMT IX*, 2023 U.S. Dist. LEXIS 206197, at *6-7, *14 n.5. To remedy that error, AS-IA Newland "revisited and revised the Washburn Decision" to include descendants of Calaveras County Miwok Indians listed on a 1929 census. *Id.* at *6-7.[8]

Both the Washburn and Newland decisions conditioned eligibility to participate in CVMT organization on lineal descent from specific Miwok Indians in Calaveras County, California.  Thus, to determine eligibility, the decisions required BIA to assess whether individuals wishing to participate in CVMT organization were descended from those Miwoks.

---

[8] Plaintiffs avoid directly challenging the Newland Decision, perhaps because they descend from John Jeff and would be unable to participate in CVMT organization at all absent AS-IA Newland's partial revision of the Washburn Decision. *See CVMT VIII*, 2019 U.S. Dist. LEXIS 64432, at *9-11; *CVMT IX*, 2023 U.S. Dist. LEXIS 206197, at *6-7.

To that end, on November 29, 2022, BIA requested that Plaintiffs and other applicants prove "lineal descendancy from one of the" four groups. ECF No. 1-2 at ECF Header pages 16-17. To gather that information, Federal Defendants requested a "CDIB form along with supporting documentation" to verify descendancy. *Id*.

But Federal Defendants' use of the CDIB *form* is not an effort to determine a percentage of Indian blood for the individuals in question. A CDIB—referring to the certification, not the form—if approved, "[is] issued by the BIA and [is] the BIA's certification that an individual possesses a specific quantum of Indian blood. A CDIB entitles the holder to participate in some government assistance programs." *Davis v. United States*, 192 F.3d 951, 956 (10th Cir. 1999). Here, however, Federal Defendants are simply using the CDIB form as a useful mechanism through which to gather information to determine whether applicants descend from members of the four eligible Miwok groups—the basic process required by the Washburn and Newland decisions. ECF No. 1-2 at ECF Header pages 16-17.[9]

Indeed, this is similar to Federal Defendants' prior requests for genealogical information from those interested in participating in CVMT organization. Plaintiffs admit that they "submitted their applications" in response to past requests for CDIB forms in a prior CVMT organizational process. Compl. ¶¶ 55-57, ECF No. 1. Then (as is the case now), BIA was focused on whether applicants were "eligible to participate in the Agency's organization

---

[9] Plaintiffs inaccurately stated that they attached a "true and correct copy of" the November 29, 2022 public notice stating that people should submit CDIB forms to prove their descent from one of the eligible groups identified by AS-IA Newland. Compl. ¶ 67 (citing Plaintiff's Exhibit 4). Plaintiffs' Exhibit 4 omits two of the notice's four pages and two of three pages from BIA's CDIB instructions. ECF No. 1-2 at ECF Header pages 16-18. Plaintiffs' omission of two pages from the CDIB instructions is particularly telling. The omitted pages require applicants' family trees back to their great-grandparents—exactly the information necessary to determine whether those applicants are within an eligible group. BIA Certificate of Degree of Indian or Alaska Native Blood Instructions (Ex. 4).

process" but did not issue a determination regarding their degree of Indian blood in response to the applications. *See Id*. ¶ 59-60. These past organizational efforts concluded without changing the CVMT's organizational status. Compl. Exs. at ECF Header Pages 6-14, ECF No. 1-2.

### 11.    Current CVMT Organization Efforts

The process for determining eligibility to participate in the CVMT's organization efforts that Plaintiffs challenge here is one interim step toward *potential* organization. Since this Court denied a different faction's motion to enjoin the electoral process,  *CVMT IX*, 2023 U.S. Dist. LEXIS 206197, the CVMT has made progress toward organization.[10] But the CVMT must successfully navigate multiple *remaining* regulatory steps before it may organize:

1) BIA must validate or invalidate the petition within 60 days of receipt, 25 C.F.R. § 81.62;

2) If the petition is valid, BIA must hold an election within 180 days of receipt, 25 C.F.R. § 81.19;

3) BIA must appoint an Election Board, which must take many steps prior to conducting the election and potentially certifying election results. 25 C.F.R. § 81.19-20, 81.22-23, 81.31-33, 81.38, 81.41.

4) Eligible voters then have five days to "challenge the results of the Secretarial election," 25 C.F.R. § 81.43-44;

5) BIA's Regional Director must "review [the] election results and challenges" and provide notice of his or her "decisions on challenges," "[w]hether the proposed governing document . . . [is] approved," and state that "[t]hat the decision is a final agency action." 25 C.F.R. § 81.45(c).

Plaintiffs seek to halt that process before it reaches Section 81.45(c)'s "final agency action."[11]

---

[10] On April 23, 2024, BIA "received a petition . . . to call and conduct a Secretarial election on a proposed Constitution" drafted by a CVMT Constitutional Committee. *Cal. Valley Miwok Tribe – Organization Information*, U.S. Dep't of Interior Indian Affs., https://www.bia.gov/regional-offices/pacific/central-california-agency/cvmt (last visited May 31, 2024).

[11] Plaintiffs are simultaneously pursuing two administrative challenges to the Petition for Secretarial Election. Challenge to Notice of Pet. for Secretarial Election and Statement of Reasons by Silvia Burley (May 22, 2024) and Challenge to Notice of Pet. for Secretarial Election and Statement of Reasons by M. Burley and W. Burley Jr. III [sic] (May 22, 2024) (Ex. 5).

### III.    LEGAL STANDARD

Federal Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). "The Constitution limits the 'judicial Power of the United States' to 'Cases' or 'Controversies,' U.S. Const. art. III, §§ 1-2, and the requirement of standing is 'rooted in the traditional understanding of a case or controversy[.]'" *Twin Rivers Paper Co. v. SEC*, 934 F.3d 607, 612 (D.C. Cir. 2019) (citation omitted). Subject matter jurisdiction is a threshold issue, which should be addressed prior to any consideration of the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998). Federal courts presumptively lack jurisdiction "unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (quotation marks and citation omitted); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Therefore, to survive a motion to dismiss pursuant to Rule 12(b)(1), a plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its claim. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007).

"A court evaluating a Rule 12(b)(1) motion 'must treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Weissman v. Nat'l R.R. Passenger Corp.*, 2020 U.S. Dist. LEXIS 136540, *4-5 (D.D.C. July 31, 2020) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)). "But the court need not accept the plaintiff's legal conclusions or the inferences he draws 'if [they] are unsupported by facts alleged in the complaint.'" *Id.* (quoting *Williams v. Wilkie*, 320 F. Supp. 3d 191, 195 (D.D.C. 2018)). "[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

18

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim or complaint." *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 344 (D.C. Cir. 2018). Under Rule 12(b)(6), courts determine whether the complaint alleges "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim is facially plausible when the pleaded factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Anthony v. Int'l Ass'n of Machinists & Aerospace Workers Dist. Lodge 1*, 296 F. Supp. 3d 92, 95 (D.D.C. 2017) (quoting *Iqbal*, 556 U.S. at 678). Courts, however, need not accept as true inferences unsupported by factual allegations nor legal conclusions. *Warren v. Dist. of Columbia*, 353 F.3d 36, 39-40 (D.C. Cir. 2004). Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). And in "ruling on a 12(b)(6) motion, a court 'may consider [] the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice,' including documents from administrative proceedings." *Gezahey v. Greater Wash. Oncology Assocs.*, 2023 U.S. Dist. LEXIS 26124, *4-5 (D.D.C. Feb. 16, 2023) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). *Donelson v. U.S. Bureau of Prisons*, 82 F. Supp. 3d 367, 371 (D.D.C. 2015) ("The court may take judicial notice of another court's proceedings.").

## IV.   ARGUMENT

### A.   Plaintiffs' claims are barred by res judicata and collateral estoppel.

Various judicial conclusions reached in rejecting the Burley Faction's prior challenges to agency decisions and CVMT organization efforts preclude Plaintiffs from prevailing here. "A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral

estoppel and res judicata, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . .'" *Montana v. United States*, 440 U.S. 147, 153 (1979) (quoting *S. Pac. R. Co. v. United States*, 168 U.S. 1, 48-49 (1897)). "Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Id.* "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Id.* "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id*. at 153-154. Simply put, "[i]t is not in the interest of justice to commit the resources of another court to the litigation of claims that have already been decided." *Dewayne v. United States*, 2023 U.S. Dist. LEXIS 49755, at *4 (D.D.C. Mar. 23, 2023).

Among their many unsuccessful lawsuits regarding CVMT leadership and membership, the Burley Faction lost a challenge to AS-IA Washburn's decision requiring BIA to use lineal descent—descent from specific Calaveras County Miwok Indians. *CVMT VI, V, and VI*. But determining lineal decent is precisely what Plaintiffs seek to enjoin in their present suit. The core of Plaintiffs' two claims for relief here is an attack on Federal Defendants' use of lineal descent from specific Miwok Indians of Calaveras County to determine eligibility to participate in CVMT organization efforts today. Compl. ¶¶ 50-67, 118, 123-24, 129-37. Indeed, Plaintiffs object to a "process that used ancestry" to determine eligibility to participate in CVMT organization. *Id*. ¶ 131. And they specifically attack Federal Defendants' use of CDIB forms,

which Federal Defendants are using only to obtain the necessary information about lineal descent to determine eligibility to participate.  Compl. ¶¶ 3, 5, 137.

These claims are precluded because Burley Faction had at least one full and fair opportunity to challenge Federal Defendants' use of lineal descent to determine eligibility to participate in CVMT organization. Pages 9-11, above (describing *CVMT IV*, *CVMT V*, and *CVMT VI*). They litigated and lost that challenge. Moreover, the Burley Faction's many past defeats preclude them from establishing numerous allegations in their current Complaint. Because Plaintiffs' claims are precluded, this Court should dismiss them with prejudice. *Adams v. FDIC*, 2018 U.S. Dist. LEXIS 168143, *1 (D.D.C. Sept. 20, 2018).

### 1. Plaintiffs are estopped from challenging Federal Defendants' use of lineal descent to establish eligibility to participate in CVMT organization.

The Burley Faction's *CVMT V* Complaint brought both APA and constitutional claims asserting that the Washburn decision unlawfully permitted approximately 250 potential tribal members to participate in CVMT organization on the same footing as the Burleys. *CVMT V Compl*. at ¶¶ 1, 5, 77-80, 88, 108-09, 129, 138-40 (Ex. 6). The Burley Faction litigated the merits of their challenge to the Washburn decision, including challenging Interior's "establishing the novel 'eligible group' system" as purportedly creating "a system contrary to federal precedent and the requirements of the IRA that equates *potential* membership with *actual* membership." *CVMT V* Br. at 37. The Faction also argued that the Washburn decision "erroneously creates an 'Eligible group' system to facilitate the reorganization of the Tribe that includes a larger pool of eligible people based not upon membership, but based upon descent, contrary to well established Indian law." *Id*. at 38. In other words, the Burley Faction directly challenged BIA's use of lineal descent to determine eligibility to participate in the CVMT's organization.

The Burley Faction lost on the merits. The court held that the Burley Faction was

collaterally estopped from challenging AS-IA Washburn's conclusion that the CVMT consists of more than five members. *CVMT V*, 2017 U.S. Dist. LEXIS 84282, at *14-16 (citing *CVMT I, II, and III*). The Court also held that AS-IA Washburn's determination "that the United States does not recognize a tribal government" was reasonable. *Id.* at *16. Of particular relevance here, AS-IA Washburn based eligibility to participate in the CVMT's organization on lineal descent from certain named Miwok Indian ancestors. *Id*. at *11-12. The Court's grant of summary judgment upheld AS-IA Washburn's "treat[ment of] lineal descendants of individuals listed on census base rolls as the eligible members for organizational purposes." *Id.* at *18-19, *21-22. The Burley Faction appealed, and the Ninth Circuit affirmed, holding that while "Tribal membership is a matter to be determined by the tribe, . . . the Department of the Interior also has the responsibility to ensure that organized tribes are representative of potential membership." *CVMT VI*, 745 F. App'x at 47 (citations omitted).

Plaintiffs' present Complaint seeks to revive a challenge to Interior's use of lineal descent to determine eligibility to participate in CVMT organization, by recasting it as an attack on the CDIB program. Compl. ¶¶ 50-67, 118, 123-24, 129-37.[12] Critically, the only purpose of the CDIB form here is to provide the basic genealogical information necessary to determine whether each individual who wishes to participate in the CVMT organizational process meets the eligibility through lineal descent requirement. ECF No. 1-2 at ECF Header pages 16-17. Plaintiffs' pivot to the CDIB forms is thus nothing more than a thinly-veiled attack on the use of lineal descent to determine eligibility. In other words, Plaintiffs attempt to recast these prior unsuccessful attacks by targeting Interior's use of CDIB forms to collect the genealogical

---

[12] To the extent Plaintiffs claim challenging Interior's alleged failure to promulgate regulations regarding CDIBs is not precluded, that claim would still fail. The Complaint does not challenge final agency action or otherwise plead a viable APA claim. *See* pages 37-41, below.

information necessary to determine eligibility to take part in the initial organization of the Tribe.

Plaintiffs are barred as a matter of law from relitigating these claims. First, *res judicata* bars any claim challenging Federal Defendants allowing potential CVMT members to participate in CVMT organization based on their lineal descent from certain named Miwok Indians. *CVMT V* and *VI* involved Plaintiffs' challenge to Interior's conclusion to determine eligibility to participate in CVMT organization through lineal descent. *CVMT V* and *VI* granted and upheld summary judgment against the Burley Faction on the claim. *Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004); *CVMT VI*, 745 F. App'x at 46. Plaintiffs cannot deny that the *CVMT V* and *VI* plaintiffs are either identical to, or in privity with, the Plaintiffs here. Indeed, Silvia Burley, Rashel Reznor, Anjelica Paulk, and Tristan Wallace were Plaintiffs in both cases, filed both cases on behalf of the same purported CVMT General Council, and based on that purported General Council's enrollment ordinance. *Compare* ECF No. 1 ¶¶ 1, 23-32 with *CVMT V Compl.* ¶¶ 1, 5, 14-16 (Ex. 6).

The remaining question is therefore whether Plaintiffs' claims here turn on the same nucleus of facts as *CVMT V. Apotex*, 393 F.3d at 217. The answer is "yes." This factor turns on whether "the underlying facts of the two cases are closely related in time, space, origin, and motivation, and they would have formed a convenient trial unit." *Id.* "[R]es judicata turns on a suit's factual context, 'not the theory on which a plaintiff relies.'" *Sheptock v. Fenty*, 707 F.3d 326, 335 (D.C. Cir. 2013) (citation omitted); *Apotex*, 393 F.3d at 218. And "[a]n objection to the continued application of . . . policies is not a new claim." *Hale v. Collis*, 2022 U.S. Dist. LEXIS 135583, *12-13 (D.D.C. July 29, 2022); *Tyson v. U.S. Postal Serv.*, 2024 U.S. Dist. LEXIS 57365, *11 (D.D.C. Mar. 29, 2024) (plaintiff "is barred from bringing another claim about [the same] events just because he would like to argue it differently"). Here, Plaintiffs' claim that the

use of the CDIB form to collect information on lineal descent is just recasting their prior attack on BIA's use of lineal descent to begin with. *See Harrison v. Norton*, 2004 U.S. App. LEXIS 9404, *2-3 (D.C. Cir. 2004) (Claims challenging denial of a CDIB barred by res judicata because the plaintiff could have raised them "in the previous action but did not."); *Harrison v. Norton*, 429 F. Supp. 2d 83, 92 (D.D.C. 2006) ("Plaintiff's lineage is fixed: the nature of Plaintiff's lineage could not change after the initial resolution of her claim, and all theories for qualification could have been - and should have been - litigated in the prior action."). If Plaintiffs had concerns about Interior's collection of ancestral information to implement the Washburn decision, they were required to have raised those objections in *CVMT V* and *VI*. They cannot evade the preclusive effect of their past litigation by tweaking their legal theory to "challenge" the manner in which Interior is collecting lineal decent information (CDIB forms).

Second, issue preclusion would also bar the present claims. "[U]nder issue preclusion, or collateral estoppel, 'once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.'" *Mohn v. United States*, 2021 U.S. Claims LEXIS 2844 (Ct. Cl. Dec. 21, 2023), *7-8 (dismissing constitutional challenge to CDIB denial due to collateral estoppel); *Nat'l Post Office Mail Handlers, etc. v. Am. Postal Workers Union*, 907 F.2d 190, 192 (D.C. Cir. 1990) ("That the particular facts of the underlying jurisdictional disputes differ is of no significance: the legal issue is the same one, and it has already been resolved by our sister circuit in the West."). Plaintiffs challenged Federal Defendants' use of lineal descent to determine eligibility to participate in CVMT organization and the Court held against them in granting summary judgment to Federal Defendants. *CVMT V*, 2017 U.S. Dist. LEXIS 84282, at *18-19, *21-22. Moreover, the Court held that the CVMT's membership was defined by the

eligible groups identified by AS-IA Washburn. *Id*. at *11-12. *CVMT V* and *VI*'s determination were essential to the Court upholding the Washburn decision as neither arbitrary nor capricious. *CVMT V*, 2017 U.S. Dist. LEXIS 84282, at *18-22.

Plaintiffs' Complaint must be dismissed because it is precluded by Plaintiffs' prior challenge to Federal Defendants use of lineal descent to determine eligibility to participate in CVMT organization. The Court's analysis should proceed no further.

**2. Plaintiffs' Complaint is founded on numerous arguments that Plaintiffs are barred from relitigating.**

As explained above, Plaintiffs' substantive claims and arguments regarding BIA's use of CDIB forms are precluded by *CVMT V* and *VI*'s rejection of the Burley Faction's attack on the use of "eligible groups" to identify people eligible to take part in CVMT's initial organization. In addition, Plaintiffs' two decades of unsuccessful litigation preclude numerous foundational elements of their Complaint. *See* pages 19-26, above. Plaintiffs are barred from litigating any of the issues they lost in *CVMT I, II, V,* and *VI,* at a minimum. This would include the following arguments or claims:

- That the CVMT is already an organized Tribe. *See* Compl. ¶¶ 20, 48, 81, 117. The CVMT is not an organized tribe and lacks a constitution. *CVMT II*, 515 F.3d at 1267 (rejecting Burley Constitution because "[a]lthough CVM, by its own admission, has a potential membership of 250, only Burley and her small group of supporters had a hand in adopting her proposed constitution."); *CVMT III*, 5 F. Supp. 3d at 97.

- That a 1998 General Council Resolution is a valid organizing document, that Plaintiffs officially represent the CVMT through the Burley General Council, or that the Burley General Council authorized the Complaint on behalf of CVMT. Compl. ¶ 1. Plaintiffs' General Council has no authority and its resolutions are a legal nullity. *CVMT V*, 2017 U.S. Dist. LEXIS 84282, at *20-21 (rejecting Plaintiffs' argument that "the BIA must now recognize the General Council as the valid tribal government.").

- That Plaintiffs are "duly enrolled members of the" CVMT "pursuant to the Tribe's enrollment ordinance." Compl. ¶¶ 23-32. The CVMT lacks a Constitution and any enrollment ordinance passed by the Burley faction is a nullity. *CVMT II*, 515 F.3d at 1267; *CVMT XIII*, 2019 U.S. Dist. LEXIS 64432, at *9-10.

- That BIA is interfering with the CVMT's internal governance. Compl. ¶¶ 3, 103-05. The CVMT has no government and is unable to form a government until it organizes. *CVMT V*, 2017 U.S. Dist. LEXIS 84282, at *17 ("Because plaintiffs have not shown that the majority of adult members approved the General Council and the Assistant Secretary has an obligation to ensure that the United States interacts with valid tribal representatives, the Assistant Secretary was not arbitrary and capricious in declining to recognize a tribal government.").

- That the Burley Faction are the CVMT's only members. *See* Compl. at ¶¶ 1, 3, 23. The Burley Faction are not the "only members of the Tribe." *CVMT II*, 515 F.3d at 1265 n.5, 1267; *CVMT III*, 5 F. Supp. 3d at 95, 97-99; *CVMT V*, 2017 WL 2379945, at *5-6; *and CVMT VI*, 745 F. App'x at 47.

In short, Plaintiffs cannot claim any injury tied to their alleged status as a governing body or as sole members of the CVMT. To the extent that Plaintiffs' claims in this case rest upon these foundational assumptions, those claims are barred. *Rosales v. United States*, 89 Fed. Cl. 565, 581-582 (Fed. Cl. 2009) (barring claims that "rest upon the foundational assumption" that was precluded by prior litigation).

**B.    Plaintiffs lack standing.**

Plaintiffs' prior unsuccessful litigation likewise leaves them unable to establish Constitutional standing. Plaintiffs fall far short of alleging a legally-cognizable injury. As discussed above, Plaintiffs' prior litigation precludes them from challenging Federal Defendants' use of lineal descent to determine eligibility to participate in CVMT organization. Because Plaintiffs are precluded from challenging the use of lineal descent to determine eligibility, they cannot establish that they are injured by Interior's implementation of that eligibility determination through the collection of genealogical information from CDIB forms. Relatedly, to the extent that Plaintiffs challenge Federal Defendants' mechanism for obtaining information about lineal descent from specific Miwok ancestors through CDIB forms, Plaintiffs cannot establish that a favorable decision of the Court would redress any injury. Even if the use of CDIB

forms as an information gathering mechanism was somehow illegal (which it is not), Plaintiffs

are precluded from challenging Federal Defendants' collection of genealogical information by

other means. Plaintiffs are therefore unable to establish the causation and redressability

necessary to confer standing.

A plaintiff bears the burden of proof to establish federal jurisdiction. *Lujan v. Defs. Of*

*Wildlife,* 504 U.S. 555, 561 (1992). To meet the Article III standing requirements, Plaintiffs must

establish three elements. *Id*. at 560. First, Plaintiffs must show that they have suffered an "injury

in fact" that is "concrete and particularized" and actual or imminent, not "conjectural" or

"hypothetical." *Id.* (citations omitted). Plaintiffs' injury must be "certainly impending" and

cannot rely "on a highly attenuated chain of possibilities*.*" *Clapper v. Amnesty Int'l USA*, 568

U.S. 398, 409, 410 (2013). Plaintiffs' injuries must be "fairly . . . trace[able]" to BIA's action.

*Lujan*, 504 U.S. at 560-61 (citations omitted). Third, Plaintiffs must show it is likely, as opposed

to merely speculative, that the injury will be addressed by a favorable decision of the Court. *Id*.

And even if a plaintiff claims a procedural injury, "[a] would-be plaintiff must 'show not only

that the defendant's acts omitted some procedural requirement, but also that it is substantially

probable that the procedural breach will cause the essential injury to the plaintiff's own interest.'"

*In Def. of Animals v. Salazar*, 713 F. Supp. 2d 20, 26 (D.D.C. 2010) (quoting *Ctr. for Biological*

*Diversity v. U.S. Dep't of the Interior*, 563 F.3d 466, 479 (D.C. Cir. 2009)).

Plaintiffs fail the injury-in-fact and redressability factors for several reasons. First,

Plaintiffs' alleged injury focuses, in part, on BIA's CDIB program writ large. Plaintiffs contend

that the BIA somehow violated the APA because it did not engage in notice and comment

rulemaking regarding the entire CDIB program. Compl. ¶¶ 111-25. But Plaintiffs fail to identify

any harm to them associated with the supposed failure to engage in rulemaking.[13] To the extent that Plaintiffs complain about a nebulous wrong purportedly suffered by "thousands of individual applicants over decades" due to the absence of rules or regulations governing the use of CDIB's "for any purpose," Compl. ¶¶ 120-21, they lack standing to litigate that harm. *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 662 (D.C. Cir. 2010) (plaintiffs cannot premise standing on an injury to an unidentified group of others).[14] Plaintiffs thus fail to allege any cognizable, substantive injury to themselves.

Second, Plaintiffs suggest that they have been personally injured from BIA's use of CDIB forms in the ongoing CVMT organizational process. But rather than focus on any harm to Plaintiffs themselves needing to submit the information, the alleged harm appears tied to the possibility that (via the forms) others may be allowed to participate in the organization effort. Plaintiffs' want to stop non-Burley Faction "individuals" from "participat[ing] in the formation of a tribal constitution and tribal law" based on their ancestry. Compl. ¶ 3, 5.  Plaintiffs claim that allowing such individuals to participate based on CDIB forms (which are only relevant because they establish ancestry) violates the CVMT's purported "laws and rules related to membership." *Id*. at ¶ 136. Plaintiffs' attack on Federal Defendants' use of CDIB forms is thus premised on their foundational assertion, unanimously rejected by every court to have considered

---

[13] Plaintiffs do not allege that Defendants denied them the ability to participate in the CVMT organizational process. For similar reasons, Plaintiffs have not adequately pled an equal protection or race-based discrimination claim. The Complaint acknowledges that Interior is using the CDIB forms to identify an ancestral link for purposes of the eligibility groups. Compl. ¶ 67. The Complaint, however, does not allege that Interior has extended a benefit to individuals of a different class that has not been extended to Plaintiffs or that the ancestral requirement has made any of Plaintiffs *ineligible* to participate in the Secretarial election.

[14] To the extent that Plaintiffs are "seeking broader injunctive relief regarding" the use of CDIB forms for future processes, they lack standing because they are "raising hypothetical harms that others (not [Plaintiffs]) may suffer down the road." *Perry v. U.S. Dep't of Educ.*, 2021 U.S. Dist. LEXIS 15947, *5-6 (D.D.C. Jan. 28, 2021) (citing *Lujan*, 504 U.S. at 560).

them (pages 25-26, above), that the Burley Faction has established the CVMT's laws and has the right to exclude hundreds of potential CVMT members who descend from the eligible groups of Calaveras County Miwoks. *Id.* ¶¶ 1, 23-32, 50-68, 106-10, 118, Prayer for Relief ¶¶ 3-4. Plaintiffs have no such right, are precluded from relitigating any such alleged right, and cannot premise their standing on such a nullity. *CVMT II*, 515 F.3d at 1263, 1267-68; *CVMT III*, 5 F. Supp. 3d at 99-100; *CVMT V*, 2017 U.S. Dist. LEXIS 84282, at *14-16, *18-19, *21-22. In sum, an alleged injury premised on the fiction that the CVMT is governed by the Burley Faction and its purported laws, or that the Faction can exclude potential members from CVMT organization, is no injury at all because "the Department of the Interior also has the responsibility to ensure that organized tribes are representative of potential membership." *CVMT VI*, 745 F. App'x at 47.

Third, Plaintiffs final harm is based on what they see as a "process" that might – or might not – result in the CVMT organizing pursuant to a Constitution. Compl. ¶¶ 118, 123, 135. Any potential injury to Plaintiffs of that kind is speculative because the process is not complete and, in any event, may not result in any change to the CVMT's status as a recognized but unorganized tribe. *CVMT IX*, 2023 U.S. Dist. LEXIS, 206197, at *11-12 (dismissing past efforts to enjoin allegedly overinclusive CVMT electoral processes because plaintiffs did not establish imminent or irreparable injury). Any injury from a potential Constitution could only occur after an election and the opportunity for yet more legal process. 25 C.F.R. § 81.45(c).[15] Because the ongoing process may result in no change to the CVMT's governance, Plaintiffs' alleged harms are too speculative to support standing. *See Oregonians for Floodplain Prot. v. U.S. Dept. of Com.*, 334 F. Supp. 3d 66, 72-73 (D.D.C. 2018).

---

[15] As discussed above, if Plaintiffs seek to base yet another challenge on their rejected arguments that they are the tribal government, such a challenge would be precluded.

Fourth, even if Plaintiffs were somehow injured (again, which is based on a precluded premise that the CVMT's organization process cannot involve the lineal descendants of Calaveras County Miwoks), any injury is not redressable. Plaintiffs claim that the use of CDIB forms to collect information regarding lineal descent was impermissible because BIA must defer to alleged CVMT "tribal law." Compl. ¶¶ 117, 120, 135-36. But the Burley Faction's 1998 Resolution is not valid CVMT law and the Faction's General Council is not the CVMT's government. *CVMT VI*, 745 F. App'x at 47; *CVMT V*, 2017 U.S. Dist. LEXIS 84282, at *21. Plaintiffs are precluded from challenging BIA's "treat[ment of] lineal descendants of individuals listed on census base rolls as the eligible members for organizational purposes." *Id.* at *18-19, *21-22. The CDIB form is simply *one* convenient mechanism through which Interior can identify individuals eligible to participate in the initial CVMT organization. But even if using a CDIB form to collect genealogical information was somehow impermissible (it is not), Federal Defendants could simply collect genealogical information without using a CDIB form in order to comply with the Washburn and Newland decisions without running afoul of Plaintiffs' pretextual complaint regarding using CDIB forms to obtain the information. Enjoining use of the CDIB form would thus provide no redress. Plaintiffs accordingly lack standing to challenge either the underlying legal validity of CDIBs in general (which is not relevant here) or the use of CDIB forms as a way to determine eligibility under the AS-IA decisions.

## C.     Plaintiffs' challenge is not ripe for review until Interior issues a final decision.

Plaintiffs' claims are also not ripe because the Secretarial election has yet to occur and Plaintiffs would have an opportunity to challenge its results.  The ripeness doctrine limits the power of federal courts in adjudicating disputes. Its roots are found in both Article III's "case or controversy" requirement and prudential considerations favoring the orderly conduct of the

administrative and judicial processes. *State Farm Mut. Auto. Ins. Co. v. Dole*, 802 F.2d 474, 479
(D.C. Cir. 1986). The ripeness "doctrine's purpose is 'to prevent the courts, through avoidance of
premature adjudication, from entangling themselves in abstract disagreements . . . until [a] . . .
decision has been formalized and its effects felt in a concrete way by the challenging
parties.'" *Zukerberg v. D.C. Bd. of Elections & Ethics*, 999 F. Supp. 2d 79, 83 (D.D.C. 2013)
(quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967)). "Replacing one
comprehensive judicial review proceeding, based on a full record, with piecemeal proceedings . .
. would be a poor technique of judicial administration, with unfortunate consequences for courts,
agencies, and litigants as well." *Papago Tribal Utility Auth. v. Fed. Energy Regul. Comm'n*, 628
F.2d 235, 240 (D.C. Cir. 1980). Plaintiffs' effort to interrupt the CVMT Community's ongoing
organizational process prior to that process's completion that would result in "a final agency
action" under 25 C.F.R. § 81.45(c) is both constitutionally and prudentially unripe.[16]

The CVMT Community, as determined and upheld by both Interior and the courts as
those individuals eligible to participate in the Tribe's initial organization under the Washburn
and Newland decisions, is in the midst of a multi-step process that *may* lead to a CVMT
constitution. Plaintiffs appear to claim that the Burley Faction is the entire CVMT and that the
ongoing constitutional process involving non-Burley individuals is thus unlawful.  Compl. ¶¶ 1,
20.  Any injury to Plaintiffs from the CVMT Community enacting a Constitution is speculative
and would not occur (if at all) until if and when the CVMT Community clears several remaining
hurdles to hold an election on a Constitution. If the Community holds an election and votes in
favor of adopting a Constitution, neither of which are predetermined to take place, there will be a

---

[16] As the D.C. Circuit has observed, there may be little need to distinguish between constitutional
and prudential ripeness in cases, like this one, that seek to challenge interim agency actions that
may yield no concrete impact, much less injury. *State Farm,* 802 F.2d at 479.

challengeable final agency action within the meaning of the APA. At that point, should Plaintiffs

feel they were aggrieved by the process or the outcome—and assuming all other jurisprudential

requirements had been met—review of that potential final agency action could proceed in an

orderly and efficient manner based on an administrative record.[17]

### 1. Plaintiffs' challenge is constitutionally unripe.

"Article III does not allow a litigant to pursue a cause of action to recover for an injury

that is not 'certainly impending.'" *Zukerberg*, 999 F. Supp. 2d at 83 (citation omitted). "A claim

is not ripe for adjudication if it rests upon 'contingent future events that may not occur as

anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998);

*Roberts v. Roth*, 594 F. Supp. 3d 29, 35 (D.D.C. 2022) (preliminary recommendation that

plaintiff be discharged from federal employment was unripe because, prior to a final decision,

"plaintiff's alleged injury is theoretical, rather than certain and impending").

Plaintiffs' claims here are accordingly constitutionally unripe because they challenge

interim, non-final steps towards a Secretarial election under 25 C.F.R. Part 81 that have imposed

no concrete injury on Plaintiffs. In *Zukerberg*, the District of Columbia's Council passed, and

the Mayor signed, an Act that would effectively cancel the 2014 election for D.C. Attorney

General. The Court nonetheless found that a challenge to the Act was unripe because even

though "the District has taken the first two steps toward amending the Code — the Council

passed the 2013 Act, and the Mayor did not veto it" because "further action, in this case by

Congress, could nullify it." *Id.* at 85. The act was thus insufficiently final to be "certainly

impending" because "a law that has not yet been passed, is not yet binding, and may never 'have

---

[17] Those hypothetical future claims, like Plaintiffs' claims here, could not evade the preclusive
effect of Plaintiffs' previous judicial defeats.

its effects felt' at all cannot be considered final." 999 F. Supp. 2d at 84. Likewise, claims that

constitutional rights were violated by an allegedly unfair arbitration process were constitutionally

unripe where the arbitration process was ongoing because "plaintiffs cannot demonstrate that

they have suffered an actual injury, or that any harm is 'imminent or certainly impending.'"

*Habliston v. FINRA Regul., Inc*., 2017 U.S. Dist. LEXIS 11691, *11 (D.D.C. Jan. 27, 2017).

The alleged injury that Plaintiffs here seek to prevent is even less certain or concrete.

Indeed, Plaintiffs admit that they are challenging an interim decision in an election "process" that

*may* impact CVMT governance, Compl. ¶¶ 123-24, 134-35. The CVMT Community's ongoing

organizational effort may prove unsuccessful, and thus have no impact on CVMT governance.

*See CVMT V*, 2017 U.S. Dist. LEXIS 84282 at *21. Indeed, the Community's efforts must clear

several hurdles just to reach an election. Page 17, above. The outcome of any election is

uncertain, as the Community may vote against a Constitution. And assuming that the Community

votes to approve a constitution, Plaintiffs may "challenge the results of the Secretarial election."

25 C.F.R. § 81.43-45. *See CVMT IX*, 2023 U.S. Dist. LEXIS 206197, at *11-12; *CVMT VIII*,

2019 U.S. Dist. LEXIS 64432 at *6-8. BIA's Regional Director must "review [the] election

results and challenges" and provide notice of his or her "decisions on challenges," "[w]hether the

proposed governing document . . . [is] approved," and state that "[t]hat the decision is a final

agency action." 25 C.F.R. § 81.45(c). And even if the Regional Director approves a Constitution,

Plaintiffs may challenge that final agency action under the APA should they claim grounds to do

so – several steps down the road from Plaintiffs' current speculative claim of injury. *See CVMT

VIII*, 2023 U.S. Dist. LEXIS 206197, at *11-12. There are several junctures at which the

organizational effort may fail, or, if Plaintiffs wish to challenge an allegedly successful

organizational effort under Interior regulations, they could do so. If the organizational effort fails

33

at any of these junctures, it would leave the CVMT right where they are now – a recognized, but unorganized, Tribe pending either a successful organizational effort or rejection of Plaintiffs' challenge to such an effort. But Plaintiffs' challenge to an interim decision in an ongoing, non-finalized process that may yield no concrete change to the CVMT's organization is Constitutionally unripe.

### 2. Plaintiffs' claims are barred by the prudential ripeness doctrine.

Even assuming *arguendo* that Plaintiffs' claims are constitutionally ripe (which they are not), their claims should be dismissed because they are prudentially unripe. Courts consider three factors in determining whether an agency decision is prudentially ripe for review: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998). The D.C. Circuit has employed a two-part prudential ripeness test under which a court must balance the "fitness of the issues for judicial decision" and the "extent to which withholding a decision will cause hardship to the parties." *Church v. Biden*, 2022 U.S. Dist. LEXIS 85170, *18-19 (D.D.C. May 11, 2022) (quoting *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012)).

Plaintiffs Complaint is not prudentially ripe under either test. Judicial review prior to Interior evaluating challenges to, and making a final decision regarding, a not-yet-conducted election would inappropriately interfere with administrative action and deprive the Court of necessary factual development in the event that any future review is appropriate. This is particularly true where the election is governed by a regulatory process that includes provisions for certain interim administrative challenges. *See* pages 17-18, above. And that necessary factual

development associated with the Part 81 electoral process will provide the administrative record for a subsequent challenge to the acceptance, or rejection, of a future Secretarial election result, whether via administrative challenge under 25 C.F.R Part 2 or in federal court.

Interim actions are unripe for review when further agency action would resolve uncertainty over whether a potential action will be finalized, the nature of the potential action, and the individuals who may be impacted by the action. *See Atl. States Legal Found., Inc. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003) (noting that "even purely legal issues may be unfit for review" when further development would benefit review).[18] Indeed, prudence "especially" militates against intervening in Constitutional claims that may be best reviewed later with a more complete record. *Full Value Advisors, LLC v. SEC*, 633 F.3d 1101, 1106-1107 (D.C. Cir. 2011) (First amendment claim). If Plaintiffs challenge a potential future CVMT Constitution that is ultimately approved by Interior pursuant to the organizational process currently underway, "the reviewing court will have the benefit of a fuller record and the context of a fact-specific" application of the CVMT organizational process. *Friends of Animals v. Haugrud*, 236 F. Supp. 3d 131, 136 (D.D.C. 2017).

Plaintiffs cannot establish that they will suffer hardship from the CVMT proceeding with its organizational efforts because, to the extent any claims are not precluded by their many prior judicial defeats, Plaintiffs retain the ability to challenge any final agency action associated with

---

[18] Constitutional claims are no exception. *E.g. Franco v. Dist. of Columbia*, 422 F. Supp. 2d 216, 224-225 (D.D.C. 2006) (Takings claims are unripe until a taking occurs and the government fails to provide just compensation because plaintiffs cannot "base their claims on mere speculation that their property will be the subject of a wrongful condemnation action as authorized by" statute."); *Karake v. U.S. Dep't of Homeland Sec.*, 672 F. Supp. 2d 49, 53 (D.D.C. 2009) (deportation claims only ripen upon a final decision to deport); *Common Cause v. Trump*, 506 F. Supp. 3d 39, 51 (D.D.C. 2020) (claim that a presidential memorandum unconstitutionally sought to exclude illegal aliens from the reapportionment process presents "the classic institutional reason to postpone review: we need to wait for a rule to be applied to see what its effect will be.").

the CVMT's organizational process. "It is well settled that for an institutional interest in deferral to be outweighed, postponing review must impose a hardship on the complaining party that is immediate, direct, and significant." *State Farm*, 802 F.2d at 479-80. Even a Constitutional claim is not prudentially ripe if the plaintiff does "not identify any way in which this 'here-and-now' effect is even arguably felt" prior to a potential future decision. *In re Sealed Case*, 829 F.2d 50, 61-62 (D.C. Cir. 1987); *Fed. Express Corp. v. Mineta*, 373 F.3d 112, 119 (D.C. Cir. 2004) (dismissing challenge "'because the institutional interests of the agency and the court favor postponing review, and because petitioners have pointed to no hardship' that would result from postponing review until the rules have been applied to their detriment").

These principles apply here. Neither Plaintiffs' general uncertainty or general objections about the ongoing CVMT organizational efforts, nor the possibility that they may have to participate in additional proceedings in the event of a final agency action under 25 C.F.R. § 81.45(c) constitute sufficient hardship to require immediate review. *Nevada v. DOE*, 457 F.3d 78 (D.C. Cir. 2006). The CVMT Community's ongoing, preliminary, and non-final organizational efforts do not alone change the CVMT's organizational status. And no Plaintiff is being forced to "modify its behavior in order to avoid future adverse consequences." *Ohio Forestry*, 523 U.S. at 734. Rather, Plaintiffs are trying to foreclose any progress the CVMT Community may make toward organization because it may frustrate Plaintiffs' claimed interests in excluding that Community. Plaintiffs thus cannot identify a countervailing hardship that might justify prematurely reviewing their unripe claims against the ongoing organizational process – rather, they seek an alternative mechanism to enjoin the organizational process. Tr. of Apr. 12, 2019 Arg. at 43:1-44:7, *CVMT VII*, No. 19-cv-917 (Ex. 2) (rejecting Faction's prior effort).

"Ripeness 'ensures that Article III courts make decisions only when they have to, and

then, only once.'" *Am. Petroleum Inst.*, 683 F.3d at 387 (citation omitted). To the extent that

Plaintiffs' claims are not precluded (which they are as set out above), courts may evaluate any

future claims on the basis of a fully developed administrative record in the event that Interior

issues a final agency action approving the CVMT Community's efforts to approve a Constitution

pursuant to 25 C.F.R. Part 81. Because that outcome is uncertain, and Plaintiffs suffer no

hardship from the CVMT Community continuing its organizational efforts, Plaintiffs' claims are

also prudentially unripe.

**D.      Plaintiffs' broad programmatic challenge to the absence of CDIB Regulations must fail.**

Even setting aside the other jurisprudential problems with the Complaint, Plaintiffs' claim

that the entirety of the CVMT organizational process is invalid based on an alleged failure to

promulgate CDIB regulations is a red herring and must be dismissed. Count I, which alleges that

Federal Defendants have violated the APA, is facially improper to the extent it purports to

challenge an alleged decades-long practice of delay in promulgating regulations regarding

CDIBs in the abstract. *See* Compl. ¶¶ 77-78, 88-89 117-24. But Plaintiffs have not properly pled

an APA claim and Count I's broad attack on the CDIB program must be dismissed under Rule

12(b)(6) because it is an improper programmatic claim.[19]

As an initial matter, Plaintiffs have not identified a final agency action by which they

could challenge the allegedly unlawful use of the CDIB forms. "Finality is a 'threshold question'

that determines whether judicial review is available under the APA." *Asante v. Azar*, 436 F.

Supp. 3d 215, 222-23 (D.D.C. 2020) (quoting *Fund for Animals, Inc. v. U.S. Bureau of Land*

---

[19] The Court also need not reach the merits of Plaintiffs' claims because the claims are precluded and Plaintiffs lack standing to bring them because they have not alleged how they are harmed by needing to submit the ancestral information.

*Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006)). But because Plaintiffs challenge an interlocutory step in a process that may never be consummated, Plaintiffs fail to state a claim for which relief can be granted. *See Trudeau v. FTC*, 456 F.3d 178, 184-85 (D.C. Cir. 2006).

For an action to be "final": 1) it "must mark the consummation of the agency's decisionmaking process, it must not be of a merely tentative or interlocutory nature"; and 2) it "must be one by which rights or obligations have been determined, or from which legal consequence will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). The mere request to collect genealogical information via CDIB forms is not the consummation of a decisionmaking process. Compl. ¶¶ 52, 67, 69-71, 75, 118, 134; *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13, (D.C. Cir. 2005) (quoting *Bennett*, 520 U.S. at 177-78). Plaintiffs fail *Bennett*'s first prong because they "will have a chance to challenge the results of any allegedly improper election" after that election occurs and the decisionmaking process is potentially consummated with a final agency action. *CVMT IX*, 2023 U.S. Dist. LEXIS 206197, *12; 25 C.F.R. §§ 81.43-45, 81.61. Nor do Plaintiffs challenge any action that has "'direct and appreciable legal consequences.'" *Racing Enthusiasts & Suppliers Coal. v. EPA*, 45 F.4th 353, 358 (D.C. Cir. 2022) (citations omitted). Federal Defendants used CDIB forms to collect information to determine eligibility to participate in CVMT organizational efforts. This use of CDIB forms is thus an interim step in an ongoing electoral process under 25 C.F.R. Part 81, which identifies both the steps in that process and challengeable final agency actions. Using CDIB forms as an interim step in a process that may not result in a Constitution (or any other final agency action) fixes no legal relationship. *See CVMT IX,* 2023 U.S. Dist. LEXIS 206197, at *3. And the use of CDIB forms to collect genealogical information imposes no obligations on Plaintiffs, denies them no right, and fixes no legal relationship. Indeed, Defendants provided Plaintiffs with the

opportunity to participate, but did not require participation, in the Constitutional process. Compl.

¶¶ 62, 67. Count I, at a minimum, must thus be dismissed because Plaintiffs challenge no final

agency action. *E.g. Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324

F.3d 726, 732 (D.C. Cir. 2003)

Count I is also improper for addition reasons.  It requests "wholesale improvement" of

Federal Defendants' CDIB program, which is prohibited by the Supreme Court precedent. *See*

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) and *Norton v. S. Utah Wilderness All.*

("*SUWA*"), 542 U.S. 55, 63-64 (2004). And Plaintiffs have not identified any discrete statutory duty

to promulgate regulations. "Courts have steadfastly refused to permit plaintiffs to evade the APA

final agency action requirement by recasting a disagreement with what the agency has done as a

'failure to act' claim." *Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84, 103 (D.D.C. 2000).

Pursuant to section 5 U.S.C. § 706(1), if a party brings a claim arising from an agency's

alleged failure to act, a court may grant relief by "compel[ling] agency action unlawfully withheld or

unreasonably delayed." *Id.* § 706(1). However, a claim for relief under Section 706(1) is limited to

challenges alleging the omission of "a discrete action" that the agency is "required to take." *SUWA*,

542 U.S. at 63. Of relevance here, "[t]he limitation to discrete agency action precludes . . . broad

programmatic attack[s]" seeking wholesale review of an agency program; such review can only

be sought "in the offices of the [agency] or in the halls of Congress, where programmatic

improvements are normally made." *Id.* at 64 (quoting *Lujan*, 497 U.S. at 891). These limitations

in the APA are intended to (a) protect agencies from undue judicial interference and (b) prevent

courts from entering "general orders compelling compliance with broad statutory mandates" that

would "inject[] the judge into day-to-day agency management." *Id.* at 66-67.

Plaintiffs bring precisely the type of sweeping programmatic challenge prohibited by

*Lujan* and *SUWA*. Count I alleges that "Defendants have broadly applied and used the Certificate of Degree of Indian Blood form and the related unpublished procedures for thousands of individual applicants over decades" without publishing rules or regulations. Compl. ¶¶ 120-21. But as explained above, Plaintiffs do not identify how Interior has applied this allegedly unlawful practice to Plaintiffs in a manner that is ripe for review, particularly where Interior is using the CDIB forms as a convenient mechanism to collect ancestral information relevant to an ongoing organizational process. *See Lujan*, 497 U.S. at 891.

To the extent that Plaintiffs complain generally about a delay in promulgating regulations applicable to the overall CDIB program (which Plaintiffs have not demonstrated as a matter of law has any relevance to this case for any purpose), they ignore that "failure to act" claims under 706(1) are only cognizable when limited "to a discrete action" that the agency is "required to take" and when the relief sought is an order compelling *that particular* unlawfully withheld or delayed action. *SUWA*, 542 U.S. at 63-65; *Am. Forest Res. Council v. United States*, 77 F.4th 787, 804 (D.C. Cir. 2023). Plaintiffs' claim fails because they do not identify any statutory duty requiring Interior to promulgate the regulations in question. Indeed, Plaintiffs to not even seek a court order compelling Interior to issue regulations. Rather, they seek an order delaying the CVMT organizational process. Compl. at 32-4.

Putting aside the myriad bases discussed above under which Plaintiffs' claims fail, Federal Defendants note that Plaintiffs' failure to petition for a rulemaking under 5 U.S.C. § 553(e) also dooms Claim I. Plaintiffs cite Section 553 as the basis for their rulemaking claim. Compl. ¶¶ 114-16, 125. Section 553 provides that "[e]ach agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e). If Plaintiffs are truly aggrieved by the absence of CDIB regulations, they could have petitioned for

a rulemaking. *Whale & Dolphin Conservation v. Nat'l Marine Fisheries Serv.*, 573 F. Supp. 3d 175, 179 (D.D.C. 2021); *see also Schuck v. Butz*, 500 F.2d 810, 812 (D.C. Cir. 1974) (agency must be given the opportunity to "consider the advisability of a rule-making proceeding" and that decision and the administrative record should by "shaped by reference to such a request."). If Plaintiffs petition for a rulemaking and Interior declines, "the Secretary's decision not to promulgate a rule is reviewable under the arbitrary and capricious standard." *Pub. Citizen v. Heckler*, 653 F. Supp. 1229, 1240 (D.D.C. 1986). Assuming that such a petition satisfied applicable law, and if Federal Defendants did not respond to such a petition in a reasonable time, the APA may allow Plaintiffs to compel consideration of their petition under 5 U.S.C. § 706(1). *Id.*; *Nat'l Parks Conservation Ass'n v. U.S. Dep't of the Interior*, 794 F. Supp. 2d 39, 44-45 (D.D.C. 2011). But Plaintiffs never requested that Interior promulgate the regulations they claim Interior should have promulgated, despite the fact that BIA requested the same information from the same CDIB forms in past organizational efforts. Compl. ¶¶ 57-59, 62.

Plaintiffs oppose the use of CDIB forms to prove that people outside the Burley Faction are eligible to participate in the CVMT's organization. Plaintiffs seek to recast this opposition as a challenge to Interior not promulgating regulations governing the CDIB process. But 5 U.S.C. § 553 does not permit Plaintiffs to claim that Federal Defendants have unreasonably delayed an action that Plaintiffs never asked Federal Defendants to take. Count I must be dismissed for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) or, alternatively, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## V.    CONCLUSION

Plaintiffs' Complaint must be dismissed with prejudice because Plaintiffs fully and fairly litigated their claims regarding Federal Defendants' determination of eligibility to participate in

CVMT organization based on lineal descent. Plaintiffs' collateral attack on Federal Defendants'
use of CDIB forms to obtain the genealogical facts necessary to make those determinations is
barred by res judicata and collateral estoppel. Plaintiffs cannot evade their past judicial defeats.
And even if their claims were not precluded, their Complaint should still be dismissed because
they lack standing, their challenge to an interim step in an ongoing electoral process is unripe,
and they do not challenge a final agency action. Plaintiffs' latest effort to obstruct the CVMT's
organization must be dismissed.

Date: June 4, 2023

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

*/s/ Matthew Marinelli*
Matthew Marinelli
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0293
Fax: (202) 305-0506
matthew.marinelli@usdoj.gov
*Attorney for Federal Defendants*

**Of counsel:**

Janet Fealk
Department of the Interior
Office of the Solicitor
Pacific Southwest Region
Sacramento, CA