## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CALIFORNIA VALLEY MIWOK TRIBE, MILDRED FERN BURLEY, SILVIA FAWN BURLEY, RASHNEL KAWEHILANI REZNOR, ANGELICA JOSETT PAULK, TRISTIAN SHAWNEE WALLACE, DAVEEN RONELLE WILLIAMS, DARYL STEVEN BURLEY, WILLIAM DAVID BURLEY JR. III, MICHELE DENISE BURLEY,<br><br>                Plaintiffs,<br><br>v.<br><br>DEB HAALAND, SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,<br><br>                Defendants. | CASE NO. 1:24-cv-00947-TSC |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................7

ARGUMENT................................................................................................................9

      I.     Claim Preclusion and Collateral Estoppel are Inapplicable....................9

           A.  Claim Preclusion does not Prohibit this Court's Jurisdiction ...........11
           B.  Issue Preclusion does not prohibit this Court's Jurisdiction.............14

      II.    This Court has Subject Matter Jurisdiction and Therefore Should
           Reject Defendants' 12(b)(1) Motion to Dismiss....................................22

           A.  Standing ...........................................................................................24

               1.  Plaintiffs' Injury is Redressable.................................................25
               2.  Plaintiff' Injury is Imminent, Concrete and Particularized.........27

      III.   The Court Should Reject the Defendants' 12(b)(6) Motion–Plaintiffs
           Claims may be Proved ...........................................................................30

      IV.   Constitutional Ripeness ........................................................................32

CONCLUSION............................................................................................................36

# TABLE OF AUTHORITIES

*Page(s)*

## *Cases*

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) ............................................................................. 35

*ACLU Foundation of So Cal. V. Barr*,
   952 F.2d 457 (D.C. Cir. 1992) ............................................................. 31

*Aguayo v. Jewell*,
   827 F.3d 1213 (9th Cir. 2016) .......................................................... 9, 18

*Allen v. McCurry*,
   449 U.S. 90, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980) ......................... 11

*Allen v. Wright*,
   468 U.S. 737 (1984) ............................................................................. 24

*Apotex, Inc. v. Food & Drug Admin.*,
   393 F.3d 210 (D.C. Cir. 2004) ............................................................. 11

*Asante v. Azar*,
   436 F.Supp.3d 215 (D.D.C. 2020) ....................................................... 32

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................ 24, 31

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................ 30, 31

*Cal. Valley Miwok Tribe v. United States*,
   515 F.3d 1262 (D.C. Cir. 2008) ................................................. 19, 21, 24

*Cal. Valley Miwok v. Zinke 2:16-01345*,
   2017 WL 2379945 (E.D. Cal. 2017) .............................................. passim

*Cal. Valley Miwok Tribe v. Zinke*,
   745 F. App'x 46 (9th Cir. 2018) .......................................................... 18

*CGM, LLC v. BellSouth Telecomms., Inc.*,
   664 F.3d 46 (4th Cir. 2011) ................................................................. 23

*Chrysler Corp. v. Brown*,
   441 U.S. 281 (1979) ............................................................................. 28

*Church v. Biden*,
    573 F.Supp.3d 118 (D.D.C. 2021) ............................................................ 33

*Drake v. Fed. Aviation Admin.*,
    291 F.3d 59 (D.C. Cir. 2002) ........................................................... 11, 13

*E.B. v. U.S. Dep't of State*,
    538 F.Supp.3d 58 (D.D.C. 2022) ............................................................ 23

*Evans v. B.F. Perkins*,
    Co., 166 F.3d 642 (4th Cir. 1999) .......................................................... 23

*Fertilizer v. E.P.A.*,
    935 F.2d 1303 (D.C. Cir. 1991) ............................................................. 35

*Georgetown Univ. Hosp. v. Bowen*,
    821 F.2d 750 (D.C. Cir. 1987) .............................................................. 28

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*,
    115 F.3d 1020 (D.C. Cir. 1997) ............................................................. 30

*Kingman Park Civic Ass'n v. Williams*,
    348 F.3d 1033 (D.C. Cir. 2003) ............................................................. 30

*Lewis v. Norton*,
    424 F.3d 959 (9th Cir. 2005).................................................................. 17

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................. 24

*Miller v. Brown*,
    462 F.3d 312 (4th Cir. 2006)................................................................. 23

*Montana v. U.S.*,
    440 U.S. 147 (1979) ............................................................................. 14

*Morgan v. Covington*,
    648 F.3d 172 (3d Cir. 2011).................................................................. 12

*Morton v. Mancari*,
    417 U.S. 535 (1974) ............................................................................. 26

*National Ass'n of Home Builders v. U.S. Army Corps of Engineers*,
    440 F.3d 459 (D.C. Cir. 2006) .............................................................. 34

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003) ............................................................................. 32

*Nat'l Postal Prof'l Nurses. v. U.S. Postal Serv.*,
  461 F.Supp.2d 24 (D.D.C. 2006) ....................................................... 31

*Natural Resources Defense Council v. Wheeler*,
  955 F.3d 68 (D.C. Cir. 2020) ........................................................... 23

*NextWave Pers. Commc'ns, Inc. v. Fed. Commc'ns Comm'n*,
  254 F.3d 130 (D.C. Cir. 2001) ..................................................... 10, 15

*Novak v. World Bank*,
  703 F.2d 1305 (D.C. Cir. 1983) ....................................................... 10

*Ohio Forestry Ass'n, Inc.*,
  523 U.S ................................................................................. 35, 36

*Otherson v. Dep't of Justice*,
  711 F.2d 267 (D.C. Cir.1983) .......................................................... 14

*Page v. United States*,
  729 F.2d 818 (D.C. Cir. 1984) ..................................................... 11, 13

*Plaintiffs' constitutional rights. Atl. States Legal Found. V. Envtl. Prot. Agency*,
  325 Fed. 281 (D.C. Cir. 2003) ......................................................... 35

*Raines v. Byrd*,
  521 U.S 811 (1997) .................................................................... 24

*Red Fox v. Red Fox*,
  564 F.2d 361 (1977) .................................................................... 14

*Sanchez v. Office of the State Superintendent of Education*,
  959 F.3d 1121 (D.C. Cir. 2020) ........................................................ 33

*Santa Clara Pueblo v. Martinez*,
  436 U.S. 49 (1978) ...................................................................... 9

*Siegel v. Time Warner Inc.*,
  496 F.Supp.2d 1111 (C.D. Cal. 2007) .................................................. 14

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ................................................................. 24

*Stanton v. D.C. Ct. of Appeals*,
  127 F.3d 72 (D.C. Cir. 1997) ...................................................... 11, 13

*State Nat. Bank of Big Spring v. Lew*,
  795 F.3d 48 (D.C. Cir. 2015) .......................................................... 34

4

*Sugar Cane Growers Co-op of Florida v. Veneman,*
  289 F.3d 89 (D.C. Cir. 2002) .......................... 23, 35

*Tillie Hardwick v. United States,*
  Civil No. C-79-1910-SW (N.D. Cal. 1983)……………………………………………...19

*Underwood v. Deputy Asst.,*
  Sec., 14 IBIA 3 (1986) .......................... 26, 32

*University of Tennessee v. Elliott,*
  478 U.S. 788, (1986) .......................... 13

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,*
  454 U.S. 464 (1982) .......................... 24

*Weyrich v. The New Republic, Inc.,*
  235 F.3d 617 (D.C. Cir. 2001) .......................... 31

*Whole Woman's Health v. Hellerstedt,*
  579 U.S. 582 (2016) .......................... 12

*Wyo. Outdoor Council,*
  165 F.3d (D.C. Cir. 1999) .......................... 35

## **Statutes**

5 U.S.C. § 553 .......................... 7, 10, 23, 34

5 U.S.C. § 706 .......................... 7, 10, 11, 12

25 U.S.C. § 476(h) .......................... 19

25 U.S.C. § 5801 .......................... 29

P.L. 93-368 .......................... 19

P.L. 93-638 .......................... 25

P.L. 101-301, 104 Stat. 206 .......................... 19

## ***Rules***

Fed. R. Civ. P.  12(b)(1) .......................... 9, 23

Fed. R. Civ. P.  12(b)(6) .......................... 9

## ***Other Authorities***

65 FR 20776, 20785, § 70.28(a) (April 18, 2000) .......................... 25, 26

65 FR 38229 (June 20, 2000).......................................................................................... 28

69 FR 7800 (Feb. 18, 2003)............................................................................................ 27

73 FR 8054 (Feb. 12, 2008)............................................................................................ 32

Indian Law Journal, Vol. 6, Iss. 2, Art. 4, at p. 169 (May 11, 2018)............................... 8

*Brief for United States at 19, Cal. Valley Miwok Tribe, No. 04-16676,*
    2005 WL 2480819 (9th Cir. 2005)........................................................................... 18

Restatement (second) of Judgments § 24(2) (1982) ..................................................... 11

Restatement (second) of Judgments § 83 (1982)  ........................................................ 13

## INTRODUCTION

Defendants seek to persuade this Court to believe that Plaintiffs' causes of action are ordinary challenges to old or new "decisions," pursuant to 5 U.S.C. § 706. Furthermore, even if this were not a routine § 706 challenge, Defendants contend that Plaintiffs' causes of action are barred by estoppel asserting they are the same administrative law challenges previously adjudicated. Consequently, Defendants argue that the Court lacks subject matter jurisdiction.

Plaintiffs disagree. Plaintiffs' Complaint is pleaded specifically to focus on easily framed questions:

> May Defendants, when organizing an Indian tribe (or any time), lawfully use a Certificate of Degree of Indian Blood without promulgating a rule in accordance with 5 U.S.C. § 553?

> Alternatively, in doing so, if a Certificate of Degree of Indian Blood is used to collect racial or ancestral information from individual United States citizens—not already members of an Indian tribe—is doing so a violation of the U.S. Constitution because Defendants have created and deploying race-based selection criteria without an authorization for participation in an electoral event, adopting a constitution and organizing an already federally recognized Indian tribe?

In short, Plaintiffs argue that Defendants' affirmative use of an unnoticed regulatory process for issuing a so-called Certificate of Degree of Indian Blood to determine whether an individual has sufficient ancestral ties to participate in a tribal law-based organization of governance *via* an electoral referendum is contrary to constitutional prohibitions. Plaintiffs specifically allege that Defendants failed to promulgate regulations prescribing the use of the Certificate of Degree of Indian Blood for determining the ancestry of individuals who are average United States citizens and have never been members of an Indian tribe.[1]

---

[1] "Native Americans are the only group in the United States that possess a document stating the amount of their "blood" to receive government benefits." *See*: SPRUHAN, *CDIB: The Role of the Certificate of Degree of Indian Blood in Defining Native American Legal Identity*, Am.

The government's attempt to reframe this matter as a routine APA claim, therefore subject to this Court's broad deference, is troubling at best and disingenuous at worst. Defendants are either purposefully ignoring the seriousness of the constitutional allegation and their use of rules without notice and comment rulemaking, as alleged in the Complaint, or Defendants believe the United States may solicit Certificates of Degree of Indian Blood from American citizens, use an unauthorized and non-transparent process in order to determine if someone is Indian, and then approve the political and racial status for participation in an electoral referendum on an Indian tribal entity of an already federally-recognized Indian tribe.

Defendants miss the point of Plaintiffs' causes of action and the allegations related to their use of the Certificate of Degree of Indian Blood. Plaintiffs do not seek another bite at the apple but aim to hold the government accountable to Congress' statutory requirements to promulgate regulations and to adhere to the constitutional boundaries of sovereignty. Specifically, Plaintiffs contend the United States must respect the limitations set out in the U.S. Constitution and *the Marshall Trilogy.*

Plaintiffs argue that Defendants use of the Certificate of Degree of Indian Blood process converts a political class into a racial class by using racial qualifications to confer or establish federal benefits for a political entity. In short, tribal members determined by tribal law are eligible for federal programs as a political class. Defendants use of the Certificate of Degree of Indian Blood, notwithstanding the lack of notice-and-comment rule-making, uses race as a qualification for federal benefits and, by default, bestows membership in an Indian tribe. Defendants' actions undermine the inherent sovereignty of the Indian tribe to determine the

---

Indian Law Journal, Vol. 6, Iss. 2, Art. 4, at p. 169 (May 11, 2018). (https://digitalcommons.law.seattleu.edu/cgi/viewcontent.cgi?article=1185&context=ailj) (Last visited June 27, 2024).

criteria for enrollment for tribal purposes pursuant to tribal law. "A tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community." *Aguayo v. Jewell*, 827 F.3d 1213, 1222 (9th Cir. 2016) (*citing Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 n.32 (1978)).

Plaintiffs, consistently recognized as possessing Indian status by the Defendants, are currently irreparably harmed without a clear ruling on whether the use of Certificate Degree of Indian Blood can be employed without the promulgation of regulations. Defendants have already used the Certificate of Degree of Indian Blood as described in this memorandum, have violated and continue to violate the political status of Plaintiffs as Indians. In short, may Defendants use the Certificate of Degree of Indian Blood to bestow individual Indian status be determined by Defendants then permit these individuals to take steps to organize the governance of that Tribe?

As described herein, by unraveling Defendants' sleight-of-hand, it becomes readily apparent that Defendants' Motion to Dismiss should be denied.  Plaintiffs have standing to bring the claims, the claims are not barred by principles of res judicata or collateral estoppel, and Defendants have failed to promulgate regulations for a tool they have deployed to determine lineal descent of ancestry.  By using the Certificate of Degree of Indian Blood Defendants have violated Plaintiffs' constitutional rights. As detailed in this memorandum, Plaintiffs reject Defendants assertions that this Court lacks jurisdiction under Fed. R. Civ. P.  12(b)(1). Moreover, Plaintiffs have properly stated a claim upon which relief can be granted pursuant to Fed. R. Civ. P.  12(b)(6).

**ARGUMENT**

**I.    Claim Preclusion and Collateral Estoppel are Inapplicable.**

Defendants misapprehend the reach of the claim preclusion and issue preclusion doctrines in this matter. The government broadly and imprecisely argues that principles of *re judicata and collateral estoppel* prohibit this Court's jurisdiction. ECF 11-1 at pages 19-26. Defendant provides a detailed, albeit biased, recitation of the tangled and complex background and litigation related to their efforts to "reorganize" or "organize" the Tribe. They correctly characterize that the United States refuses to recognize the Plaintiffs' Tribal government, despite doing so from 1998 to 2007 and then again from 2010 to 2011.

Defendants' histrionics and flawed logic serve only to distract the Court. They fail to connect the factual and legal dots between the issues raised in the Complaint and the precedential issues reviewed and determined by other courts when claiming *res judicata*. At no point in their motion and supporting memorandum do Defendants address head-on the failure to promulgate regulations for purposes in this manner, nor do they cite authority to that the Certificate of Blood Quantum in the manner used in this case. This is because the prior matters have nothing to do with a claim for failure to comply with 5 U.S.C. § 553, rulemaking. Instead, Defendants skip over the statutory mandate, using an unnoticed process and in turn violating the Constitution.

Claim preclusion (*res judicata*) and issue preclusion (*collateral estoppel*) apply in different circumstances and with different consequences to litigants. *See NextWave Pers. Commc'ns, Inc. v. Fed. Commc'ns Comm'n,* 254 F.3d 130, 142 (D.C. Cir. 2001); *Novak v. World Bank,* 703 F.2d 1305, 1309 (D.C. Cir. 1983). Here, neither applies. In support of its argument that some form of *res judicata* applies, the government relies heavily on prior APA challenges to administrative challenges reviewed under 5 U.S.C. § 706. However, merely pointing out that the topic or issue arises in an opinion's *dicta* is far from a holding and does not make *res judicata* or *collateral estoppel* applicable here.

It is blackletter law that *res judicata – claim preclusion* applies when there is:

- A judgment on the merits;
- Same claimant against same defendant;
- The same cause of action is involved in later lawsuit;
- The cause of action was actually litigated.

*Drake v. Fed. Aviation Admin.,* 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen v. McCurry,* 449 U.S. 90, 94, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980)). "Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'" *Id.* (quoting *Page v. United States,* 729 F.2d 818, 820 (D.C. Cir. 1984)).

   A.   *Claim Preclusion does not prohibit this Court's jurisdiction.*

The modern approach claim preclusion requires that the cause of action arises out of the same transaction or occurrence, a "nucleus of fact" that is the subject matter of a *claim* asserted by the claimant. Thus, "[w]hether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'" *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217 (D.C. Cir. 2004) (quoting *Drake*, 291 F.3d at 66). In making that determination, courts look at "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Stanton v. D.C. Ct. of Appeals,* 127 F.3d 72, 78 (D.C. Cir. 1997) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982)).

Here, the claim seeks determination on whether the use of the Certificate of Degree of Indian Blood to organize an Indian tribe requires APA rulemaking or if using the Certificate of Degree of Indian Blood violates the constitution.

Moreover, the claim does not challenge the 2015 or the 2022 decisions of the Assistant Secretary  under 5 U.S.C. § 706 including any aspect of that decision-making. Decision Letter, Kevin Washburn, Assistant Sec'y - Indian Affairs, to Yakima Dixie and Silvia Burley (Dec. 30,

2015); Decision Letter, Bryan Newland, Assistant Sec'y - Indian Affairs to Amy Dutschke (May 31, 2022). Thus, the cause of action here does not seek this Court's § 706 review of any decision related to actual organization or reorganization of the Tribe.  Instead, it focuses on one aspect of how that reorganization may be accomplished – specifically, determining actual individuals from the eligible groups using the Certificate of Degree of Indian Blood form and its processes. In other words, this matter is a different transaction and occurrence. The failure to promulgate regulations underpins this cause of action because it challenges suitability of the Certificate of Degree of Indian Blood form and its process.

In addition, a claim "predicated on events that postdate the filing of a prior case is not the very same as any claim raised in the prior litigation, so a plaintiff is free to bring new claims based on new events without having to worry about claim preclusion." *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 600 (2016). A claim is not "the very same" as one raised in an earlier case if it is "predicated on events that postdate the filing" of the earlier case. As such, claim preclusion "'does not bar claims that are predicated on events that postdate the filing of the initial complaint.'" *Id.* (quoting *Morgan v. Covington*, 648 F.3d 172, 178 (3d Cir. 2011)).

Here, Defendants determined at some point, that they would use the Certificate of Degree of Indian Blood. Nothing in the decisions of 2015 or 2022 indicates show that the Certificate of Degree of Indian Blood would be used in that manner.  In fact, at the heart of the Complaint is the use of the Certificate of Degree of Indian Blood form and processes without notice-and-comment rule-making, as used in this matter.

It appears that Defendants want this Court to believe that Plaintiffs seek to challenge organization directly again. However, Plaintiffs fundamentally challenges "how" the government determines lineal descent when the United States will not conduct relations with the tribal

government *and* when the government has determined that the Tribe must be reorganized or organized for the first time.

Even if the issue was somehow resolved by the Assistant Secretary's 2015 decision, it should not be given *collateral estoppel* effect in this matter. Principles of issue preclusion may only be applied to the fact-finding of administrative bodies acting in a judicial capacity. *See University of Tennessee v. Elliott,* 478 U.S. 788, 798, (1986). Stated another way, the Assistant Secretary was not acting in a judicial capacity when rendering the 2015 decision nor did the Assistant Secretary resolve any disputed issues that the parties had an adequate opportunity to litigate. *See* RESTATEMENT OF (SECOND) OF JUDGMENTS § 83 (where administrative forum has essential procedural characteristics of a court determinations accorded the same finality as court judgments). Instead, the Assistant Secretary is a political position, often with decisions resulting not from litigation but as a result of a particular administration's policy or from political advocacy. Moreover, decisions by the Assistant Secretary should not be given *collateral estoppel* effect in the case of the California Valley Miwok Tribe given the Department's repeated reversal of policy, further weighing against the applicability of *res judicata* here. Accordingly, Defendants' reliance on the 2015 decision is misplaced.

In sum, *res judicata*, claim preclusion, does not preclude claims based on facts not yet in existence at the time of the original action. *Page v. United States,* 729 F.2d 818, 820 (D.C. Cir.1984).729 F.2d at 820 & n. 12; *see also Stanton,* 127 F.3d at 78-79. Hence, the doctrine does not bar a litigant from doing in the present what he had no opportunity to do in the past. *Drake v. Fed. Aviation Admin*, 291 F.3d at 66-67.

Therefore, claim preclusion does not bar this Court's jurisdiction.

B.      *Issue Preclusion does not prohibit this Court's Jurisdiction.*

Next, the doctrine of issue preclusion or collateral estoppel does not prevent the Tribe
from litigating federal issues affecting the rights of Indians in the federal courts.  *See Red Fox v.
Red Fox*, 564 F.2d 361, 365 (1977).  Moreover, when federal jurisdiction is exclusive—such as
with Indian affairs—the preclusive effect of state court decisions is limited.  *Siegel v. Time
Warner Inc.*, 496 F.Supp.2d 1111, 1132-1133 (C.D. Cal. 2007). Therefore, to the extent
Defendants rely on any state court decision in their defense, such reliance is unfounded.  And
even where such reliance may be justified, only the state court's findings of fact may establish
precedent and the federal court is not bound by any "application of law to fact."  *Id.*, and at 1133
[state courts cannot adjudicate issues that are beyond their jurisdiction]. Because this case deals
exclusively with federal processes for the recognition and/or establishment of Tribal membership
and governance, and those issues are exclusively within the jurisdiction of the federal courts,
none of Defendants' cited state court decisions have any bearing on this Court's review of the
Certificate of Degree of Indian Blood process and its uses.  Issue preclusion, applies if three
criteria are met: (1) if in the prior litigation, the issue was "actually litigated, that is, contested by
the parties and submitted for determination by the court;" (2) if the prior litigation was "actually
and necessarily determined by a court of competent jurisdiction;" and (3) if "preclusion in the
second trial [does] not work an unfairness." *Otherson v. Dep't of Justice,* 711 F.2d 267, 273
(D.C. Cir.1983).

Defendants' description of collateral estoppel conveniently avoids stating the test
provided by the *Montana* court.   ECF 11-1 at page19-20, citing *Montana v. U.S.*, 440 U.S. 147
(1979). The *Montana* court inquired (1) "whether the issues presented by this litigation are in
substance the same as those resolved against" the potentially precluded party, (2) "whether

controlling facts or legal principles have changed significantly since" the prior judgment, and (3)

"whether other special circumstances warrant an exception to the normal rules of preclusion."

*Id*. at 155.

Defendants claim that the following issues and/or arguments are precluded:

> (1) the Tribe's ability to challenge "AS-IA Washburn's decision requiring BIA to use lineal descent."
> (2) the Tribe's ability to attack the "use of 'eligible groups' to identify people eligible to take part in CVMT's initial organization."
> (3) the Tribe is already organized.
> (4) the 1998 General Council Resolution is "a valid organizing document."
> (5) the Plaintiffs officially represent the Tribe.
> (6) the Plaintiffs are duly enrolled members of the Tribe "pursuant to the Tribe's enrollment ordinance."
> (7) the BIA "is interfering with the [Tribe]'s internal governance."
> (8) the "Burley Faction are the CVMT's only members."

Defendants purportedly precluded issues include mischaracterizations of the holdings and *dicta*

of prior decisions and/or are subject to both changed and special circumstances that warrant an

exception.  Plaintiffs address each in turn.

Defendants claim, in under *California Valley Miwok Tribe v. Zinke* (referred to as *CVMT*

*V*), that the Court decided the "Burley Faction" lost on the merits of a challenge to "BIA's use of

lineal descent to determine eligibility to participate in the CVMT's organization." Civ. No. 2:16-

01345, 2017 WL 2379945, at *7 (E.D. Cal. 2017); ECF 11-1 at 21.   However, that question was

not before the court.  Estoppel only applies to issues that were <u>actually decided</u> by a court.

Rather, the court first considered "whether the Tribe consists of more than five

members—the four Burley members plus Dixie." *Cal. Valley Miwok Tribe,* Civ. No. 2:16-

01345, 2017 WL 2379945, at *6 (E.D. Cal. 2017)   The court inferred from a previous decision

that because three individuals did not constitute a majority of the Tribe, the Tribe's membership

must be more than five individuals.  *Id*.   In this case, the Plaintiffs' claims are not based on any

determination that the Tribe's membership includes five or fewer individuals, so this is irrelevant.

The court in *CVMT V* also considered whether the Assistant Secretary's 2015 decision was "arbitrary and capricious in finding that the 1998 Resolution and General Council did not sufficiently reflect the will of the Tribe in order to warrant the acknowledgment of the federal government." *Id*. at *8.  The Court decided that Plaintiffs, based on the evidence before it failed to show that the Secretary's refusal to acknowledge the General Council as the Tribe's government was arbitrary and capricious.  *Id*.  In this case, Plaintiffs' claims do not demand that the Secretary acknowledge the General Council as the Tribe's government.

Neither of the issues actually decided in *CVMT V* addressed whether the BIA is required or allowed to use lineal descent to establish eligibility to participate in the Tribe's organization.  Nor does *CVMT V* require the BIA to impose, direct, or prescribe any procedures on the Tribe for its organization under the IRA.  Nothing in the IRA directs or mandates the use of the Certificate of Degree of Indian blood form or related processes. That the plaintiff in *CVMT V* argued the Assistant Secretary's 2015 decision's 'eligible group system' was not based on tribal membership is irrelevant to estoppel because the argument had no bearing on the court's two holdings.  ECF 11-1 at pages 21-25.  Nor does the argument have bearing on the causes of action brought before this Court related to the use of the Certificate of Degree of Indian Blood as a tool for determining voter eligibility to vote in a referendum to create and adopt a new constitution under tribal law.

Further, Defendants mischaracterize the *CVMT V* court's analysis of the BIA's treatment of lineal descent. *Id*. at 22 ["The Court's grant of summary judgment upheld AS-IA Washburn's treatment of lineal descendants of individuals listed on census base rolls as the eligible members

for organizational purposes." (quotations omitted)]. The plaintiffs argued that BIA's policy

established that "only Dixie and the Burley faction were eligible to form a tribal government."

*Cal. Valley Miwok Tribe,* Civ. No. 2:16-01345, 2017 WL 2379945, at *7 (E.D. Cal. 2017).  The

court evaluated BIA policy and stated that:

> The BIA has previously treated lineal descendants of individuals listed on census base
> rolls as the eligible members for organizational purposes. (*See* Apr. 24, 2012
> Memorandum (Docket No. 50-2) (declining "to decide who are the current citizens of the
> [Tejon Indian] Tribe," but noting that the tribe's citizens are those who "were enumerated
> on and are descended from the 1915 Terrell BIA Census.")… *cf. Lewis v. Norton*, 424
> F.3d 959, 960-961 (9th Cir. 2005) (noting that a tribe's governing documents defined
> membership as all lineal descendants of persons named on base rolls with a certain
> percentage of "Indian blood").

*See CVMT v. Zinke*, Civ. No. 2:16-01345, 2017 WL 2379945, at *7(E.D. Cal. 2017).

Thus, the court analyzed whether prior BIA policy was consistent with the *CVMT V*

plaintiffs' description and determined that, at least in one instance, it was not.

Further, nothing in the Assistant Secretary's 2015 decision requires Defendants to use

lineal descent to violate the Tribe's sovereignty and force it to organize under the IRA.  Rather,

the Assistant Secretary's 2015 decision identifies individuals who may be potentially eligible

members of the Tribe based on the BIA's general history of identifying potentially eligible

members from historical rolls of Indians in California.  Notably, that process has never been

applied in a circumstance like the forced organization of an Indian tribe under the IRA.  Instead,

it has most often been used to assist tribes' court-settled, wrongful termination claims to

reconstitute themselves. *See, e.g., Tillie Hardwick* v. *United States*, Civil No. C-79-1910-SW

(N.D. Cal. 1983) (stipulated judgment entered to resume relations with Indian tribes and restore

Indian status of individual Indians and restore certain lands to Indians that were impacted by the

ineffective efforts by Defendants to implement the California Rancheria Act of 1958, 85-671

(Aug. 18, 1958)). Again, those circumstances of termination and the development of any process

to determine eligibility for an unorganized tribe are not present for the Miwok Tribe here. *See* Brief for United States at 19, *Cal. Valley Miwok Tribe,* No. 04-16676, 2005 WL 2480819 (9th Cir. 2005). In fact, the United States has argued that the tribe's status was never terminated. *Id.* at *5.

Defendants also mischaracterize *CVMT VI* by lifting a quotation from a three-paragraph affirmation out of context. *Cal. Valley Miwok Tribe v. Zinke*, 745 F. App'x 46 (9th Cir. 2018) (known as CVMT VI). *CVMT VI* was an appeal from *CVMT V* – and as such the issues decided by the *CVMT V* court are the only issues to which estoppel could apply. *Id.*  In reviewing whether the *CVMT V* court correctly decided that the Assistant Secretary's 2015 decision did not violate the APA, the *CVMT VI* court expressly stated that: "Tribal membership is a matter to be determined by the tribe." *Id.* at 47.  Within that clear maxim provided by the U.S. Supreme Court, the *CVMT VI* court added that the BIA has a responsibility to ensure that tribes organized under the IRA are "representative of potential membership." *Id.* (citing *Aguayo v. Jewell*, 827 F.3d 1213, 1226 (9th Cir. 2016)).  The *CVMT V* court and the *Aguayo* court were both wrestling with the validity of constitutions that had been submitted to the Secretary for approval under the IRA.  Those circumstances are not present in this case, because Plaintiffs are not challenging the Secretary's consideration of any proposed constitution to reorganize the Tribe under the IRA.

Ultimately, Defendants' primary claim for estoppel is a red herring, and the bulk of their motion to dismiss should be denied on that ground.  Plaintiffs are not estopped from arguing that the BIA's use of the Certificate of Degree of Indian Blood as a proxy for the race-based establishment of federal rights is unconstitutional.

Defendants claim that Plaintiffs are estopped from asserting that the Tribe "is already an organized Tribe." ECF No. 11-1 at page 25.[2]  What Defendants continue to omit is that prior decisions have only determined that the Tribe is not organized <u>under the IRA</u>.  Defendants cite *CVMT II*, in which the court decided that the Secretary was entitled to "reject a proposed constitution" under 25 U.S.C. 476(h) (recast as 5123(h)), the provision of the IRA that expressly states a Tribe may continue its traditional governance. *Cal. Valley Miwok Tribe v. United States*, 515 F.3d 1262, 1264 (D.C. Cir. 2008) (referred to as *CVMT II*).  This means, the Secretary is not required to accept and issue her stamp of approval on a new non-IRA constitution ministerially. Plaintiffs agree with the qualified statement that the Tribe is not currently organized under the IRA. However, this does not preclude the Tribe from arguing that it is inherently organized as a political entity by the nature of its being federally recognized, or that the Tribe is organized under any non-IRA form of traditional or other government. Indeed, in 1990 Congress ratified amendments to the IRA eliminating many of the restrictions found in the original statute and conveyed the federal government's intent to treat all federally-recognized tribes similarly and expand tribal access to federal programs. Pub. L. No. 101-301, 104 Stat. 206 (May 24, 1990). <u>Plaintiffs are arguing narrowly, when the government (or a court) determines that a tribe is not organized sufficiently to conduct relations, Defendants may not use the Certificate of Degree of</u>

___

[2] In *CVMT II*, the posture of the matter is key, as the case was brought by of several Plaintiffs, in this matter, seeking the Secretary's review and approval of a tribally approved and submitted IRA constitution. In addition, at the time of filing in the District Court in 2006, Defendants had been annually awarding P.L. 93-368 contract monies for self-governance to some of the Plaintiffs as tribe's government representatives. In proceedings before the District Court, Defendants, at the time, never argued the Tribe was *unorganized,* it argued the Tribe was *required organization under the IRA* and to do so required the Tribe to include putative members. Today, Defendants now argue that the Tribe is being organized for the first time. *See Newland Letter*, May 31, 2022.

Indian Blood form and process to determine eligibility of individuals to participate in a reorganization or organization of a tribe.

In this context, the Defendants' attempt to emphasize the Tribe's 1998 governing document as a basis for preclusive effects is, again, a red herring.  For the Court's benefit it is worth reviewing Defendants' mischaracterizations of the law and facts to highlight the level of effort Defendants are exerting to distract the Court and attempt to avoid being held accountable for the need to promulgate a regulation, as a threshold, and one that that does not violate the Constitution.

Defendants assert that Plaintiffs cannot claim the 1998 General Council resolution is a valid organizing document by referring to *CVMT V*. *Cal. Valley Miwok Tribe*, Civ. No. 2:16-01345, 2017 WL 2379945, at *2 (E.D. Cal. 2017). As noted above, this is not one of the questions decided by the court.  The court in *CVMT V* impliedly validated the 1998 General Council resolution in its decision—contrary to Defendants' claim.  The *CVMT V* court contemplated that any challenge to the 1998 General Council resolution was time-barred and acknowledged that the BIA has previously "recognized the General Council," but added that the BIA's earlier recognition "does not preclude the BIA from later questioning [the General Council's] legitimacy."  *Id*. at *8.  The court analogized the BIA's change in dealings with the General Council to a "policy change" subject to the arbitrary and capricious standard of review. *Id*. The court did not, in any way, invalidate the 1998 General Council resolution when determining that the BIA's change in policy toward relations with the General Council was not arbitrary and capricious.

Defendants assert that the Tribe lacks a constitution and that any enrollment ordinance enacted by the Burley Faction "is a nullity".  Therefore, they argue the Plaintiffs cannot claim to

be duly enrolled members of the Tribe by reference to *CVMT II*. ECT 11-1 at page 25; *Cal. Valley Miwok Tribe,* 515 F.3d at 1262. - This assertion is a mixture of inaccuracies that directly contradicts several courts that have found the Plaintiffs to be tribal members.

First, as noted above, *CVMT II* did not hold that the Tribe has no governing document(s). The court's affirmation of the Secretary's rejection of a proposed constitution under the IRA has no bearing on the Tribe's governance before the submission of the proposed constitution (and after its rejection).  Thus, Defendants' logical leap that without the Secretary's approval of the proposed constitution the Tribe's government is neutered is unwarranted and invites the court to wade into the impermissible waters of tribal self-governance.

Contrary to Defendants' assertion, the *CVMT V* court stated that tribal leader Yakima Dixie permitted five of the Plaintiffs to "enroll in the Tribe" in 1998, and that the BIA met with Dixie and those Plaintiffs "in order to discuss formal organization of the Tribe" the same year. According to the court, "the Tribe's membership then expanded with the addition of the Burley faction." *Cal. Valley Miwok Tribe,* Civ. No. 2:16-01345, 2017 WL 2379945, at *2 (E.D. Cal. 2017)  None of the federal decisions invalidate Plaintiffs' membership in the Tribe.

Next, Defendants over-extend federal decisions to inadvertently imply that the courts have intruded into the Tribe's distinctly sovereign control over membership and self-governance. ECF No. 11-1 at page 26 (citing *CVMT V*).  The *CVMT V* court decided that the Secretary could reject a proposed constitution submitted under the IRA.  However, the Secretary's rejection of a constitution that <u>reorganizes</u> the Tribe's government does not disestablish the tribal governance that already existed in whatever form that governance takes.  The IRA expressly authorizes Indian tribes to operate under any traditional form of government without federal interference— and requires a request to reorganize under an IRA constitution to originate within the Tribe itself.

21

Nothing in the court's prior decisions precludes Plaintiffs from objecting to the BIA's interference in the Tribe's sovereign right to self-govern, including its sovereign right to determine its membership and leadership.

Defendants offer another red herring in an attempt to persuade the Court to establish new precedent by determining which individuals are members of the Tribe.  ECF No. 11-1 at 26. Defendants claim that Plaintiffs are estopped from claiming that the "Burley Faction are the CVMT's only members" and cite Plaintiffs' Complaint paragraphs 1, 3, and 23. ECF No. 1 at 3, 23. However, nothing in those paragraphs claims that the "Burley Faction" are the only tribal members, and nowhere in Plaintiffs' Complaint is that group defined.  Defendants have mischaracterized the Plaintiffs as the "Burley Faction" in an apparent attempt to try and conflate all of Plaintiffs with a subset of them that previously defended the Tribe's sovereignty from BIA interference.

Nothing in Plaintiffs' complaint asks this court to decide how many individuals are tribal members, or whether specific individuals are (or are not) tribal members except to the minimal extent that may be necessary to establish a constitutional injury.  To the contrary, Plaintiffs' merely ask this Court to decide the Defendants cannot decide how many individuals are tribal members, or whether specific individuals are (or are not) tribal members by applying race-based criteria in an underground Certificate of Degree of Indian Blood regulatory process.  Plaintiffs' request is consistent with prior court decisions, and with the foundational principles of tribal sovereignty and constitutional limits on race-based federal benefits.

## II.     This Court has Subject Matter Jurisdiction and Therefore Should Reject Defendants' 12(b)(1) Motion to Dismiss.

A motion to dismiss for lack of Article III standing is properly considered under Fed. R. Civ. P. Rule 12(b)(1) because 'Article III gives federal courts jurisdiction only over cases and controversies,' and standing is 'an integral component of the case or controversy requirement.'" *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011) (*quoting Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006)).  While the "plaintiff has the burden of proving that subject matter jurisdiction exists," in reviewing a Rule 12(b)(1) motion, a district court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Id. Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

Title 5 U.S.C. § 553 requires that all substantive rules undergo notice and comment procedure where the public is informed of the content of the rule and given the opportunity to submit comments to the agency. *E.B. v. U.S. Dep't of State*, 538 F.Supp.3d 58, 62 (D.D.C. 2022). For a party to challenge an agency's failure to undergo a notice and comment, the party must establish standing by demonstrating "(1) an injury in fact that is concrete and particularized as well as actual or imminent; (2) a causal connection between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, that the injury will be redressed by a favorable decision. *Natural Resources Defense Council v. Wheeler*, 955 F.3d 68, 76 (D.C. Cir. 2020).[3]

Plaintiffs' Complaint alleges a deprivation of a procedural protection of notice and comment rulemaking that impacts their rights as Indians as well as their constitutional rights.

---

[3] In *Sugar Cane Growers* a trade group established a prima facie case by showing that a U.S. Department of Agriculture program caused the supply of sugar to increase and drove the price of sugar down. *Sugar Cane Growers Co-op of Florida v. Veneman*, 289 F.3d 89, 94 (D.C. Cir. 2002). Notably, the D.C. Circuit found that a plaintiff who "alleges a deprivation of a procedural protection to which he is entitled never has to prove that if he had received the procedure the substantive result would have been altered." *Id*. The party is only required to show that the procedural step was connected to the substantive result. *Id*.

### A.  Standing

To establish "the irreducible constitutional minimum of standing" at the pleading stage, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), Plaintiffs must "clearly . . . allege facts demonstrating" that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  An "injury in fact" is '"an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id*. at 1548 (quoting *Lujan*, 504 U.S. at 560).  The injury must be "legally and judicially cognizable," and the dispute must be one that "is traditionally thought to be capable of resolution through the judicial process."  *Raines v. Byrd*, 521 U.S 811, 819 (1997); *see also Spokeo,* 136 S. Ct. at 1547.

The requirement of "actual injury redressable by the court" is to ensure that "the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action."  *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982).  Moreover, "under Article III, 'federal courts may exercise power only in the last resort, and as a necessity.'"  *Raines*, 521 U.S. at 819 (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984)).  Finally, although the Federal Rules' pleading standard does not require detailed factual allegations, it still "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As Defendants are well aware, several individual Plaintiffs were recognized by Defendants as the recognized government of the Tribe for many years. *See Cal. Valley Miwok Tribe,* 515 F.3d at 1262.  (the Secretary of Interior reviewed a petition from members of Tribe,

including Plaintiffs, the Appeals Court determined that when the Plaintiffs sought review and approval of constitution it must include a majority of eligible members). Defendants omit this detail that some of the Plaintiffs were recognized at the time as the government of the Tribe and that Defendants were awarding P.L. 93-638 Government Self-Determination Funds to Plaintiffs government. Indian Self-Determination and Education Assistance Act, Pub. L. No. 93-638, 88 Stat. 2206 – 2217 (1975). Defendants rely now on the full panoply of CVMT district and circuit court case law for its *res judicata* and *collateral estoppel* claims arguing that Plaintiffs are precluded precisely because they were parties to the litigation and had *standing*.

In this context, Plaintiff as recognized Indians with Indian status, and formally those conducting relations with the United States under tribal law and under federal statute, claim standing both as individuals with Indian status and as matters of a tribal government.

1.  Plaintiff's Injury is Redressable.

Defendants assert that Plaintiffs cannot establish a legally cognizable injury.  ECF No. 11-1 at page 26.  In part, Defendants' claim hinges upon an attempt to preclude Plaintiffs from arguing that the BIA cannot use the Certificate of Degree of Indian Blood process and lineal descent to imbue tribal membership on particular individuals without Tribal consent.  *Id*. As described above, Defendants' claims for issue preclusion are inaccurate, irrelevant, and improper.

Defendants also assert that even if the Certificate of Degree of Indian Blood process is illegal, Plaintiffs cannot prevent the BIA from collecting "genealogical information by other means." *Id.* at 27.  The Certificate Degree of Indian Blood, by the Defendants own admission, does not establish membership in a tribal nation; because "only a tribe may determine membership."  *See*: *Certificate of Degree of Indian or Alaska Native Blood*, 65 Fed. Reg. at

20776, 20785, § 70.28(a) (April 18, 2000).  Indeed, the Defendants have also admitted that there is no statute or regulation which requires the issuance of the Certificate Degree of Indian Blood. The Certificate Degree of Indian Blood was simply "granted for the convenience of the government, *solely* at the Assistant Secretary's discretion, to facilitate its work in determining *eligibility of persons for federal programs.*" *Underwood v. Deputy Asst. Sec.,* 14 IBIA 3, at 19 (1986) (*emphasis added*). Critically, the definition of "Indian" that uses blood quantum <u>and tribal membership</u> is a political not racial classification. *Morton v. Mancari*, 417 U.S. 535 (1974). The distinction here is that the individuals selected by the Defendants to determine lineal descent, ancestry, lack the basic requirement of tribal membership to be Indians, and the Defendants are therefore placing the cart before the horse, and are *only* establishing a racial classification, not a political classification. As such, the Defendants' trust responsibility is defined by its political relationship with the tribal government, not the racial makeup of specific individuals.

The Defendants are not merely collecting genealogical information from voluntary participants for no particular purpose. Plaintiffs have plead facts that indicate that Defendants knew that even to collect information using the Certificate of Degree of Indian Blood, the agency was required to promulgate regulations. Without such regulations Plaintiffs injuries are real, imminent and are redressable. The redressable injury involves several components which this court's decision would have the effect of finally determining:

- whether the federal government can demand involuntary submission of individuals' race and ancestry information if the individual wishes to receive federal benefits as a member of an Indian tribe;

- if so, whether the federal government may use a process to collect those involuntary submissions without notice-and-comment rulemaking (represented by the CDIB in this case);

- if so, whether the federal government can use the information collected to imbue benefits on an individual who is not (or may not be) a tribal member to participate in the reformation of the tribe's governance;

- if so, whether the federal government can use the information collected to authorize an individual who is not (or may not be) a tribal member to vote on a new governing document that may authorize individuals not currently eligible for membership to become eligible for membership in a tribe.

Thus, as a representative process for those four underlying issues, the Court's decision to invalidate the Certificate of Degree of Indian Blood for one or more of those purposes will necessarily preclude Defendants from creating a substitute process that has the same effect.

Moreover, the historical record shows that Defendants are incapable of adopting the Certificate of Degree of Alaskan and Indian Blood process in an open and public process because of significant opposition from those that would be affected by it. *See, e.g.,* 69 FR 7800 (Feb. 18, 2003).  So, a decision by the Court that Defendants cannot use the Certificate of Degree of Indian Blood to gather race and ancestry information from individuals without notice-and-comment rulemaking would affirmatively redress Plaintiffs' concern.

Therefore, injury is redressable by this Court.

2.  Plaintiffs' Injury is Imminent, Concrete and Particularized.

Plaintiffs identify facts that Defendants have concocted a convoluted process full of administrative steps that are nowhere found in any statute, regulation or publicly adopted

document to circumvent the imminent, concrete, and particularized injury requirements for constitutional standing.  Despite Defendants' carefully crafted strategy to avoid judicial review, Plaintiffs can establish constitutional standing.

First, the whole of Defendants' process to intrude on tribal sovereignty is not merely the omission of "some procedural requirement."  ECF No. 11-1 at page 27. The Defendants have omitted the entire Administrative Procedure Act and established procedures for use of the Certificate of Degree of Indian Blood to determine ancestry when they reorganize or organize a tribe without any notice or public participation. In *Chrysler Corp. v. Brown*, the Supreme Court noted that "courts are charged with maintaining the balance: ensuring that agencies comply with the 'outline of minimum essential rights and procedures' set out in the APA." *Chrysler Corp. v. Brown*, 441 U.S. 281, 313 (1979). The Court emphasized that "regulations subject to the APA cannot be afforded the 'force and effect of law' if not promulgated pursuant to the statutory procedural minimum found in the Act." *Id*.

Furthermore, this Circuit has made clear that to ensure that agencies do not "make a mockery of the provisions of the APA with impunity" court have the authority to hold the government accountable. *Georgetown Univ. Hosp. v. Bowen*, 821 F.2d 750, 758 (D.C. Cir. 1987) aff'd, 488 U.S. 204 (1988). This Court should not allow Defendants to "make a mockery" of its mandate and the APA by failing to publish a proposed rule and to solicit public comments, which it is clearly capable of doing. *See, e.g.,* 65 FR 38229 (June 20, 2000).

Second, as judicially and administratively recognized members of the Tribe, Plaintiffs have an immediate and vested interest in protecting the Tribe's sovereignty and self-determination from assault and in preventing non-members (and the federal government) from coopting the Tribe's governance for their own benefit.  Defendants' act of creating a committee

with the intent to develop a new governing document for the Tribe, and without the Tribe's

consent, is an immediate injury to the Tribe's sovereignty and applies the federal government's

coercive power to the Tribe's governance.

Third, federal benefits for the Tribe are quantifiable and can therefore be divided (in

theory) among the number of tribal members as a per-capital benefit. Regardless of the Tribe's

ultimate use and distribution of its federal benefits, the number of tribal members has an effect

on the per-capita number of resources the Tribe has available from federal and non-federal

sources. In addition, only tribal members may determine the use of governmental resources from

federal and non-federal sources. Thus, the BIA's use of the Certificate of Degree of Indian

Blood to imbue the status of tribal member on any individual (only a tribal member may vote in

a Secretarial election) has the immediate effect of diluting both the resources available to each of

Plaintiffs and each of Plaintiffs' individual voting power in determining the Tribe's use of those

resources. Thus, immediately upon Defendants' issuance of the Certificate of Degree of Indian

Blood letters, declaring that individuals are eligible to participate in the Tribe's organization,

Plaintiffs suffered injury in fact to their own individual interests.

Thus, Plaintiffs need not wait until the Secretary has received or approved an IRA

constitution before, they can establish immediate, concrete, and particularized injury.

Furthermore, it may be fairly argued that once an IRA constitution is approved by the Secretary,

that constitution cannot be challenged or undone except by a majority of the individuals that

voted to approve it. *See* 25 U.S.C. § 5801. Therefore, the Court must recognize some intervening

injury (such as to the property and voting rights of individuals the court has already determined

are tribal members) that can prevent such a final and unassailable administrative decision.

Moreover, even if the Secretary's approval of an IRA constitution were reviewable, the

substantial disruption to tribal self-governance that will occur during the pendency of any such review and the potential rejection of the BIA's unconstitutional processes at that point will deeply undermine the tribal polity and its ability to continue self-governance.

Therefore, Plaintiff's injuries are imminent, concrete and particularized.

## III.     The Court Should Reject the Defendants' 12(b)(6) motion—Plaintiffs Claims may be Proved.

Plaintiffs plead more than mere "labels and conclusions," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007), and any inference in Plaintiffs' favor must be "reasonable" and based on "more than a sheer possibility" that particular facts are true. *Id.*; *see also Scott v. District of Columbia*, Civil Action No. 05-1853 (RWR), 4-5 (D.D.C. May. 23, 2006) (""A Rule 12(b)(6) motion is intended to test the legal sufficiency of the complaint. But the complaint need only set forth 'a short and plain statement of the claim, . . . giving the defendant fair notice of the claim and the grounds upon which it rests. . . . 'Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues.' . . . In light of these liberal pleading requirements, 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citations omitted).").

In considering a Rule 12(b)(6) motion, a court must accept all the allegations in a plaintiff's complaint as true and construe them in the light most favorable to the plaintiff. *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1027 (D.C. Cir. 1997). "Rule

12(b)(6) is not a device for testing the truth of what is asserted of for determining whether a plaintiff has any evidence to back up what is in the complaint . . . the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test . . . Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complainant's factual allegations . . . or, we add, a judge's belief that the plaintiff cannot prove what the complaint asserts." *ACLU Foundation of So Cal. V. Barr*, 952 F.2d 457, 467 (D.C. Cir. 1992) (quotations and citations omitted). "Dismissal under Rule 12(b)(6) is proper when, taking the material allegations of the complaint as admitted, and construing them in plaintiffs favor, the court finds that the plaintiff has failed to allege all the material elements of his cause of action." *Weyrich v. The New Republic, Inc*., 235 F.3d 617, 623 (D.C. Cir. 2001) (internal citations omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its fact." *Twombly*, 550 U.S. at 570. "A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. "In evaluating a motion to dismiss, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat'l Postal Prof'l Nurses. v. U.S. Postal Serv.,* 461 F.Supp.2d 24, 27 (D.D.C. 2006).

Plaintiffs' Complaint identifies facts that connect to the causes of action, and Defendants' actions are final; moreover, those actions connect to the fact alleged on the face of the Complaint.  For instance, Plaintiffs identify facts indicating that the use of the Certificate of

Degree of Indian Blood has been constitutionally suspect in since at least 1986 and the agency

knew that notice and comment rulemaking were required. *Underwood v. Deputy Asst. Sec.,* 14

IBIA 3, 21 (Jan. 31, 1986).  Furthermore, Plaintiffs identify facts that Defendant pursued notice

and comment rulemaking related to the collection of information under a Certificate of Degree of

Indian Blood process then abandoned that effort. 73 FR 8054 (Feb. 12, 2008).  Moreover,

Plaintiffs identify Defendants effort to publicly solicit Certificates of Degree of Indian Blood

from the public at large to seek those individuals that Defendants could then determine were in

its "eligible" groups to reorganize or organize the tribe for the first time. *See, e.g.*, ECF No. 1 at

page 12.[4]

       Plaintiffs have stated claims upon which relief can be granted.

## IV.    Constitutional Ripeness

       In so far as Defendants are attempting to coax the Court to view this as a § 706 challenge

related to finality and therefore other dispositive issues that would bar jurisdiction including

exhaustion of administrative remedies or ripeness. Plaintiffs are resistant to Defendants' effort to

again attempt to reframe or mischaracterize the facial factual allegations of Plaintiffs Complaint.

       Ripeness is a "justiciability doctrine designed to prevent the courts, through avoidance of

premature adjudication, from entangling themselves in abstract disagreements." *Nat'l Park*

*Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003). The D.C. Circuit frequently refers

to constitutional ripeness and prudential ripeness as the two forms of ripeness that must be

satisfied, although the analysis of the two frequently merge into one. When a case is

constitutionally ripe a plaintiff is able to demonstrate an injury in fact. *Asante v. Azar*, 436

---

[4] In so far as the Court believes the Plaintiff has unartfully plead the finality of some action that
connects the dots to challenging the use of the CDIB the Plaintiff requests opportunity to amend
the complaint.

F.Supp.3d 215, 224 (D.D.C. 2020). A case is prudentially ripe when the case is fit for a judicial

decision. *Church v. Biden*, 573 F.Supp.3d 118, 135 (D.D.C. 2021). Prudential ripeness considers

whether the facts of the case are adequately developed enough for the court to review the case,

balanced against the "hardship" which would be imposed on plaintiffs if the court declined to

review the issue. *Sanchez v. Office of the State Superintendent of Education*, 959 F.3d 1121,

1124 (D.C. Cir. 2020).

In short, the ripeness doctrine asks, "whether the case has been brought at a point so early

that it is not yet clear whether a real dispute to be resolved exists between the parties." 15 FED.

PRAC. 3d § 101.70[2].

More specifically, the D.C. Circuit distinguishes between a "purely legal claim in the

context of a facial challenge," and a factual challenge that is dependent on the application of law

to facts. *See, e.g., Sanchez v. Office of the State Superintendent of Education*, 959 F.3d 1121,

1124 (D.C. Cir. 2020). In *Sanchez*, a group of educators brought a challenge to Washington

D.C.'s education requirements for staff at childcare facilities. *Id*. at 1123. Plaintiff's alleged that

the regulations as written violated the nondelegation doctrine, substantive due process, and equal

protection. *Id*. The plaintiffs *Sanchez* were also able to show hardship because of the time and

resources expended searching for educational opportunities to fulfill the requirements. *Id*. The

challenge was found ripe because the challenge was not on the administration of the regulations,

but on the "face" of the regulations themselves and showed a cognizable hardship. *Id*. at 1124.

This is contrasted with *Saline Parents v. Garland*, where a group of parents initiated a

First Amendment lawsuit on Attorney General Garland for a directive issued to law enforcement

regarding threats to school officials, which the parents claimed violated their Constitutional

rights. 88 F.4th 298, 302 (D.C. Cir. 2023). There had been no enforcement action based on the

directive, including towards the parents. *Id.* at 306. The challenge was not ripe because the Plaintiffs were challenging a specific discretionary directive without showing a concrete harm.

Further distinguishing this matter, it is the focus of the matter before this Court: failure to comply with 5 U.S.C. Sec. 553 mandates rule-making in the context of ripeness allegation. When a lawsuit challenges the legality of a government action the D.C. Circuit has found ripeness even without a direct harm. Then Judge Kavanaugh writing for the Circuit court, that "it would make little sense to force a regulated entity to violate a law (and thereby trigger an enforcement action against it) simply so that the regulated entity can challenge the constitutionality of the regulating agency." *State Nat. Bank of Big Spring v. Lew*, 795 F.3d 48, 54 (D.C. Cir. 2015).

The D.C. Circuit has also held that a bank's challenge the constitutionality of the Consumer Financial Protection Bureau was ripe when the question was brought by a regulated entity challenging the lawfulness of the existence of its regulator. *Id.* at 53. The D.C. Circuit is likely to find that a case is ripe when there is a challenge to the law on its face. Here, Plaintiffs challenge the Defendants' failure to promulgate a rule as required under the APA.

When addressing the ripeness of a regulation which has yet to go into effect the court distinguishes between a challenge that assumes "that the agency will exercise its discretion unlawfully" and a challenge claiming that the "faithful application would carry the agency beyond its statutory mandate." *National Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 440 F.3d 459, 465 (D.C. Cir. 2006). The Court found that the challenge was to how the faithful application of a dredging regulation would be applied, and not to the discretionary application of a law. *Id.*

In so far as Defendants refer to the disruptive nature of this action or the long-use of the Certificate of Degree of Indian Blood by Defendants, such arguments fall short in a ripeness setting especially when imminent and concrete injury is facially alleged in Plaintiffs' Complaint.

In examining the disruptive consequences of vacatur courts exam whether "the egg has been scrambled and there is no apparent way to restore the status quo ante." *Sugar Cane Growers*, 289 F.3d at 97. In *Fertilizer v. E.P.A.* the D.C. Circuit permitted the regulation created outside of APA procedure to remain in place while the EPA conducted a notice and comment period because of safety concerns. *See Fertilizer v. E.P.A.,* 935 F.2d 1303, 1312 (D.C. Cir. 1991). In *Sugar Cane Growers* the U.S.D.A. policy subject to challenge had been in place for multiple crop seasons and was not vacated because removing the rule "seems an invitation to chaos." 289 F.3d at 97. Here, the application of the Certificate of Degree of Indian Blood has been utilized by the BIA trying to move forward to eventually administer a "Secretarial Election" for the Tribe to adopt a governing document. However, the Secretarial Election has not occurred. It is unlikely that "the egg has been scrambled" to where a court would justify leaving a procedurally defective rule in place.

Thus, prudential ripeness thus turns on two considerations: (1) whether an issue is presently fit for judicial decision and (2) whether and to what extent the parties will endure hardship if a decision is withheld. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). Plaintiffs identify considerable facts and allege hardship because its use has identified individuals to participate in matters that are committed to tribal law. *Ohio Forestry Ass'n, Inc., 523 U.S. at 733; Wyo. Outdoor Council, 165 F.3d at 48.* Plaintiffs are identifying a purely legal issue, whether the agency failed to comply with Notice and Comment rulemaking and in doing do used an unnoticed rule to violate Plaintiffs' constitutional rights. *Atl. States Legal Found. V.*

*Envtl. Prot. Agency,* 325 Fed. 281, 284 (D.C. Cir. 2003).  Furthermore, because no additional fact would make this case better fit for review–even absent prosecution, Plaintiffs' injury is immediate and real. And because Plaintiffs' rights connect to their Indian status as well as their constitution rights including equal protection rights, these rights are continuously undermined by the existence of the challenged use of the Certificate of Degree of Indian Blood, Plaintiffs' claims are ripe for review. Finally, nothing in Plaintiffs claims "rests upon contingent future events that may occur as anticipated, or indeed may not occur at all," therefore this matter is ripe for adjudication. *Id.*

Even if Plaintiffs' alleged injuries were not so speculative as to fall below the bare constitutional minimum for standing, it would not follow that the Court could not "benefit from further factual development of the issues presented."  *See Ohio Forestry Ass'n v. Sierra Club,* 523 U.S. 726, 733 (1998).  That approach is especially true in this matter, where many legal issues and facts identified by Plaintiffs are all fluid and interrelated.  Each issue cannot be decided in a factual vacuum. Whether the use of the Certificate of Degree of Indian Blood process requires notice and comment rulemaking and its use by Defendants, otherwise, is constitutionally adequate, for example, requires thorough factual development through discovery.

Therefore, Plaintiffs' claims are ripe for review.

## CONCLUSION

This case is not about membership. This is a case about the legal structures that uphold the Federal government's system of administrative law. The Bureau of Indian Affairs no longer consists of Indian Agents acting unilaterally out in the field.  Plaintiffs have a clear judiciable claim that meets the Supreme Court's pleadings and standing standards. No prudential doctrines

bar this Court's jurisdiction. And Plaintiffs' causes of action identify facts and raise issues of law

that indicate that Defendants violated the Administrative Procedure Act rulemaking requirement;

then by passing that mandate and uses an unnoticed regulatory tool to violate constitutional

rights. Plaintiffs urge this Court to reject the Defendants' motion to dismiss and allow discovery

in the matter to procedure to ensure that this Court conducts a full ventilation of the facts.


Dated:  June 27, 2024,                                        Respectfully submitted,


PEEBLES KIDDER BERGIN & ROBINSON LLP


By:        /s/ Peter D. Lepsch
           Peter D. Lepsch (D.C. Bar No. 495548)
           Peebles Kidder Bergin & Robinson LLP
           401 9th Street, NW, Ste. 700
           Washington, DC 20015
           (202) 450-5106
           plepsch@ndnlaw.com

           Patrick R. Bergin (D.C. Bar No. 493585)
           Peebles Kidder Bergin & Robinson LLP
           2020 L Street, Suite 250
           Sacramento, CA 95811
           (916) 441-2700
           pbergin@ndnlaw.com

           *Attorneys for the California Valley Miwok*
           *Tribe*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of June, 2024, I caused the service of the attached **Memorandum of Points and Authorities In Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss** by filing it with the Clerk of the Court via the CM/ECF System, which sends a Notice of Electronic Filing to all parties with an e-mail address of record who have appeared and consented to electronic service.  To the best of my knowledge, all parties to this action receive such notices.

By:     /s/ Peter D. Lepsch
        Peter D. Lepsch (D.C. Bar No. 495548)
        Peebles Kidder Bergin & Robinson LLP
        401 9th Street, NW, Ste. 700
        Washington, DC 20015
        (202) 450-5106
        plepsch@ndnlaw.com

        Patrick R. Bergin (D.C. Bar No. 493585)
        Peebles Kidder Bergin & Robinson LLP
        2020 L Street, Suite 250
        Sacramento, CA 95811
        (916) 441-2700
        pbergin@ndnlaw.com

        *Attorneys for the California Valley Miwok Tribe*