IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CALIFORNIA VALLEY MIWOK TRIBE, MILDRED FERN BURLEY, SILVIA FAWN BURLEY, RASHEL KAWEHILANI REZNOR, ANGELICA JOSETT PAULK, TRISTIAN SHAWNEE WALLACE, DAVEEN RONELLE WILLIAMS, DARYL STEVEN BURLEY, WILLIAM DAVID BURLEY JR. III, MICHELE DENISE BURLEY,** | Case No. 1:24-cv-00947-TSC |
| Plaintiffs, | |
| v. | |
| **DEB HAALAND, SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,** | |
| Defendants. | |

## FEDERAL DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

Matthew Marinelli
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0293
Fax: (202) 305-0506
matthew.marinelli@usdoj.gov

*Attorney for Federal Defendants*

Of counsel:

Janet Fealk
Department of the Interior
Office of the Solicitor
Pacific Southwest Region
Sacramento, CA

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     ARGUMENT .......................................................................................................... 2

        A.      Plaintiffs' opposition is founded on numerous misstatements about the
                organizational process they seek to disrupt .......................................... 2

        B.      Plaintiffs' claims are barred by res judicata and collateral estoppel ...................... 4

                1.      Res Judicata bars Plaintiffs from challenging CVMT organization
                        efforts ................................................................................... 4

                2.      Collateral estoppel bars Plaintiffs from challenging CVMT
                        organization efforts ................................................................. 7

                3.      Plaintiffs' remaining efforts to evade collateral estoppel are
                        meritless ............................................................................... 10

                4.      Plaintiffs' efforts to avoid preclusion, if successful, leave them
                        unable to state a claim on which relief can be granted ............................. 13

        C.      Plaintiffs lack standing ............................................................................. 15

        D.      Plaintiffs' claims are constitutionally unripe ....................................... 20

        E.       Plaintiffs' claims are prudentially unripe .......................................... 23

        F.      Plaintiffs programmatic challenge to the absence of CDIB regulations must
                fail. ................................................................................................ 24

III.    CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aguayo v. Jewell,*
    827 F.3d 1213 (9th Cir. 2016) ................................................ 9

*Aranda v. Sweeney ("CVMT VIII"),*
    2019 U.S. Dist. LEXIS 64432 (E.D. Cal. Apr. 15, 2019) ...................... 12, 16, 17, 18

*Atl. States Legal Found., Inc. v. EPA,*
    325 F.3d 281 (D.C. Cir. 2003) ................................................ 20

*\*Cal. Valley Miwok Tribe v. Haaland ("CVMT IX"),*
    2023 U.S. Dist. LEXIS 206197 (D.D.C. Nov. 17, 2023) ............... 2, 4, 11, 14, 17, 24

*Cal. Valley Miwok Tribe v. Jewel,*
    2016 U.S. Dist. LEXIS 147053 (E.D. Cal. Oct. 24, 2016) ................... 18, 19, 22, 24

*Cal. Valley Miwok Tribe v. Jewell, ("CVMT III"),*
    5 F. Supp. 3d 86 (D.D.C. 2013) ........................................... 11, 13, 15

*\*Cal. Valley Miwok Tribe v. United States, ("CVMT II"),*
    515 F.3d 1262 (D.C. Cir. 2008) ......................................... 11, 12, 13, 15

*\*Cal. Valley Miwok Tribe v. Zinke ("CVMT V"),*
    2017 U.S. Dist. LEXIS 84282 (E.D. Cal. May 31, 2017) ........................ 4

*\*Cal. Valley Miwok Tribe v. Zinke, ("CVMT VI"),*
    745 F. App'x 46 (9th Cir. 2018) .......................................... 4, 9, 15

*Church v. Biden,*
    2022 U.S. Dist. LEXIS 85170 (D.D.C. May 11, 2022) ........................... 24

*Cole v. Boeing Co.,*
    845 F. Supp. 2d 277 (D.D.C. 2012) ........................................ 25

*Food & Drug Admin. v. All. for Hippocratic Med.,*
    219 L. Ed. 2d 121 (2024) ................................................. 16, 19

*Food & Drug Admin. v. All. for Hippocratic Med.,*
    602 U.S. 382 (2024) ...................................................... 18

*Hale v. Collis,*
    2022 U.S. Dist. LEXIS 135583 (D.D.C. July 29, 2022) ..................... 7, 8, 10, 11

*Lewis v. Norton,*
    424 F.3d 959 (9th Cir. 2005) .............................................. 8

*New Hampshire v. Maine,*
    532 U.S. 742 (2001) ....................................................... 8

*Red Fox v. Red Fox*,
    564 F.2d 361 (1977) ................................................................................................ 9

*Sanchez v. Off. of the State Superintendent of Educ.*,
    959 F.3d 1121 (D.C. Cir. 2020) ........................................................................... 20

*Santa Clara Pueblo v. Martinez*,
    436 U.S. 49, 98 S. Ct. 1670, 56 L. Ed. 2d 106 (1978) .......................................... 9

*State National Bank of Big Spring v. Lew*,
    795 F.3d 48 (D.C. Cir. 2015) ................................................................................ 21

*Sugar Cane Growers Co-op of Fla. v. Veneman*,
    289 F.3d 89 (D.C. Cir. 2002) ................................................................................ 21

*Toms v. Off. of the Architect of the Capitol*,
    650 F. Supp. 2d 11 (D.D.C. 2009) .......................................................................... 7

*Tucker v. HP Inc.*,
    2023 U.S. App. LEXIS 21511 (3rd Cir. Aug. 17, 2023) ......................................... 7

*Whole Woman's Health v. Hellerstedt*,
    579 U.S. 582 (2016) ................................................................................................ 6

**Statutes**

25 U.S.C. § 5801 ........................................................................................................... 18

5 U.S.C. § 706 ............................................................................................................... 14

**Regulations**

25 C.F.R. § 81 ................................................................................................................. 3

25 C.F.R. § 81.45(c) ...................................................................................................... 19

## I.      INTRODUCTION

Plaintiff Silvia Burley and her family members (the "Faction" or "Plaintiffs") have

engaged in a decades-long campaign to frustrate the CVMT Community's effort to organize.

One of the Faction's unsuccessful lawsuits challenged then-Assistant Secretary-Indian Affairs

("AS-IA") Kevin Washburn's 2015 decision ("Washburn decision") that the lineal descendants

of specific Miwok Indians from Calaveras County, California, could participate in the ongoing

efforts to organize a CVMT government. The Eastern District of California and the Ninth Circuit

rejected the Faction's claims on the merits. The Faction now seeks to evade the preclusive effect

of their prior litigation by claiming that they are not challenging either the Washburn decision or

a 2022 decision by AS-IA Bryan Newland that affirmed the Washburn decision's approach to

determining eligibility through lineal descent. Plaintiffs instead cast this case as an attack on the

Certificate of Degree of Indian Blood ("CDIB") forms rather than an effort to take another bite at

numerous decisions rejecting Plaintiffs' antimajoritarian efforts. But Federal Defendants only

used the CDIB forms to acquire the basic genealogical information necessary to comply with the

Washburn and Newland decisions. Plaintiffs have already litigated—and lost—their challenge to

using lineal descent to identify the community of potential CVMT members that are eligible to

be included in organizational efforts. Plaintiffs' current challenge is thus precluded.

Second, even if Plaintiffs' claims were not precluded, they should be dismissed for other

reasons. Plaintiffs' opposition falls far short of establishing that they are suffering any injury

from the CVMT organizational process and confirms that any conceivable injury could not occur

until the CVMT navigates several additional hurdles to BIA's approval of a CVMT constitution.

Plaintiffs' speculation about potential future harm cannot support standing. For similar reasons,

Plaintiffs' challenge to BIA's use of the CDIB forms—an interim step in a not-yet-final

process—is constitutionally and prudentially unripe. Finally, Plaintiffs retreat from their broad

attack on the CDIB program, effectively abandoning their improper programmatic claim.

This Court should not reach the merits of Plaintiffs' pretextual challenges to BIA's use of

the CDIB form to obtain basic genealogical information to determine eligibility to participate in

the CVMT's organizational process. Plaintiffs cannot relitigate their attack on the Washburn

decision's use of lineal descent by recasting it as a narrow challenge to use of a particular federal

form. Nor can Plaintiffs challenge an interim step in an ongoing and unfinished electoral process

that is uncertain to yield any change in the CVMT's governance. Because Plaintiffs' claims are

precluded, this Court should dismiss the Complaint with prejudice. And even if Plaintiffs' claims

are not precluded, the Complaint should be dismissed without prejudice as unripe.

## II.    ARGUMENT

### A.    Plaintiffs' opposition is founded on numerous misstatements about the organizational process they seek to disrupt.

Plaintiffs seek to evade the preclusive effects of their challenge to the Washburn decision

by inaccurately describing both that decision and the ongoing CVMT organizational efforts. For

example, Plaintiffs claim that "nothing in the Assistant Secretary's 2015 decision requires

Defendants to use lineal descent to violate the Tribe's sovereignty and force it to organize under

the IRA." Pls.' Opp. to Defs.' Mot. to Dismiss, ECF No. 13 at 17 ("Opp."). That statement is

dense with inaccuracies. First, contrary to Plaintiffs' claim, the Washburn decision <u>required</u>

Federal Defendants to use lineal descent to ensure the validity of any organizational effort. The

Washburn Decision was "a decision on eligibility criteria" that based eligibility to participate in

any future CVMT organizational effort on descent from certain Calaveras County Miwoks. *Cal.*

*Valley Miwok Tribe v. Haaland* ("*CVMT IX*"), 2023 U.S. Dist. LEXIS 206197, at *6-7 (D.D.C.

Nov. 17, 2023)*; Washburn decision at 4-6 (Dec. 20, 2015) (Ex. 1). Second, Federal defendants

are not requiring the CVMT Community to organize. They are instead assisting in an organizational process sought by the community to ensure that "any governing document developed and accepted by the tribe was done so in a manner that was inclusive of the entire tribal community". ECF No. 1-2 at 29; Fed. Defs.' Mem. in Supp. of Mot. to Dismiss, ECF No. 11 at 17 ("Mem") (setting forth regulatory process facilitating CVMT Community's choice). Whether that process results in the CVMT being organized depends, among other things, on the Community's votes. *See* 25 C.F.R. Part 81; Mem. at 17 (identifying electoral steps). As discussed below, pages 11-13, 15-17, Plaintiffs lack any sovereignty themselves and Federal Defendants' assistance with an election does not violate the CVMT's Tribal sovereignty.

Plaintiffs also repeatedly distort the manner in which Federal Defendants are using CDIB forms. For example, Plaintiffs claim Federal Defendants are: 1) using CDIB forms to collect "racial" information; 2) creating a "race-based selection criteria"; 3) "issuing a so-called Certificate of Degree of Indian Blood"; 4) "solicit[ing]" CDIBs to determine the ancestry of "average United States citizens"; and 5) "solicit[ing] CDIBs "to determine if someone is Indian." Opp. at 7-8. None of these characterizations are accurate. Federal Defendants are not soliciting or issuing CDIBs as part of the ongoing CVMT organizational process. Federal Defendants have not and are not intending to make certifications regarding anyone's degree of Indian blood. Indeed, Federal Defendants are not using *CDIBs* at all. Federal Defendants are instead using CDIB *forms* as the means to collect genealogical information. Mem. at 16, 30, 40. And rather than using that genealogical information to create some racial criteria, Federal Defendants are implementing the Washburn and Newland decisions' requirement to permit descendants of specific named Miwoks to participate in an organizational process. *Id.*; ECF No. 1-2 at 16-17. Plaintiffs cannot evade dismissal based on misstatements about the nature of BIA's actions.

3

**B.**     **Plaintiffs' claims are barred by res judicata and collateral estoppel.**

**1.**     **Res Judicata bars Plaintiffs from challenging CVMT organization efforts.**

The Faction's two decades of unsuccessful litigation preclude their claims here. Mem. at 6-13, 19-26. The Faction directly challenged the Washburn decision's inclusion of hundreds of CVMT Community members in CVMT organization. *Id*. at 20 (citing the Faction's complaint). The Faction briefed and lost on the merits of that claim. Mem. at 20-24 (citing the Faction's summary judgment brief, *Cal. Valley Miwok Tribe v. Zinke* ("*CVMT V*"), 2017 U.S. Dist. LEXIS 84282, at \*18-19, \*21-22 (E.D. Cal. May 31, 2017), and *Cal. Valley Miwok Tribe v. Zinke* ("*CVMT VI*"), 745 F. App'x 46, 47 (9th Cir. 2018)). Plaintiffs seek to evade the preclusive effects of *CVMT V* and *VI* by claiming that this case is a distinct challenge to the use of CDIBs and does not challenge "any aspect" of the Washburn or Newland decisions. Opp. at 11-12. That argument does not withstand scrutiny.

This case, like *CVMT V* and *VI*, challenges Interior's use of ancestral information to determine whether the descendants of specific Calaveras County Miwoks are eligible to take part in the CVMT's initial organization. Mem. at 23-24. Indeed, Plaintiffs' opposition makes clear that their current claims are nothing more than a new legal attack on the Washburn decision's direction that applicants submit proof of descent from certain Miwoks if they wish to participate in a CVMT organizational process. *See* Opp. at 26-27 (claiming that Plaintiffs' injury is redressable because Plaintiffs seek relief that "preclude[s] Defendants from creating a substitute process that has the same effect" of implementing the Washburn decision's requirement to permit members of eligible groups to participate in CVMT organization); *id*. at 28 (Plaintiffs

seek to prevent alleged "non-members" from "coopting the Tribe's governance").[1] Plaintiffs

cannot evade the preclusive effects of losing their attack on the Washburn decision's

establishment of eligibility to participate in CVMT organization based on lineal descent by

casting this case as a legal challenge to the OMB-approved form that Federal Defendants use to

implement that decision. Mem. at 23 (collecting cases). Plaintiffs' true grievance is the use of the

form to obtain genealogical information required to identify members of the eligible groups, not

the form itself. But Plaintiffs have already litigated and lost a challenge to Interior's reliance on

lineal descent to determine eligibility. And Plaintiffs fail to address, much less distinguish, the

wealth of cases establishing that they cannot continuously relitigate their challenges to BIA's use

of ancestral information by tweaking their legal theory. Compare *Id*. at 21-25 with Opp. at 11-13.

Res judicata thus bars Plaintiffs' claims.

　　　None of Plaintiffs effort to distinguish *CVMT V* and *VI* withstand scrutiny. Plaintiffs

assert that this case is different because they "fundamentally challenge[] 'how' the government

determines lineal descent when the United States will not conduct relations with the tribal

government." Opp. at 12-13. But Plaintiffs already raised their "fundamental" challenge to lineal

descent – opposing any use of lineal descent to determine eligibility to participate in CVMT

organization. Mem. at 19-23 (citing *CVMT V* and *VI*). The United States' refusal to "conduct

relations" with the Burley's purported government offers no distinction, much less a material

distinction. Plaintiffs litigated that issue too, and *CVMT V* affirmed Federal Defendants'

determination that there is no CVMT government. *CVMT V*, 2017 U.S. Dist. LEXIS 84282, *20-

---

[1] Federal Defendants do not concede that Plaintiffs' claims are redressable, *see* pages 19-20, below, but only note that Plaintiffs' effort to establish redressability lays bare the gravamen of their claims.

21.[2] Nor can Plaintiffs evade *CVMT V* by claiming that this case is different because "the government has determined that the Tribe **must** be reorganized or organized for the first time." Opp. at 13 (emphasis added). The government has determined no such thing. Indeed, this misstates BIA's efforts to assist the CVMT Community in holding an election to determine **if** the Community wishes to organize under a particular Constitution. *See* pages 2-3, above. In sum, Plaintiffs do not identify any material distinction between their attack on the use of lineal descent in *CVMT V* and *VI* and their attack here.

Plaintiffs are incorrect, Opp. at 12, that the bare existence of events that postdate their losses in *CVMT V* and *VI* robs those decisions of any preclusive value. *Sczygelski v. U.S. Customs & Border Patrol Agency*, 48 F. Supp. 3d 80, 86-87 (D.D.C. 2014). Plaintiffs' reliance, *id.*, on *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582 (2016) is misplaced. *Whole Woman's Health* held that a "postenforcement as-applied challenge is not 'the very same claim' as [a group of Texas abortion providers'] preenforcement facial challenge." *Id*. at 599. The post-enforcement claims were not precluded by a pre-enforcement loss because: 1) "postenforcement consequences . . . were unknowable before" the challenged bill went into effect; and 2) the post-enforcement challenge hinged on **material** new facts – that "a large number of clinics . . . in fact closed" after the challenged Texas bill. *Id*. at 602. In contrast, Federal Defendants' identification of groups of Miwoks eligible to participate in CVMT organization based on lineal descent was not unknowable when the Faction litigated *CVMT IV*, *V*, and *VI*. Indeed, Plaintiffs' explicitly attacked the "'eligible group' system . . . that equates *potential* membership with *actual*

---

[2] As the Interior Board of Indian Appeals held, a subsequent "decision does not afford Burley another bite at the apple to litigate whether the Department should recognize a governing body for the Tribe and recognize Burley as a tribal representative." *Cal. Valley Miwok Tribe v. Cent. Cal. Agency Superintendent, BIA*, 68 IBIA 6, 7, 21 (2021).

membership" because it "includes [in the organization process] a larger pool of eligible people based not upon membership, but based upon descent." *CVMT V* Br. at 37-38, ECF No. 11-2. Plaintiffs fail to identify any **material** new facts. That failure is fatal to their claims. *Toms v. Off. of the Architect of the Capitol*, 650 F. Supp. 2d 11, 22 (D.D.C. 2009).

Rather than identifying a material new fact postdating *CVMT V*, Plaintiffs define their current challenge as an attack on paperwork. Materials that do "not bring forth anything new and merely confirm[] what had been made plain" in a prior case do not free Plaintiffs from res judicata. *Tucker v. HP Inc*., 2023 U.S. App. LEXIS 21511, *4 (3rd Cir. Aug. 17, 2023). BIA's use of CDIB forms to allow individuals to prove their eligibility is just such an immaterial fact that, at most, confirms that applicants must establish lineal descent from certain Miwoks. But "[a]n objection to the continued application of . . . policies is not a new claim." *Hale v. Collis*, 2022 U.S. Dist. LEXIS 135583, *12-13 (D.D.C. July 29, 2022). Plaintiffs' purportedly "fundamental" challenge is nothing more than a complaint about the particular form that interested individuals used to apply to participate in an organizational effort. Plaintiffs cannot evade the preclusive effect of *CVMT V* and *VI* with such a thin, immaterial distinction.

### 2. Collateral estoppel bars Plaintiffs from challenging CVMT organization efforts.

Plaintiffs' challenge to the Washburn decision is also barred by collateral estoppel based on Plaintiffs' many losses in Federal courts. Mem. at 20-21, 24-25 (citing *CVMT I*, *II*, *V*, and *VI*) Plaintiffs' arguments to the contrary are meritless.

Plaintiffs are incorrect that the issue of "BIA's use of lineal descent to determine eligibility to participate in the CVMT's organization" was "not before the court in *CVMT V*," Opp. at 15. Plaintiffs directly placed the issue before the Court. Mem. at 10 (quoting the Faction's *CVMT V* Summary Judgment Briefs, ECF No. 11-2). Plaintiffs are also wrong, Opp. at

16, that *CVMT V* decided only two issues and that neither issue "addressed whether the BIA is required or allowed to use lineal descent." The court held that the Washburn decision was not arbitrary to reject the Faction's purported government because the Faction failed to "show[] that the majority of adult members approved the [Burley] General Council." *CVMT V*, 2017 U.S. Dist. LEXIS 84282, *17. The court reasoned:

> Third, the BIA has previously treated lineal descendants of individuals listed on census base rolls as the eligible members for organizational purposes. (See Apr. 24, 2012 Memorandum (declining "to decide who are the current citizens of the [Tejon Indian] Tribe," but noting that the tribe's citizens are those who "were enumerated on and are descended from the 1915 Terrell BIA Census")); Alan-Wilson v. Bureau of Indian Affairs, 30 IBIA 241, 249-50 (1997) ("Unorganized Federally recognized tribes would look to historical records and rolls to determine recognized membership for organizational purposes."); cf. Lewis v. Norton, 424 F.3d 959, 960-61 (9th Cir. 2005) (noting that a tribe's governing documents defined membership as all lineal descendants of persons named on base rolls with a certain percentage of "Indian blood"). The December 2015 Decision applies the same approach.

*Id. at* *18-19. The court's analysis of the lineal descent issue was thus an essential part of its conclusion that the Washburn decision was not arbitrary. *Compare id*. at *16-21 with Opp. at 16. Plaintiffs are thus barred from relitigating the issue. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).[3]

---

[3] Plaintiffs make other unsound arguments in attempting to refute issue preclusion. Plaintiffs misleadingly quote, Opp. at 17, *CVMT V*'s repudiation of the Faction's assertion that BIA policy established that only Yakima Dixie and the Faction were eligible to form a government. Plaintiffs describe this passage as demonstrating "one instance" in which BIA's policy was inconsistent with Plaintiffs' characterization. *Id*. Plaintiff's minimization of this language is meritless. *CVMT V* upheld the Washburn decision because it was consistent with BIA's identification of descendants of people on "base rolls" as eligible to take part in the initial organization of a Tribe. *CVMT V*, 2017 U.S. Dist. LEXIS 84282, *18-19. Plaintiffs likewise claim that that they "do not demand that the Secretary acknowledge the General Council as the Tribe's government." Opp. at 16. But Plaintiffs' arguments assume that a 1998 General Council resolution, and the Council itself, is valid. *See* Opp. at 20 (suggesting that the 1998 General Council resolution is valid); 25-29 (claiming that they have standing because they, as the Tribe, have not sought to organize). Plaintiffs' claims are based upon purported authority that can only exist if the 98 resolution was valid. Washburn held, and the *CVMT V* court affirmed, that "the United States does not recognize

Plaintiffs' efforts to minimize *CVMT VI*, Opp. at 18, also miss the mark. The Ninth

Circuit affirmed *CVMT V* by highlighting that:

> The district court correctly held that the [Washburn] Decision did not violate the
> APA. Tribal membership is a matter to be determined by the tribe, <u>Santa Clara</u>
> <u>Pueblo v. Martinez</u>, 436 U.S. 49, 72 n.32, 98 S. Ct. 1670, 56 L. Ed. 2d 106 (1978),
> but the Department of the Interior also has the responsibility to ensure that organized
> tribes are representative of potential membership, <u>Aguayo v. Jewell</u>, 827 F.3d 1213,
> 1226 (9th Cir. 2016). The Decision comported with that responsibility.

*CVMT VI*, 745 Fed. Appx. 46, 47. The Ninth Circuit thus focused its affirmance on the issue that

Plaintiffs seek to relitigate—implementation of the Washburn decision's use of lineal descent

from certain Miwoks as the mechanism for ensuring that CVMT organization is representative of

potential membership. *Id.*; Mem. at 10-11.

Plaintiffs tellingly respond with a strawman, arguing they are not estopped from

relitigating issues they lost in state court. Opp. at 14. As an initial matter, Plaintiffs description of

*Red Fox v. Red Fox*, 564 F.2d 361, 365 (1977), Opp. at 14, is incorrect. Plaintiffs posit that the

case held that issue preclusion does "not prevent the Tribe from litigating federal issues affecting

the rights of Indians in Federal Courts" even if they previously lost those claims and issues in

state court. Opp. at 14. But *Red Fox* held the opposite. The court affirmed dismissal based on res

judicata, while noting that a Federal court "need not accord full adjudicatory effect" to

"transparently erroneous" state court decisions that "would work a serious injustice." 564 F.2d at

365. Plaintiffs do not even attempt to argue that giving preclusive force to their state court losses

would be unjust. Regardless, Plaintiffs' state court-based argument is irrelevant—Plaintiffs are

precluded because of issues they lost in federal court in *CVMT I, II, V*, and *VI*. Mem. at 25-36.

Plaintiffs erect a second strawman by arguing that the Washburn decision is not subject to

---

any leadership for the Tribe, including the General Council established by the 1998 Resolution."
*CVMT V*, 2017 U.S. Dist. LEXIS 84282, *16.

collateral estoppel because AS-IA Washburn "was not acting in a judicial capacity." Opp. at 13. But Federal Defendants did not argue that collateral estoppel applies because AS-IA Washburn determined that individuals could participate in CVMT organization by establishing descent from certain Miwok individuals. Collateral estoppel bars Plaintiffs' claims because Plaintiffs litigated and lost on that very issue in *federal* courts. Mem. at 24-25 (citing *CVMT V*, 2017 U.S. Dist. LEXIS 84282, at *18-19, *21-22). The court upheld AS-IA Washburn's use of lineal descent in rejecting the Faction's argument that "only [Yakima] Dixie and the Burley faction were eligible to form a tribal government." *CVMT V*, 2017 U.S. Dist. LEXIS 84282, at *17-18. The court determined that the Burleys and Mr. Dixie were not the "majority of adult [CVMT] members" because the Washburn decision reasonably applied BIA's longstanding approach of "treat[ing] lineal descendants of individuals listed on census base rolls as the eligible members [of a tribe] for organizational purposes." *Id*. at *18-19. This reasoning was a necessary pillar of the court's decision that "Plaintiffs have failed to show how the Assistant Secretary was arbitrary and capricious in issuing the December 2015 Decision." *Id*. at *21.

Plaintiffs cannot revive their attack on Interior's use of lineal descent to ensure that any CVMT organization is representative of potential members by recasting that very issue as a "race-based establishment of federal rights". Opp. at 18. Descent from certain individuals, rather than race, is the factual nucleus of both cases. And the gravamen of the claims and issues in this case is thus the same as in *CVMT V* and *VI*.

### 3. Plaintiffs' remaining efforts to evade collateral estoppel are meritless.

Plaintiffs are also barred from relitigating the multitude of other issues they lost over more than two decades of litigation. Mem. at 25-26. Plaintiffs' response mischaracterizes precedent. Plaintiffs assert that they are not estopped from arguing that they are an "inherently

organized" tribe. Opp. at 19. Plaintiffs fail to identify, and Federal Defendants are unable to

locate, a case recognizing a Tribe as "inherently organized." Regardless, it cannot reasonably be

questioned that the CVMT is unorganized and Plaintiffs are precluded from arguing that a Burley

organization effort that excludes the hundreds-strong CVMT Community is valid. *Cal. Valley*

*Miwok Tribe v. United States* ("*CVMT II*"), 515 F.3d 1262, 1265-67 (D.C. Cir. 2008) (discussing

the Burleys three failed attempts to organize); *Cal. Valley Miwok Tribe v. Jewell ("CVMT III")*,

5 F. Supp. 3d 86, 97 (D.D.C. 2013); *CVMT V*, 2017 U.S. Dist. LEXIS 84282, *5-6 (*CVMT II*

"reasoned that 'tribal organization under the [IRA] must reflect majoritarian values,' the Burley

faction admits the Tribe has a potential membership of 250, and the proposed constitution did not

involve the majority of those members."); *id*. at *18-19 (Upholding treatment of "lineal

descendants of individuals listed on census base rolls as the eligible members for organizational

purposes" in the future); *In re $323,647.60 in Funds*, 2019 U.S. Dist. LEXIS 25723, *13

(D.N.M. Feb. 19, 2019) (The Burleys "fail to explain how Yakima Dixie's death nullifies the

rights of the Eligible Groups to become enrolled members of the Tribe."); *Cal. Valley Miwok*

*Tribe v. Haaland*, 2023 U.S. Dist. LEXIS 206197, *4 (D.D.C. Nov. 17, 2023) ("Despite several

attempts, the CVMT has been unable to organize under the IRA."). Plaintiffs do not even attempt

to argue that their purported "inherent organization" reflects the majoritarian values required by

the D.C. and Ninth Circuits. To the contrary, Plaintiffs transparently seek to revive the same

antimajoritarian gambit of limiting the CVMT to the Faction that they have pursued for two

decades. Opp. at 28 (claiming an interest in preventing alleged non-members from participating

in CVMT government based on an unsupported assertion of tribal sovereignty). Plaintiffs'

assertion that they are the sovereign CVMT cannot be squared with the fact that the Faction is

only a "small cluster of people within the California Valley Miwok tribe." *CVMT II,* 515 F. 3d at

1263; *CVMT V*, 2017 U.S. Dist. LEXIS 84282, at *5-6, *16-21.

Plaintiffs are likewise precluded from arguing that a 1998 General Council resolution is a valid organizing document. Plaintiffs' response minimizes *CVMT V*'s holding that the Washburn decision was not arbitrary and claims without support that *CVMT V* "impliedly validated" the Burley General Council. Opp. at 20. But *CVMT V* noted that this Court reversed Interior's temporary recognition of the Burley General Council. *CVMT V*, 2017 U.S. Dist. LEXIS 84282, *7-8 (describing *CVMT III*). And *CVMT V* upheld AS-IA Washburn's determination that "the United States does not recognize any leadership for the Tribe, including the General Council established by the 1998 Resolution" because the Burley's Council did not represent the CVMT. *CVMT V*, 2017 U.S. Dist. LEXIS 84282, *16-21. *CVMT V* thus determined that the Burley Council was invalid and Plaintiffs cannot use it as a basis for their claims.

Plaintiffs are also barred from arguing that the CVMT has a valid Constitution or that any enrollment ordinance passed by the Faction is valid. Mem. at 25. Plaintiffs' response is founded on the Faction's purported sovereignty and an assertion that no federal decision has intruded into that purported sovereign control over membership. Opp. at 21-22. Plaintiffs are incorrect in both respects. The D.C. Circuit rejected the Faction's adoption of a constitution through an "antimajoritarian" exclusion of hundreds of potential CVMT members. *CVMT II*, 515 F.3d at 1267.[4] The D.C. Circuit necessarily rejected the Faction's assertion of a sovereign right to exclude potential members along with the constitution. *Id*. CVMT thus plainly lacks both a valid constitution and the ability to ratify a constitution absent the participation of the eligible groups. *Id.*; *CVMT V* at *13-14 (discussing *CVMT I and II*). Indeed, the Washburn decision made clear

---

[4] Even if it were material, Plaintiffs are wrong that *CVMT I* and *II* involved only an IRA Constitution, Opp. at 21. *CVMT II* rejected the Faction's effort to "adopt a constitution using procedures of its own making" under its purported "inherent power." 515 F.3d at 1265-66.

that the Burleys have no special status as members. *Aranda v. Sweeney* ("*CVMT VIII*"), 2019

U.S. Dist. LEXIS 64432, at *9 (E.D. Cal. Apr. 15, 2019).[5]

Finally, Plaintiffs have no sovereign right to declare themselves the only CVMT

members. Mem. at 26.[6] Plaintiffs respond by claiming it is Federal Defendants, rather than

Plaintiffs, who seek to decide who is a CVMT member. Opp. at 22. But Federal Defendants are

doing nothing more nor less than assisting the CVMT Community to engage in a democratic

process that may lead to a constitution. Plaintiffs are wrong that their efforts to stop that process

are "consistent with prior court decisions." Opp. at 22. To the contrary, prior decisions bar

Plaintiffs from arguing that the CVMT's sovereignty is injured by Federal Defendants using

genealogical information to ensure that any CVMT organization reflects majoritarian values.

Pages 10-13, above (citing *CVMT I, II, V,* and *VI*). Plaintiffs' claims must thus be dismissed.

> **4.      Plaintiffs' efforts to avoid preclusion, if successful, leave them unable to state a claim on which relief can be granted.**

Alternatively, Plaintiffs effort to recast their claims to evade 20 years of adverse

precedent leaves them unable to state a plausible claim for relief. Plaintiffs argue that res judicata

---

[5] Plaintiffs are incorrect, Opp. at 10, that the United States recognized their government from 1998 to 2007 and 2010 to 2011. Federal Defendants recognized fundamental problems with the Faction's purported government by at least 2004, determining that the CVMT was unorganized and responding to Burley's organization efforts "by rejecting her proposed constitution and explaining that she would need to at least attempt to involve the entire tribe in the organizational process before the Secretary would give approval." *CVMT II*, 515 F.3d 1265. And Interior's brief recognition of the Burley government in 2010 was reversed because "the Assistant Secretary was remiss in assuming that . . . the General Council is a duly constituted government." *CVMT III*, 5 F. Supp. 3d 86, 96; *id*. at 99-101. Regardless, past recognition of the Faction's government is irrelevant, as "the fact that the BIA once recognized the General Council does not preclude the BIA from later questioning its legitimacy." *CVMT V*, 2017 U.S. Dist. LEXIS 84282, *21. Plaintiffs' claims of special status are thus factually inaccurate and legally irrelevant.

[6] Plaintiffs refuse to define the Tribe's membership, Opp. at 22, and cryptically suggest that former Faction members who support the organizational process "have issues with their own enrollment with the CVMT." ECF No. 11-6 at 9.

does not bar their claims because they "do[] not challenge the 2015 or the 2022 decisions of the Assistant Secretary under 5 U.S.C. 706 including any aspect of that decision-making." Opp. at 11-12. This admission, standing alone, requires dismissal. If Plaintiffs are not challenging any aspect of the 2015 and 2022 decisions, they are not challenging the source of any conceivable injury.

The 2015 and 2022 decisions require BIA to assess whether individuals wishing to participate in a CVMT organization process are descended from specific Miwok Indians in Calaveras County. Mem. at 14-16; *CVMT IX*, 2023 U.S. Dist. LEXIS 206197, at *6-7, *14 n.5. Plaintiffs' disavowal of any challenge to the 2015 and 2022 decisions thus should mean that they are not challenging Federal Defendants' use of lineal descent to determine whether individuals are eligible to participate in CVMT organization efforts. Plaintiffs at times admit, Opp. at 11, that they are objecting to Federal Defendants using the OMB-approved CDIB form to collect genealogical information rather than some other form (a letter or a hypothetical "Washburn and Newland Decision genealogical information compliance form").[7] Plaintiffs cannot evade *res judicata* by splitting such hairs. To the contrary, their effort to distinguish this case by grasping at a particular form for collecting information only highlights that this case turns on the same facts as *CVMT V* and *VI*—Federal Defendants' use of lineal descent to determine eligibility to participate in CVMT organizational efforts that might lead to a CVMT government.

Plaintiffs likewise seek to distinguish adverse precedent by claiming that they are challenging Federal Defendants' use of a Certificate of Degree of Indian Blood rather than some aspect of the 2015 and 2022 decisions. Opp. at 12. But Federal Defendants are not using a Certificate of Degree of Indian Blood for any aspect of the CVMT organizational process. They

---

[7] Plaintiffs offer no support for their implied allegation that using a CDIB *form* is unconstitutional.

are instead using a CDIB *form* as a mechanism to gather information necessary to implement the process required by the Washburn and Newland decisions. Mem. at 16 (citing BIA Certificate of Degree of Indian or Alaska Native Blood Instructions, ECF No. 11-4).

## C.    Plaintiffs lack standing.

Even setting aside issue and claim preclusion, the Complaint must be dismissed because Plaintiffs do not identify any cognizable injury, much less explain how any of their purported injuries could be redressed in this case. Mem.at 26-30. Plaintiffs' attack on Federal Defendants' use of CDIB forms is premised on Plaintiffs' foundational assertion that the Faction has a sovereign right to control the CVMT's membership. Mem. at 28-29; Opp. at 21-22, 28-29. But Plaintiffs are not the CVMT, do not themselves have any sovereign rights related to the CVMT, and are precluded from claiming that they have a right to exclude potential CVMT members from the CVMT organizational process. *Id*. (citing *CVMT II*, 515 F.3d at 1263, 1267-68; *CVMT III*, 5 F. Supp. 3d at 99-100; *CVMT V*, 2017 U.S. Dist. LEXIS 84282, at *14-16, *18-19, *21-22; and *CVMT IV*, 745 F. App'x at 47); pages 4-13, above. Plaintiffs cannot establish standing based upon uncognizable injuries to their non-existent sovereignty premised on legal theories they have litigated and lost.[8]

Nor do Plaintiffs explain how **they** are injured by the use of CDIB forms to collect genealogical information. Opp. at 27-29. Plaintiffs fail to detail how Interior's use of CDIB forms here has deprived them of any right through, for example, a denial of a CDIB. *Cf. Underwood,* 14 IBIA at 19-20; Compl., ECF No. 1 ¶¶ 57, 62. Plaintiffs claim nothing more than a generalized injury from the absence of notice and comment rulemaking for BIA's use of

---

[8] Plaintiffs do not deny that they lack standing to challenge the CDIB program writ large. *Compare* Mem. at 27-28 with Opp. at 24-30. They thus waive any claim that BIA was required to engage in notice and comment rulemaking regarding the entire CDIB program.

CDIBs (which, again, are not being issued here). Opp. at 11-12. But even then, Plaintiffs still do not identify an injury that has resulted from the absence of rulemaking. Instead, Plaintiffs vaguely claim that "the whole of Defendants' process [ ] intrude[s] on tribal sovereignty." and thus somehow injures them because it does not comply with the APA. Opp. at 28. But, as the Supreme Court just reaffirmed, "[f]or a plaintiff to get in the federal courthouse door and obtain a judicial determination of what the governing law is, the plaintiff cannot be a mere bystander, but instead must have a 'personal stake' in the dispute." *Food & Drug Admin. v. All. for Hippocratic Med.*, __ S. Ct. __, 219 L. Ed. 2d 121, 133 (2024). Plaintiffs never connect the dots between the supposed APA violation and a harm to them. Plaintiffs' bare allegations that CDIBs are somehow illegal in the absence of rulemaking thus cannot establish standing, particularly given that the only link to CDIBs here is that Interior happens to be using the CDIB form.

Plaintiffs' assertion that they have an "interest in protecting the Tribe's sovereignty and self-determination from assault and in preventing non-members" from somehow "coopting the Tribe's governance," Opp. at 28-29, does not clear that hurdle. While Plaintiffs may have a right to participate in CVMT organization, the Washburn decision made clear that they have no special status. *CVMT XIII*, 2019 U.S. Dist. LEXIS 64432, *9-10 ("'[t]o the extent the Burley Family is among the individuals who make up the Eligible Groups, I encourage them to participate in the Tribe's reorganization efforts.'") (quoting Washburn decision); Washburn decision at 5 (requiring "documentary evidence" of descent) (Ex. 1). Plaintiffs lost their challenge to the Washburn decision and explicitly disclaim any challenge in this case to either the Washburn or Newland decisions. Opp. at 11. Regardless, *CVMT I, II, V* and *VI* preclude Plaintiffs from claiming that the CVMT's sovereignty is injured by: 1) hundreds of potential CVMT members participating in any CVMT organization effort; and 2) using lineal descent

16

from certain Calaveras County Miwoks to determine eligibility to participate in CVMT organization. Pages 4-13, above. Plaintiffs' purported sovereignty cannot be injured by the mechanism for implementing decisions that Plaintiffs do not, and cannot, challenge.[9]

Plaintiffs finally contend that BIA's use of CDIB forms somehow dilutes Plaintiffs' share of tribal resources. Opp. at 29. Not true. The Washburn and Newland decisions require BIA to assess whether individuals wishing to participate in CVMT organization descend from certain Miwoks and allow those who establish such descent to participate in any organizational process. *CVMT IX*, 2023 U.S. Dist. LEXIS 206197, *5-7; *CVMT V*, 2017 U.S. Dist. LEXIS 84282, *11-12. So if the Plaintiffs are injured by the inclusion of hundreds of potential CVMT members in any CVMT organizational process, which they are not, any such injury is caused by criteria established by Washburn and Newland decisions. Again, Plaintiffs are precluded from challenging, and do not challenge, the Washburn and Newland decisions. Pages 13-14, above. The only purpose of the CDIB form here is to allow BIA to assess whether each individual who wishes to participate in the CVMT organizational process meets the eligibility criteria established by the Washburn and Newland decisions. ECF No. 1-2 at 16-17. So even under Plaintiffs' flawed framework, it is the Washburn and Newland decisions that caused any dilution of Plaintiffs' votes or resources—not BIA's use of CDIB forms. The CDIB forms at most identify the individuals that allegedly dilute Plaintiffs' interests under the Washburn and Newland decisions.[10] Plaintiffs thus identify no cognizable injury from the challenged action.

---

[9] Plaintiffs suggestion, *id*. at 29, that the CVMT must consent to engaging in the organizational process before engaging in that process is meritless. *See* Mem. at 17 (citing process that determines whether the CVMT adopts a constitution). Plaintiffs are not the CVMT and cannot provide or withhold the CVMT's consent to anything. They may, however, participate in the organizational process if they met the eligibility criteria. *CVMT XIII*, 2019 U.S. Dist. LEXIS 64432, *9-10.

[10] This argument rests on the false premise that Plaintiffs have any interests that can be diluted.

Plaintiffs' effort to articulate an injury thus clarifies that Plaintiffs are also unable to establish standing for another reason. To establish standing, a "plaintiff must also establish that the plaintiff's injury likely was caused or likely will be caused by the defendant's conduct." *All. for Hippocratic Med.*, 602 U.S. at 382. The only conceivably cognizable injury that Plaintiffs have alleged is dilution of their purported rights to control the CVMT's funds and government. But as discussed above, page 17, the number and identity of the people who are eligible to participate in the organizational process flow directly from the Washburn and Newland decisions' definition of the eligible groups. The CDIB forms are thus not the cause of Plaintiffs' alleged injury. And because Plaintiff challenge the CDIB forms that do not injure them, rather than the Washburn and Newland decisions that caused any injury, Plaintiffs cannot establish that their alleged injuries were caused by the challenged conduct.

Even if Plaintiffs identified a cognizable injury traceable to the use of the CDIB forms, Plaintiffs have not shown (as they must) that such an injury is actual and imminent, rather than speculative. Mem. at 27, 29. Because the ongoing process that Plaintiffs seek to halt may result in no change to the CVMT's governance, Plaintiffs' alleged harms are too speculative to support standing. *Id*. Plaintiffs' response is to assert that the CVMT Community's participation in a process that may (or may not) lead to a constitution has an "immediate effect." Opp. at 29. Not true. The organization process has no effect unless the Community adopts, and BIA approves, a constitution. Mem. at 17, 29. Purported injuries to the CVMT's sovereignty are thus speculative, rather than imminent, because the ongoing organizational process may result in no change to the CVMT's status. *CVMT IX*, 2023 U.S. Dist. LEXIS, 206197, at *11-12. And Plaintiffs are wrong, Opp. at 29 (citing 25 U.S.C. § 5801), that an IRA Constitution is immune from challenge once it is approved. *Cal. Valley Miwok Tribe v. Jewel,* 2016 U.S. Dist. LEXIS 147053, *7 (E.D. Cal.

Oct. 24, 2016); *CVMT XIII*, 2019 U.S. Dist. LEXIS 64432, *6-8. To the contrary, the approval would be a "final agency action" subject to legal challenge, assuming all other jurisprudential requirements had been met. 25 C.F.R. § 81.45(c); Tr. of Apr. 12, 2019 Arg. at 44:8-45:4, *Cal. Valley Miwok Tribe v. U.S. Dept. of the Interior*, No. 19-cv-917 (ECF No. 11-3).[11] The speculative nature of Plaintiffs' purported injury, standing alone, requires dismissal.[12]

Plaintiffs' argument that their claims can be redressed fares no better. Plaintiffs assert without support that their attack on one form (the CDIB form) used to collect information for determining eligibility should grant them relief from all forms of collecting genealogical data. Opp. at 26-27. But Plaintiffs do not explain how the Court's remedial powers could extend beyond the controversy presented. And in any event, the use of genealogical information emanates from the Washburn and Newland decisions, not from the form Interior chooses to collect the information. Enjoining the use of a certain form would do nothing to alter the Washburn and Newland decisions. Indeed, in an effort to avoid preclusion, Plaintiffs elsewhere take pains to make clear they are *not* challenging the Washburn and Newland decisions and to limit their claims to a purportedly narrow challenge to use of the CDIB form. Opp. at 11-12. Pages 13-14, above. Plaintiffs cannot have it both ways. If this is a narrow challenge to CDIB forms, Plaintiffs fail to identify any possible redress for the purported harms because the BIA would be required to collect the same information via another form to effectuate the Washburn

---

[11] At least some of Plaintiffs' potential future challenges to a speculative final agency action may be precluded. Indeed, the Faction argued that a prior organizational effort should be enjoined because a Secretarial election that included the eligible groups would injure the CVMT's sovereignty. *Id.* at 13:11-13:25. This Court held that *CVMT II* and *V* made the Faction unlikely to prevail on the merits of its claims. *Id.* at 43:1-44:7 (perhaps optimistically referring to *CVMT VII* as the Faction's "final stand.").

[12] The Supreme Court also recently addressed a speculative injury as a fatal flaw in the causation standing prong. *All. for Hippocratic Med.*, 219 L. Ed. 2d at 136.

and Newland decisions. Mem. at 30. And if this is a challenge to the Washburn and Newland

decisions' reliance on genealogical information, Plaintiffs' claims are precluded.

**D.       Plaintiffs' claims are constitutionally unripe.**

For similar reasons, Plaintiffs' claims are constitutionally unripe because they cannot

demonstrate that the interim step of identifying individuals who are eligible to participate in a

CVMT organizational process imposes any certainly impending injury. Mem. at 30-34. Plaintiffs

do not reasonably contest that: 1) the ongoing process is uncertain to lead to an election; 2) if

there is an election, the CVMT Community may vote to not adopt a constitution; 3) BIA may

decline to approve any constitution; and 4) Plaintiffs may still challenge any approval by BIA.

Opp. at 32-36. Plaintiffs instead argue that their claims are ripe because BIA completed the

interim step of identifying individuals eligible to participate in a potential election. *Id*. But any

change in the CVMT's status either already occurred (the Washburn and Newland decisions) or

will not occur until a distinct final agency action (BIA approval of a CVMT Constitution).

Plaintiffs thus fall far short of establishing that their challenge to an interim step in a process that

may not lead to any change in the CVMT's governance presents a ripe controversy.

Even purely legal challenges may be unripe when further developments would benefit

review. Mem. at 35 (quoting *Atl. States Legal Found., Inc. v. EPA*, 325 F.3d 281, 284 (D.C. Cir.

2003)). Plaintiffs respond by suggesting the opposite – that their claims are ripe because they are

purely legal. Opp. at 33 (citing *Sanchez v. Off. of the State Superintendent of Educ.*, 959 F.3d

1121, 1124 (D.C. Cir. 2020)). But the claim in *Sanchez* was ripe because a plaintiff challenged a

regulation that would force her to "begin expending time and money now" to obtain credentials

to continue working and credibly alleged that she was "already spending hours" to comply with

that new regulatory burden. *Id*. at 1125. Plaintiffs here allege, at most, that BIA's use of CDIB

forms inflict vague harms to sovereignty rights Plaintiffs do not possess, rather than requiring actual expenditures of time and money as in *Sanchez*. Opp. at 27-29. Indeed, Plaintiffs need not expend time participating in a CVMT organizational process that they view as invalid.

Plaintiffs' reliance, Opp. at 34, on *State National Bank of Big Spring v. Lew*, 795 F.3d 48, 54 (D.C. Cir. 2015), is also misplaced. *Big Spring* was ripe because it challenged an agency's exercise of "its broad regulatory authority to impose new obligations on banks," that caused banks to "incur costs." *Id*. at 53. In that factual context, "it would make little sense to force a regulated entity to violate a law (and thereby trigger an enforcement action against it) simply so that the regulated entity can challenge the constitutionality of the regulating agency." *Id*. at 54. In this case, by contrast: 1) BIA is not imposing any regulatory obligation on Plaintiffs; 2) Plaintiffs are not under a threat of enforcement action; 3) Plaintiffs do not identify any law they might be forced to violate; and 4) BIA's use of CDIB forms in the current organizational effort has not imposed any cost because Plaintiffs already drafted and submitted those very "application documents" on at least two separate occasions. Compl. ¶¶ 57, 62.[13] And even if Plaintiffs were remotely analogous to the regulated banks in *Big Spring*, the election process provides for future challenges in a manner that makes clear when any viable claim will ripen. *See* Mem. at 33-34.[14]

---

[13] Indeed, Plaintiffs confusingly change course and later argue that the questions they pose relating to the "CDIB process and its use by Defendants . . . requires thorough factual development through discovery." Opp. at 36. Federal Defendants will likely disagree with that assessment if BIA approves a CVMT constitution and Plaintiffs bring a constitutional challenge. But Plaintiffs' admission makes clear that this Court would benefit from an administrative record of a final agency action in the event that any review of such a BIA approval is necessary and appropriate.

[14] It is unclear why Plaintiffs discuss potential vacatur during remand, Opp. at 35, an issue that would only be relevant if Plaintiffs somehow prevailed in cross-motions for summary judgment. But Plaintiffs' citation to *Sugar Cane Growers Co-op of Fla. v. Veneman*, 289 F.3d 89, 94 (D.C. Cir. 2002), Opp. at 35, is illustrative. Plaintiffs suggest that BIA's use of the CDIB form to identify people eligible to participate in CVMT organization has not yet "scrambled the egg" and

Plaintiffs' other efforts to argue ripeness fare no better. They rely on a 1986 IBIA decision that they contend makes CDIBs "constitutionally suspect." Opp. at 31-32 (citing *Underwood v. Deputy Asst. Sec.,* 14 IBIA 3, 21 (Jan. 31, 1986)). But *Underwood* involved the actual determinations of Indian blood quantum and an actual denial of a request to issue a CDIB. *Id*. at 19-20. In contrast, BIA is using CDIB forms as a convenient mechanism through which Interior can identify individuals eligible to participate in the initial CVMT organization. BIA is not making blood quantum determinations. *Underwood* also faulted BIA for using "procedures and rules . . . including the evidentiary standards employed" that acted as "hidden regulations." *Id*. at 21. In contrast, Federal Defendants' standard for determining eligibility is far from hidden. Indeed, Plaintiffs fully litigated BIA's use of lineal descent from certain Calaveras County Miwoks to determine eligibility. *CVMT V*, 2017 U.S. Dist. LEXIS 84282, *18-19. The Washburn decision did not hide something simply because it did not specify the particular form BIA should use to collect the information. *See* Compl. ¶¶ 57, 62 (Plaintiffs provided their CDIB forms at least twice in the past). *Underwood* is, at best, inapposite to Plaintiffs' objections to other Miwoks using CDIB forms to establish their eligibility to participate in CVMT organization.[15]

Finally, Plaintiffs' effort to define their claim as a narrow challenge to BIA's use of CDIBs (again, BIA is only using CDIB forms for a limited purpose rather than issuing CDIBs) only highlights that Plaintiffs challenge interim, non-final steps towards a Secretarial election.

---

thus is the type of agency action that can be vacated without causing chaos. *Id*. Indeed, Plaintiffs are correct that no egg has been scrambled. Plaintiffs' speculation that they will be injured in the future is no basis for standing.

[15] Plaintiffs' citation to Moore's Federal Practice, Opp. at 33, omits the next sentence, which provides that "the ripeness requirement furthers the interests of judicial restraint by avoiding possible judicial interference with the other branches of government that would ultimately prove unnecessary if a live dispute were never to develop." 15 Moore's Federal Practice - Civil § 101.70 (2024). BIA's use of the CDIB forms here is exactly the type of interim step that may prove unnecessary if the CVMT organizational effort does not yield a constitution.

Those interim steps have not imposed any concrete injury on Plaintiffs. Plaintiffs identify no violation of their alleged rights, Opp. at 31-32, much less a violation would inflict the "certainly impending" injury necessary to vest this Court with jurisdiction over Plaintiffs' effort to interrupt the ongoing CVMT organization process. Plaintiffs' challenge to an interim decision in an ongoing, nonfinalized process that may yield no concrete change to the CVMT's organization is thus Constitutionally unripe.

**E.      Plaintiffs' claims are prudentially unripe.**

Plaintiffs' claims are also prudentially unripe because BIA has not evaluated challenges to, much less made a final decision regarding, a not-yet-conducted election. Judicial review at this time would thus inappropriately interfere with administrative action and deprive the Court of necessary factual development in the event that any future review is appropriate. Mem. at 34-37.

Plaintiffs concede that a case is prudentially unripe when additional facts would make it better fit for review, but claim that no such facts may exist here. Opp. at 35-36. Yet again, this is not true. Allowing the election process to complete would provide facts regarding: 1) how the population of eligible CVMT voters differs from the population of the Faction's purported CVMT; 2) the contents of any CVMT constitution, allowing Plaintiffs to explain how it impacts Plaintiffs' purported sovereignty or dilutes Plaintiffs' share of resources; 3) whether the CVMT Constitution has been adopted by the eligible voters; 4) any BIA approval of such a constitution; and 5) BIA's basis for any such approval. If Plaintiffs' speculative harms come to pass and any future claims are not precluded or otherwise non-justiciable, such facts (most likely contained in an administrative record) would allow for efficient, non-piecemeal judicial review.

Plaintiffs likewise concede that they must identify a hardship that they will suffer from delaying review until the potential future approval of potential election results. Opp. at 36. But

Plaintiffs offer only an unsupported and confusing assertion that their purported "rights connect to their Indian status as well as their constitution rights including equal protection rights, these rights are continuously undermined by the existence of the challenged use of the Certificate of Degree of Indian Blood." *Id*. And Plaintiffs fail to explain how the CDIB program deprived them of any right through, for example, a denial of a CDIB. *Cf. Underwood,* 14 IBIA at 19-20; Compl. ¶¶ 57, 62. Nor do Plaintiffs identify *any* sovereignty right, much less one that could conceivably be injured by an interim step toward a potential constitution.

But most critically for the prudential standing analysis, Plaintiffs identify no hardship that they will suffer between now and a potential future BIA decision approving a constitution adopted by a future election. Plaintiffs' citation to *Church v. Biden,* 2022 U.S. Dist. LEXIS 85170, *21 (D.D.C. May 11, 2022), Opp. at 33, is illustrative. The claim in that case was not ripe because decisions that might impact the plaintiffs were "still under consideration . . . and so they are prudentially unfit for judicial review." *Church,* at *19. This case is even more unripe, as the decision to approve a potential constitution is not even before the agency. Plaintiffs' failure to identify any "immediate and significant hardship" in the interim is fatal to their claim. *Id*. at *21.

## F.   **Plaintiffs programmatic challenge to the absence of CDIB regulations must fail**.

Any broad challenge by Plaintiffs to the entire CDIB program must be dismissed as an improper programmatic claim because Plaintiffs: 1) do not challenge a final agency action; and 2) cannot seek wholesale improvement of the CDIB program. Mem. at 37-41. Plaintiffs devote only a single paragraph to arguing that they survive Federal Defendants' Rule 12(b)(6) motion because they "identif[y] facts that connect to the causes of action, and Defendants' actions are final." Opp. at 31-32. This assertion is insufficient to establish that Plaintiffs challenge a final agency action. To the contrary, all four courts to consider the issue has held that preliminary

CVMT organizational efforts are not final. *CVMT IX*, 2023 U.S. Dist. LEXIS 206197, *11-12

(discussing three prior decisions). Regardless, Plaintiffs do not even attempt defend any effort to

seek wholesale improvement of the CDIB program. Opp. at 30-32.  To the extent that their

Complaint challenges the CDIB program writ large, Plaintiffs thus waive any such challenge by

failing to respond to the motion to dismiss. *Cole v. Boeing Co.*, 845 F. Supp. 2d 277, 285

(D.D.C. 2012).

## III.    CONCLUSION

Plaintiffs' Complaint must be dismissed with prejudice because Plaintiffs fully and fairly

litigated their claims regarding Federal Defendants' determination of eligibility to participate in

CVMT organization based on lineal descent. Plaintiffs' opposition fails to distinguish their

current claims from their many past judicial defeats and thus is barred by res judicata and

collateral estoppel. Plaintiffs also fall far short of establishing standing and their challenge to an

interim step in an ongoing electoral process is unripe. Plaintiffs' latest effort to obstruct the

CVMT's organization must therefore be dismissed.

Date: July 12, 2024

<div style="margin-left: 40%;">

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

*/s/ Matthew Marinelli*
Matthew Marinelli
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0293
Fax: (202) 305-0506
matthew.marinelli@usdoj.gov
*Attorney for Federal Defendants*

</div>

**Of counsel:**

Janet Fealk
Department of the Interior
Office of the Solicitor
Pacific Southwest Region
Sacramento, CA