IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CALIFORNIA VALLEY MIWOK TRIBE, MILDRED FERN BURLEY, SILVIA FAWN BURLEY, RASHEL KAWEHILANI REZNOR, ANGELICA JOSETT PAULK, TRISTIAN SHAWNEE WALLACE, DAVEEN RONELLE WILLIAMS, DARYL STEVEN BURLEY, WILLIAM DAVID BURLEY JR. III, MICHELE DENISE BURLEY,**<br>      Plaintiffs,<br><br>      v.<br><br>**DEB HAALAND, SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,**<br>      Defendants. | Case No. 1:24-cv-00947-TSC |

## FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

Plaintiffs' motion for preliminary injunctive relief should be denied. For over 20 years, people claiming to be part of the California Valley Miwok Tribe have tried, with the assistance of the Department of the Interior, to organize the Tribe. That organization occurs under the Indian Reorganization Act and through a "Secretarial election," in which registered voters in the Tribal community decide whether to adopt, in this case, a proposed Constitution.

Disputes as to the make-up of the "whole tribal community," however, have repeatedly thwarted the Tribe's organizational efforts. Much of the delay in, and disruption to, the Tribe's organization has been imposed by a faction of Miwoks led by Silvia Burley. Members of that Burley Faction are the plaintiffs here. At times, those disputes have manifested in requests for emergency judicial relief to enjoin the Tribal community's organizational efforts. Courts have

1

rejected those requests at every turn.

Plaintiffs' present emergency motion, like those before it, fails because Plaintiffs are not irreparably harmed by the forthcoming Secretarial election. Plaintiffs have not demonstrated that the preparatory procedures for the election are causing them irreparable harm. The election outcome is speculative. And should Plaintiffs be dissatisfied with the election results or the processes on which the election was formed—and assuming all other jurisprudential requirements are met—they will be able to challenge those results.

Even if there were a possibility of irreparable harm, Plaintiffs will not succeed on the merits of their claims. Those claims allege that the Bureau of Indian Affairs is unlawfully using Certificates of Degree of Indian Blood (CDIB) to determine tribal membership. That is simply wrong. The Bureau is not certifying anyone's blood quantum. Nor is it even determining tribal membership, which will be for the Tribe to decide after organization. Instead, the Bureau is using extant CDIB *forms* as the means by which to collect information for determining eligibility to participate in the election based upon descent from certain Calaveras County Miwoks. The structure for eligibility was identified by the Department of the Interior's Assistant Secretary for Indian Affairs and upheld after a court challenge from the Burley Faction (and more recently by Judge Cobb). Thus, Plaintiffs' case is either (1) a collateral (and precluded) attack to the Assistant Secretary's structure for determining what would constitute the "whole tribal community"; (2) a challenge to the form the Bureau ministerially selected to collect information, which in and of itself has not caused Plaintiffs any harm; or (3) a premature challenge to election outcomes Plaintiffs fear they will not like. But no matter how they are postured, the claims are not presently justiciable.

Further weighing against preliminary injunctive relief is the balance of the harms.

Plaintiffs dedicate much of their brief to themes of tribal sovereignty and self-determination. Yet hiding behind all of that is the legal reality that Plaintiffs are not the entire Tribe and do not have the authority to speak for it. Plaintiffs may have claims to membership, but there are other individuals with similar claims. Courts have repeatedly rejected the Burley Faction's arguments that it constitutes the Tribe. Fed. Defs.' Mem. in Supp. of Mot. to Dismiss ("Mot. to Dismiss") 7-13, 25-26, ECF No. 11-1. Indeed, one need look no further than the recent case before Judge Cobb, which was brought by a different faction (represented by a different attorney) claiming to be (and captioning the case as) the California Valley Miwok Tribe. *Cal. Valley Miwok Tribe v. Haaland (CVMT X)*, 2024 U.S. Dist. LEXIS 142471 (D.D.C. Aug. 12, 2024). The injunction Plaintiffs request would do nothing more than further delay the whole Tribal community's efforts to organize under the IRA. Equity demands that Plaintiffs' motion be denied.

BACKGROUND

## I.    Statutory and Regulatory Background

Under Section 16 of the IRA, Indian tribes have "the right to organize for [their] common welfare, and may adopt an appropriate constitution and bylaws, and any amendments thereto . . . ." 25 U.S.C. § 5123(a).[1] "Far more than mere symbolism, organization vests a tribe with important sovereign rights and powers, particularly in the realm of government-to-government relations, *see id.* § 5123(e), and may open the door to substantial economic benefits too." *CVMT X*, 2024 U.S. Dist. LEXIS 142471, at \*2.

Constitutions and bylaws adopted under the IRA become effective "when—(1) ratified by a majority vote of the adult members of the tribe or tribes at a special election authorized and called by the Secretary under such rules and regulations as the Secretary may prescribe; and (2)

---

[1] 25 U.S.C. § 5123 was previously codified at 25 U.S.C. § 476.

3

approved by the Secretary pursuant to [25 U.S.C. § 5123(d)]." 25 U.S.C. § 5123(a). The Secretary has promulgated regulations governing the process of calling and conducting elections, which have come to be called "Secretarial elections." 25 C.F.R. pt. 81. A tribe or petitioner may request an election by submitting an appropriate tribal resolution, ordinance, or petition, along with the language to be voted on and a list of members eligible to vote. *Id.* § 81.6. In response to a valid request, the Secretary "shall call and hold an election as required by [25 U.S.C. § 5123(a)]." 25 U.S.C. § 5123(c)(1).

Once a Secretarial election occurs, eligible voters "who submitted a voter registration form" have five days to "challenge the results." 25 C.F.R. § 81.43–44. The Bureau's Regional Director must resolve those challenges and, if all challenges are denied or dismissed, determine whether to approve the adopted document(s), including ensuring that the document is "not contrary to Federal law." *Id.* § 81.45(a), (b). The Regional Director's decision "is a final agency action." *Id.* § 81.45(f).[2]

## II.     Factual Background

The lengthy factual and litigation history surrounding the California Valley Miwok Tribe's organizational efforts (and related leadership dispute) are set forth in our motion to dismiss and Judge Cobb's recent decision. Mot. to Dismiss 5–17; *CVMT X*, 2024 U.S. Dist. LEXIS 142471, at *4–25. Four aspects of that history are most relevant to the present motion.

First, since 1998, multiple factions purporting to represent the California Valley Miwok Tribe have been embroiled in disputes regarding the Tribe's organizational status and leadership.

---

[2] If the voters ratify the Constitution, but the Regional Director does not issue a decision approving or disapproving the election results within 45 days of the election, "approval . . . must be considered as given." 25 C.F.R. § 81.45(e).

Plaintiffs here are members of one of those factions, which the long line of case law relating to the dispute calls "the Burley Faction." *See, e.g., Cal. Valley Miwok Tribe v. United States (CVMT II)*, 515 F.3d 1262, 1263, 1267 (D.C. Cir. 2008). (criticizing as an "antimajoritarian gambit" the Burley Faction's efforts to adopt a constitution "without so much as consulting [tribal] membership").  Courts have repeatedly rejected the idea that the Burley Faction constitutes the entirety of, or speaks for, the Tribe.  *See infra* at 15–17, 21.

Second, the heart of Plaintiffs' case is two decisions from the Department of the Interior's Assistant Secretary for Indian Affairs.  The first is a 2015 decision by then-Assistant Secretary Kevin Washburn ("Washburn Decision").  The Washburn Decision determined that the Tribe's potential membership was not limited to the Burley Faction (which at the time had a slightly different composition).  *See Cal. Valley Miwok Tribe v. Zinke (CVMT V)*, 2017 U.S. Dist. LEXIS 84282, at *8–9 (E.D. Cal. June 1, 2017).  Assistant Secretary Washburn identified three sets of descendants as eligible to participate in the Tribe's organization, which he called "eligible groups." *Id.* at *11–12 & n.4.  The Burley Faction litigated and lost a challenge to the Washburn Decision, which the Ninth Circuit affirmed.  *Cal. Valley Miwok Tribe v. Zinke* (*CVMT IV*), 2016 U.S. Dist. LEXIS 147053 (E.D. Cal. June 1, 2017), *aff'd Cal. Valley Miwok Tribe v. Zinke* (*CVMT VI*), 745 F. App'x 46 (9th Cir. 2018).

The second decision is one issued in 2022 by current Assistant Secretary Bryan Newland ("Newland Decision").  To correct a genealogical error in the Washburn Decision, the Newland Decision partially revised the Washburn Decision by adding a fourth eligible group.  *CVMT X*, 2024 U.S. Dist. LEXIS 142471, at *19–24.  Judge Cobb recently upheld the Newland Decision in response to a challenge by different plaintiffs.  *Id.* at *48.  Plaintiffs here have not challenged the Newland Decision.

Third, since the Newland Decision, the Bureau of Indian Affairs has received a petition to hold a Secretarial election for purposes of adopting a Tribal Constitution. Decl. of Harley Long ("Long Decl.") ¶ 15 (attached hereto). Among the various procedural steps preceding the Secretarial election is determining "eligible participants."

Both the Washburn and Newland decisions conditioned eligibility to participate in Tribal organization on lineal descent from specific Miwok Indians in Calaveras County, California. *See CVMT X*, 2024 U.S. Dist. LEXIS 142471, at *16–18, 23–24. Thus, to determine eligibility, the decisions require the Bureau to assess whether individuals wishing to participate in Tribal organization were descended from those Miwoks. To that end, in November 2022, the Bureau requested that applicants prove "lineal descendancy from one of the" four groups. Nov. 29, 2022, Public Notice ("Nov. 2022 Public Notice"), Compl. Ex. 4, ECF No. 1-2 at 16–17; Long Decl. ¶¶ 10, 11. To gather that information, the Bureau requested a "Certificate of Degree of Indian Blood (CDIB) form along with supporting documentation" to verify descendancy. *Id*. The Bureau's use of the Certificate of Degree of Indian Blood form, or "CDIB form," is what Plaintiffs' challenge in the present case.

Since our June 2024 motion to dismiss, the election process has progressed. *See* Mot. to Dismiss 17 (listing then-remaining steps to any approved constitution). The application period for potentially eligible voters closed on January 12, 2023. Long Decl. ¶ 10. The nine named Plaintiffs each applied and provided the requested information on a CDIB form. Long Decl. ¶ 12. The Bureau determined that each of the nine is an "eligible participant" under the Newland Decision. Long Decl. ¶¶ 13, 14. Voter registration was then opened to eligible participants. Long Decl. ¶ 23. Voter registered closed on August 30, 2024. Long Decl. ¶ 23. None of the nine named Plaintiffs registered to vote. Long Decl. ¶ 25. The Secretarial election is scheduled

for October 1, 2024.  Long Decl. ¶ 22.

Fourth, the present motion is the fifth time a Tribal faction has sought emergency relief to enjoin the Bureau's efforts to assist in Tribal organization.  Each effort was based on supposed harm mirroring that which Plaintiffs allege here.  Courts—including two judges on this Court— have rejected each one.

As part of its 2016 litigation challenging the Washburn Decision, the Burley Faction sought a preliminary injunction to halt efforts to approve a 2013 Tribal constitution.  *CVMT IV*, 2016 U.S. Dist. LEXIS 147053, at *2.  The court found that Burley had failed to show a likelihood of irreparable harm, and thus an injunction was not in the public interest.  *Id*. at *6–9.[3]

In 2019, BIA scheduled a Secretarial election on a revised version of the 2013 Constitution.  *CVMT X*, 2024 U.S. Dist. LEXIS 142471, at *20.  Two groups sought to preliminary enjoin that election.  The first was the Burley Faction.  Judge Lamberth denied the motion from the bench. Tr. of Apr. 12, 2019 Arg. at 38:18–45:20, *Cal. Valley Miwok Tribe v. U.S. Dept. of the Interior* (*CVMT VII*), No. 19-cv-917 (D.D.C. Apr. 12, 2019).[4]  The Court held, among other things, that the Burley Faction would not be irreparably harmed because "until the election results are known, any injury remains speculative.  And in any event, Interior regulations prescribe successive steps before the results become final." *Id*. at 44:10–44:13.  The Regional Director's approval or disapproval of the Constitution after the litigation "constitutes [a] final agency action, which can then be challenged under the Administrative Procedure Act." *Id*. at 44:23–45:1.  The Court also concluded an injunction "would harm other parties," including

---

[3] Ultimately, BIA rejected the validity of the 2013 Constitution because the Burleys were excluded from the ratification process.

[4] The transcript is Exhibit 2 to Federal Defendants' memorandum in support of their motion to dismiss, ECF No. 11-3.

the "hundreds of potential tribe members'" by delaying their "access to federal programs, services, and funding." *Id*. at 45:5-11.

A second faction (also purporting to be the Tribe) sought to preliminary enjoin the 2019 election on similar grounds. *Aranda v. Sweeney* (*CVMT VIII*), 2019 U.S. Dist. LEXIS 64432, at *1–2 (E.D. Cal. Apr. 15, 2019). The United States District Court for the Eastern District of California denied that motion without even requiring the government to respond. *Id*. The court held that "even if the BIA improperly included [individuals] on the Registered Voters List, the Secretarial Election will not harm Plaintiffs in a way that cannot be remedied." *Id*. at *5.[5]

Most recently, that same faction sued Interior in June 2022 seeking to halt the same electoral process the Burley Faction seeks to halt in this case. Judge Cobb denied a motion for preliminary injunctive relief. *CVMT IX*, 2023 U.S. Dist. LEXIS 206197. The Court rejected the idea that "the mere participation of these alleged nonmembers clearly constitutes an imminent, irreparable injury." *Id.* at *10–11. Thus, "while Plaintiffs insist that an overinclusive political process presents a risk of irreparable harm, they have not persuasively distinguished their current request from that of the multiple—and unsuccessful—emergency motions filed by other CVMT factions." *Id*. at *11. Further, any suggestion that the electoral process could cause imminent or irreparable harm failed because the "[p]laintiffs will have a chance to challenge the results of any allegedly improper election." *Id.* at *12 (citing 25 C.F.R. §§ 81.43-45).

---

[5] BIA ultimately invalidated the 2019 election because "a significant genealogical error was discovered." *Cal. Valley Miwok Tribe v. Haaland (CVMT IX)*, 2023 U.S. Dist. LEXIS 206197, at *6 (D.D.C. Nov. 17, 2023). The discovery of that error is what eventually led to the Newland Decision.

**III.    Procedural History**

The Burley Faction filed the present Complaint on April 4, 2024 (ECF No. 1)—sixteen months after the Bureau announced its intent to use CBID forms to collect information for purposes of determining eligibility to participate in the present election.  The Complaint includes two claims for relief.  The first alleges that Federal Defendants have violated the Administrative Procedure Act (APA) by not undertaking a rulemaking with respect to Certificates of Degree of Indian Blood.  Compl. ¶¶ 111–25.  The second claim for relief alleges that "use of the Certificate of Degree of Indian Blood" form to assist in identifying eligible participants for the election violates the Fourteenth and Fifth Amendments of the United States Constitution.  . ¶¶ 126–37.

Federal Defendants moved to dismiss the Complaint.  *See* ECF No. 11.  That motion was fully briefed as of July 12.

Shortly after Judge Cobb granted summary judgment in favor of Federal Defendants in *CVMT X*, the Burley Faction filed yet another suit.  *See* Compl., *Burley v. Haaland*, No. 24-cv-02455 (D.D.C. Aug. 23, 2024), ECF No. 1.  The new case alleges that the Bureau acted unlawfully in accepting the petition that requested the Secretarial election now scheduled for October 1.  *Id.*  The named plaintiffs in that new case overlap (though not entirely) with the named Plaintiffs in the present case.  After that more recent case was assigned to Judge Cobb—who has previously denied a motion to enjoin the Secretarial election, *CVMT IX*, 2023 U.S. Dist. LEXIS 206197—the Burley Faction moved for preliminary injunctive relief in this case (not the more recent one before Judge Cobb).  Pls.' Mot. for Prelim. Inj., ECF No. 18 ("Pls.' Mem.").

**STANDARD OF REVIEW**

The grant of a preliminary injunction is an "'extraordinary and drastic remedIdy.'" *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (citation omitted).  "As an extraordinary remedy, courts should grant such relief sparingly." *Konarski v. Donovan*, 763 F. Supp. 2d 128, 133

9

(D.D.C. 2011).  A party seeking a preliminary injunction must demonstrate four elements: (1) that it is likely to suffer irreparable injury absent the injunction; (2) a substantial likelihood of success on the merits; (3) that the balance of the equities tips in its favor; and (4) that the injunction would further the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "It is the movant's burden to make a 'clear showing' that all four factors support an injunction." *CVMT IX*, 2023 U.S. Dist. LEXIS 206197, at *9 (citing *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014)).

Plaintiffs claim they only need to show "serious questions going to [the] merits."  Pls.' Mem. 9, 26.  "The D.C. Circuit has, in the past, followed the 'sliding scale' approach to evaluating preliminary injunctions, where 'a court, when confronted with a case in which the other three factors strongly favor interim relief may exercise its discretion to grant [preliminary relief] if the movant has made a substantial case on the merits." *Singh v. Carter*, 185 F. Supp. 3d 11, 16 (D.D.C. 2016) (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)).  "The continued viability of the sliding scale approach is highly questionable, however, in light of the Supreme Court's holding in *Winter*[.]" *Id*.  Indeed, "the D.C. Circuit has suggested, but not decided, that the sliding scale approach does not survive *Winter*'s holding." *Clevinger v. Advocacy Holdings, Inc.*, No. 23-cv-1159, 2023 U.S. Dist. LEXIS 121860, at *11 n.2 (D.D.C. July 15, 2023) (citing *Sherley v. Sebelius,* 644 F.3d 388, 392 (D.C. Cir. 2011)).  But as the D.C. Circuit has noted, a court need not resolve that question where a movant would fail under either standard.  *Sherley*, 644 F.3d at 393.

## ARGUMENT

Plaintiffs have failed to meet their burden under any of the four preliminary injunction factors.  The motion should therefore be denied.

I.    **Plaintiffs Are Not Irreparably Harmed by the Bureau's Use of CBID Forms to Collect Information Necessary for Determining Eligibility.**

Plaintiffs have failed to demonstrate an irreparable harm that would justify the extraordinary remedy of preliminary injunctive relief.  A "court need not analyze the remaining factors if a movant fails to carry its burden of showing irreparable injury—'that alone is sufficient' to deny a motion for preliminary injunction."  *CVMT IX*, 2023 U.S. Dist. LEXIS 206197, at *9 (quoting *CityFed Fin. Corp. v. Off. Of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995)); *Clevinger*, 2023 U.S. Dist. LEXIS 121860, at *10-11 (citation omitted).

As as initial matter, it is not clear what supposedly irreparable harm Plaintiffs are seeking to prevent.  Plaintiffs have not submitted any declarations that would provide facts to meet their burden.  Plaintiffs also (contrary to Local Rules) did not provide a proposed order.  *See* LCvR 7(c) ("Each motion and opposition shall be accompanied by a proposed order.").[6]

In places, the motion references the Bureau's acceptance of a petition to undertake the Secretarial election.  *See* Pls. Mem. 8, 21.  But that petition is at issue in the newer case before Judge Cobb, not the present one.  Thus, any irreparable harms emanating from that alleged agency action—assuming there were any—could not serve as a basis for a preliminary injunction related to the Bureau's use of CDIB forms.  *See Rai v. Biden*, 567 F. Supp. 3d 180, 201 (D.D.C. 2021) ("A party seeking preliminary injunctive relief must show that they imminently will be irreparably harmed by the *challenged* action or inaction." (emphasis added)).

Even when focusing on the present case, Plaintiffs waffle.  They state in the motion's

---

[6] Local Rules do not allow for reply briefs as of right on motions for preliminary injunctions. *See* LCvR 65.1(c).  Nor could Plaintiffs attempt to fill their harm gap by submitting declarations on reply.  *See id.* ("The *application* shall be supported by all affidavits on which the plaintiff intends to rely. . . .  Supplemental affidavits . . . may be filed only with permission of the Court." (emphasis added)); *see also Green Oceans v. U.S. Dep't of the Interior*, 2024 U.S. Dist. LEXIS 110396, at *9–12 (D.D.C. June 24, 2024) (denying effort to establish standing by attaching affidavits to a reply brief).

introduction that they are seeking to enjoin "further use of the Certificate of Degree of Indian Blood" and "determinations related the [sic] Certificate of Indian Blood application process[.]" Pls.' Mem. 7.  Thus, one would think it is use of the forms that is allegedly causing harm.

But later on that same page, Plaintiffs state they are seeking to enjoin "any action derived from the use of the Certificate of Degree of Indian Blood to organize, reorganize, or hold an election to adopt a tribal constitution . . . ." *Id.*  Thus, it appears Plaintiffs base their alleged harm on the idea that individuals who used the forms to submit genealogical information will participate in the election.  *See also id.* at 8 (use of forms "has authorized individuals . . . to participate in a Secretarial election."); *id*. at 9 ("Defendants scheduling and intention on holding an unlawful Secretarial Election based on issues squarely before this Court . . . ."); *id.* at 27 (stating Plaintiffs' "feared outcome" is the October election).  Either way, Plaintiffs have not met their burden.

## A.      Plaintiffs Are Not Harmed by Interior's Collection of Genealogical Information and, In Any Event, the Supposed Harm is Moot.

Plaintiffs have not met their burden to demonstrate that the Bureau's use of CDIB forms is likely to cause an irreparable harm to Plaintiffs.  The Bureau is using the forms here simply as a means by which to collect the information necessary to determine eligibility.  Plaintiffs' delay in seeking preliminary injunctive relief weighs against any finding of irreparable harm.  And in any event, Plaintiffs have already submitted applications with the requested forms and information, rendering moot any form-derived harm.[7]

---

[7] Plaintiffs' effort would also fail to the extent they are attempting to articulate a harm to the Tribe or other individuals from the Bureau's use of CDIB forms.  The Tribe was not required to submit any information on a CDIB form.  And the irreparable harm for purposes of a preliminary injunction must be harm to the movant, not a third party.  *See Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish . . . that *he* is likely to suffer irreparable harm in the absence of preliminary relief." (emphasis added)).

The Court's irreparable harm inquiry can start and end with the role CDIB forms are actually playing here. A CDIB—referring to the certification, not the form—if approved, "[is] issued by the BIA and [is] the BIA's certification that an individual possesses a specific quantum of Indian blood. A CDIB entitles the holder to participate in some government assistance programs." *Davis v. United States*, 192 F.3d 951, 956 (10th Cir. 1999). But here, the Bureau is not certifying the quantum of anyone's Indian blood. Instead, the Bureau is simply using *the form* as a means by which to collect the information necessary to determine if a given applicant falls under the groups the Newland Decision identified as being eligible to participate in Tribal organization. Long Decl. ¶ 11; Nov. 2022 Public Notice, ECF No. 1-2 at 16–17. If the Court were to enjoin the Bureau's use of the CDIB form for that purpose, the Bureau would still need to collect that information given the Washburn and Newland decisions.

Plaintiffs are simply wrong in asserting that the Bureau is collecting information about, or determining, race (Pls.' Mem. 11) or certifying whether applicants are Tribal members (*id.* at 20–21, 24). Plaintiffs' motion is tellingly devoid of any facts to support either of those allegations. To the contrary, the Bureau is using the forms to collect information to determine eligibility to participate in a Secretarial election based on the structure that the Eastern District of California and Ninth Circuit upheld in the face of a prior challenge from the Burley Faction. Mot. to Dismiss 9-11. Judge Cobb recently upheld it again in *CVMT X*.

Even if Plaintiffs were potentially harmed by the Bureau's use of the forms, their delay in challenging that use weighs against an injunction at this late stage. Plaintiffs themselves note that "[f]rom October 2021 until January 2023, . . . the [Bureau] . . . announced the Certificate of Degree of Indian Blood process at issue in this case." Pls.' Mem. 11; *see* Long Decl. ¶ 10. But Plaintiffs did not file suit until April 2024 and did not seek preliminary injunctive relief until

now.  Plaintiffs do not explain why, if they were so concerned with the use of CDIB forms, they did not file suit when the Bureau announced its intent to use the forms.

"An unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm." *Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005).  The D.C. Circuit and judges on this Court have repeatedly rejected requests for preliminary injunctive relief where the movant sat on their rights for much shorter periods than Plaintiffs' delay here.  *See Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (forty-four day delay); *Cayuga Nation v. Zinke*, 302 F. Supp. 3d 362, 374 (D.D.C. 2018) (seven months); *AARP v. U.S. Equal Emp. Opportunity Comm'n*, 226 F. Supp. 3d 7, 22 (D.D.C. 2016) (five months); *Davis v. Billington*, 76 F. Supp. 3d 59, 66 n.11 (D.D.C. 2014) (six months); *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014) (sixty-two days); *Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 44 (D.D.C. 2000) (two months).

Plaintiffs have also already complied with the process they challenge.  Plaintiffs admit they "submitted their applications" in response to requests for CDIB forms in a prior organizational process.  Compl. ¶¶ 55-57, ECF No. 1; *see also* Pls.' Mem. 13–14 (admitting the same).  And in the process Plaintiffs now challenge, they again submitted the requested information on CDIB forms.  Long Decl. ¶ 12.  Indeed, Plaintiffs did so in January 2023 (Long Decl. ¶ 12)—more than a year before Plaintiffs filed this suit.  Thus, even if the Bureau's desire to collect genealogical information presented an irreparable harm to Plaintiffs that could justify preliminary injunctive relief, the harm has occurred.  Any request to enjoin use of CDIB forms to collect that information is now moot.  *See Pinson v. U.S. Dep't of Justice*, No. 18-cv-486, 2018 U.S. Dist. LEXIS 184528, at *13 (D.D.C. Oct. 29, 2018) (citing *Winter*, 555 U.S. at 20).

14

**B.      Any Harm Resulting from the Forthcoming Secretarial Election Is Speculative And Could Later Be Redressed.**

Any harm emanating from the forthcoming Secretarial election also does not constitute irreparable harm warranting an injunction.  Plaintiffs posit that the Tribe's sovereignty will be harmed if the election proceeds because individuals who are not (in Plaintiffs' view) members of the Tribe registered and will vote in the election.  Pls.' Mem. 25.  Plaintiffs' premise appears to be that the proposed constitution will alter the composition of the Tribe and make the Tribe something other than what (in Plaintiffs' view) the Tribe should be.  There are several problems with this theory.

As an initial matter, it presupposes that the Tribe is the Burley Faction.  Courts have repeatedly rejected that assumption, including a conclusion that "the record is replete with evidence that the Tribe's membership is potentially significantly larger than just [ ] five individuals." *Cal. Valley Miwok Tribe v. Jewell (CVMT III)*, 5 F. Supp. 3d 86, 98 (D.D.C. 2013); *see also CVMT II*, 515 F.3d at 1267 ("Although [the Tribe] . . . has a potential membership of 250, only Burley and her small group of supporters had a hand in adopting her proposed constitution.  This antimajoritarian gambit deserves no stamp of approval from the Secretary."); *CVMT V*, 2017 U.S. Dist. LEXIS 84282, at *14-16 ("Issue preclusion prevents plaintiffs from relitigating whether the Tribe consists of more than five members."); *CVMT VI*, 745 F. App'x at 47 ("Tribal membership is a matter to be determined by the tribe, . . . the Department of the Interior also has the responsibility to ensure that organized tribes are representative of potential membership.").

Factions purporting to represent an unorganized tribe do not gain the authority to invoke the tribe's sovereignty simply by adopting the tribe's name in a complaint.  *Cal. Valley Miwok Tribe v. United States (CVMT I)*, 424 F. Supp. 2d 197, 200–03 (D.D.C. 2006);  *Aguayo v. Jewell*,

827 F.3d 1213, 1224 (9th Cir. 2016) ("Secretary properly exercises discretion not to approve a governing document when it does not 'reflect the involvement of the whole tribal community.'") (quoting *CVMT II*, 515 F.3d at 1266–67).

The assumption that the Burley Faction constitutes the Tribe bleeds into Plaintiffs' efforts to articulate harm.  For example, Plaintiffs contend that the election would impact tribal sovereignty by overriding the Tribe's existing organization and imposing membership requirements upon the Tribe that are contrary to the Tribe's existing membership criteria.  Pls.' Mem. 22, 24–29.  But the Burley Faction's General Council is not the Tribe's governing body. *CVMT V*, 2017 U.S. Dist. LEXIS 84282, at *20–21.  The Tribe is unorganized and does not have a constitution or bylaws that would set forth any membership criteria.  Fed. Defs.' Reply in Supp. of Mot. to Dismiss ("Fed. Defs.' Reply") 11, ECF No. 15 (collecting cases); Long Decl. ¶ 7.  Certainly, *the Burley Faction* has claimed to be the organized Tribe and adopted membership criteria held out as Tribal criteria.  *See, e.g.,* Pls.' Mem. 25 (noting without citation "the Tribe's own defined membership criteria").  But the idea that the Burley Faction is empowered to unilaterally organize as the Tribe and define Tribal membership has been rejected by several courts.  *CVMT I*, 424 F. Supp. 2d at 200–03; *CVMT II*, 515 F.3d at 1263; *CVMT III*, 5 F. Supp. 3d at 97; *CVMT V*, 2017 U.S. Dist. LEXIS 84282, at *17.  Indeed, the Burley Faction made the same assertions of irreparable harm in its two prior efforts to enjoin then-forthcoming Secretarial elections.  The courts rejected it both times.[8]  *See CVMT IV*, 2016 U.S. Dist. LEXIS

---

[8] Plaintiffs also claim (without any factual support) that the Tribe's leadership dispute ended in 2017.  Pls.' Mem. 30.  This, too, is incorrect.  Plaintiffs appear to be reviving their argument that Yakima Dixie's death mooted the dispute over the Tribe's leadership.  *See* Mot. to Dismiss at 11–13.  The U.S. District Court for the District of New Mexico rejected that argument in another of the Burley Faction's collateral challenges to the Washburn Decision, holding that "none of the dispositive findings and conclusions in [Assistant] Secretary Washburn's 2015 Decision is

16

147053 at * 7; Tr. of Apr. 12, 2019 Arg. at 43:17–22, *CVMT VII*, No. 19-cv-917 (D.D.C. Apr. 12, 2019).

Nor is the Bureau attempting to impose tribal membership criteria upon the Tribe. Membership requirements would be for the Tribe to decide after it successfully organizes. *See CVMT VI*, 745 F. App'x at 47. Indeed, the Bureau is not even requiring the Tribe to organize. Rather, the Bureau is acting upon a request for a Secretarial election and assisting the Tribe through that process. *See* Long Decl ¶¶ 6, 15. And the Bureau is doing so consistent with the D.C. and Ninth Circuits' conclusions—as materialized in the Washburn and Newland decisions—that organization include the entire tribal community, not just specific factions of it. *CVMT II*, 515 F.3d at 1267-68; *CVMT VI*, 745 F. App'x at 47.

But even setting aside the faction-as-tribe assumption, there is still no irreparable harm that would justify enjoining the election proceedings. That is so for three reasons.

First, as explained above (*supra* at 13–14), Plaintiffs sat on their rights. The Bureau announced its intent in November 2022 to assist the Tribe in organizing under the IRA consistent with the Newland Decision. Long Decl ¶¶ 9, 10; Nov. 2022 Public Notice, ECF No. 1-2 at 16–17. That announcement included a request for information on CDIB forms. *Id*. Plaintiffs' delay in seeking to enjoin the Bureau's open efforts to implement the Newland Decision "undermines [their] showing of irreparable injury." *Heart 6 Ranch, LLC v. Zinke*, 285 F. Supp. 3d 135, 144 (D.D.C. 2018) (citation omitted); *Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 933

---

affected by Yakima Dixie's death." *In re $323,647.60 in Funds*, 2019 U.S. Dist. LEXIS 25723, *10–13 (D.N.M. Feb. 19, 2019) (discussing the Ninth Circuit's rejection of the same argument). And California state courts sanctioned a previous Burley attorney for arguing that gaming funds should be released to the Burley Faction because Mr. Dixie's death resolved the Tribe's leadership dispute. *Cal. Valley Miwok Tribe v. Cal. Gambling Control Comm'n*, 2020 Cal. App. Unpub. LEXIS 642, at *9–10, *24–38, *41–55 (Cal. App. Jan. 29, 2020); *Corrales v. Cal. Gambling Control Comm'n*, 93 Cal. App. 5th 286, 292, 304 (Cal. Ct. App. 2023).

F.Supp.2d 58, 81 (D.D.C. 2013).  To the extent Plaintiffs are claiming some harm emanating from the Bureau's acceptance of a petition to undertake the election, the Complaint in this case does challenge that acceptance.

Second, any harm to what Plaintiffs fear will result from the organization process is speculative because Plaintiffs prejudge the election's outcome.  To justify preliminary injunctive relief, "the injury must be both certain and great; it must be actual and not theoretical.  Injunctive relief 'will not be granted against something merely feared as liable to occur at some indefinite time[.]'" *Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) (citation omitted).  The Tribe would only organize under the proposed Constitution *if* a majority of votes to adopt the Constitution, and *if* the BIA Regional Director then denies any election challenges and approves the election results.  25 C.F.R. § 81.45.

Because Plaintiffs' asserted "injuries depend on actions that may or may not be taken . . . they are not certain." *Cayuga Nation* , 302 F. Supp. 3d at 373.  And "Plaintiffs have not cited . . . any case law to suggest that the disputed, non-final results of a Secretarial Election pose a risk of irreparable harm by infringing upon a tribe's sovereignty." *CVMT VIII*, 2019 U.S. Dist. LEXIS 64432, at *6.  Indeed, just as Judge Lamberth held in denying a previous Burley Faction effort to enjoin a Secretarial election, the Burleys are not irreparably harmed by electoral process because "until the election results are known, any injury remains speculative."  Tr. of Apr. 12, 2019 Arg. at 44:10–13, *CVMT VII,* No. 19-cv-917 (D.D.C. Apr. 12, 2019).

Third, the supposed harm is not irreparable because the Secretarial election results, if approved by the Regional Director, can be challenged under the APA (assuming all other jurisprudential requirements are met).  Injuries from agency actions are not irreparable if the possibility that non-compensatory "corrective relief will be available at a later date" through "the

ordinary course of litigation." *St. Croix Chippewa Indians of Wis. v. Kempthorne*, 535 F. Supp. 2d 33, 36–37 (D.D.C. 2008). This is true even where a tribal faction claims an injury to their alleged "sovereign governmental authority." *Cayuga Nation*, 302 F. Supp. 3d at 373–74.

If it comes to pass that the Regional Director approves the outcome of a Secretarial election by which the Tribal community ratifies a Constitution, the Regional Director's decision would be a final agency action subject to judicial review. 25 C.F.R. § 81.45(f). Plaintiffs— again assuming there are no other jurisprudential problems (including preclusion and administrative waiver) with the claims presented—may "challenge the BIA's [potential future] decision to finalize the results of the election under the APA with the very same argument" they advance here, "that the BIA improperly allowed non-members of the tribe to vote." *CVMT VIII*, 2019 U.S. Dist. LEXIS 64432, at *7–8. As this Court held, the Burley Faction is not irreparably harmed by the electoral process because later judicial review is available under the APA. Tr. of Apr. 12, 2019 Arg. at 44:23–45:1, *CVMT VII,* No. 19-cv-917 (D.D.C. Apr. 12, 2019). Just as in 2019, Plaintiffs have not met their burden to demonstrate irreparable harm and their motion for preliminary injunctive relief must therefore be denied.

## II. Plaintiffs Are Not Likely to Succeed on the Merits of Their Claims Because Those Claims Suffer From Numerous Threshold Deficiencies.

Plaintiffs have also not met their burden to demonstrate a likelihood of success on the merits of their claims. The Complaint includes two claims for relief: (1) an alleged violation the APA in the Bureau having not undertaken a rulemaking with respect to Certificates of Degree of Indian Blood, Compl. ¶¶ 111–25; and (2) alleged violations of the Fourteenth and Fifth Amendments of the United States Constitution from the Bureau's "use of the Certificate of Degree of Indian Blood" form to assist in identifying eligible participants for the election, Compl. ¶¶ 111–25.

Despite the Complaint, Plaintiffs attempt to indirectly rely on the petition claim at issue in newer case before Judge Cobb, and raise other grievances about the pre-election process.  *See* Pls.' Mem. 7, 8, 21, 25.  But their likelihood of success on the merits of the present case is, of course, necessarily governed by the claims Plaintiffs have brought in this case.

The jurisdictional and other deficiencies with Plaintiffs' two claims are set forth in detail in Federal Defendants' motion to dismiss, ECF No. 11.  Despite that motion having been fully briefed for nearly two months, Plaintiffs ignore it in attempting to explain their likelihood of success.  We summarize here some of the reasons why Plaintiffs will not succeed on their claims.

First, Plaintiffs' claims are barred by res judicata and collateral estoppel.  Mot. to Dismiss 19–26; Fed. Defs.' Reply 4–15, ECF No. 15.  The Burley Faction litigated and lost a challenge to the Washburn Decision's requirement that the Bureau use lineal descent for purposes of determining eligibility.  *CVMT IV*, 2016 U.S. Dist. LEXIS 147053; *CVMT V*, 2016 U.S. Dist. LEXIS 147053, *aff'd CVMT VI*, 745 F. App'x 46.  But the core of Plaintiffs' two claims for relief here is just that—an attack on the Bureau's use of lineal descent from specific Miwok Indians of Calaveras County to determine eligibility to participate in Tribal organization efforts.  Compl. ¶¶ 50–67, 118, 123–24, 129–37.  The only purpose of the CDIB form is a means by which to collect the basic genealogical information necessary to determine whether each individual who wishes to participate in the organizational process qualifies under the eligibility groups set out in the Washburn and Newland decision and again recently upheld by Judge Cobb in *CVMT X*.  *See* Nov. 2022 Public Notice, ECF No. 1-2 at 16–17; *see* Long Decl. ¶ 10, 11.

Plaintiffs' two decades of unsuccessful litigation also preclude numerous foundational elements in the Complaint.  Among other things, this includes contentions that: (1) the Tribe has already been organized, *contra CVMT II*, 515 F.3d at 1267, and *CVMT III*, 5 F. Supp. 3d at 97;

20

(2) the Bureau, through the election process, is interfering with the Tribe's internal governance, *contra CVMT V*, 2017 U.S. Dist. LEXIS 84282, at *17; and (3) the Burley Faction constitutes the Tribe's only membership, *contra CVMT II*, 515 F.3d at 1265 n.5, 1267; *CVMT III*, 5 F. Supp. 3d at 95, 97-99; *CVMT V*, 2017 U.S. Dist. LEXIS 84282, at *11–16; *and CVMT VI*, 745 F. App'x at 47.

Second—and particularly if one assumes Plaintiffs are challenging only the use of CDIB forms and nothing more—Plaintiffs lack standing because they have not suffered any legally cognizable injury that the Court can redress.  Mot. to Dismiss 26–30; Fed. Defs.' Reply 15–20. Plaintiffs contend that the Bureau violated the APA because it did not engage in notice and comment rulemaking regarding the entire CDIB program.  Compl. ¶¶ 111-25.  But Plaintiffs fail to identify any harm to them associated with the supposed failure to engage in rulemaking.  Nor does the Complaint explain how Plaintiffs have been personally injured by the Bureau's collection of information about lineal descent, whether through CDIB forms of by any other means.  This is fatal to Plaintiffs' standing.  *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) ("For a plaintiff to get in the federal courthouse door and obtain a judicial determination of what the governing law is, the plaintiff cannot be a mere bystander, but instead must have a 'personal stake' in the dispute.")

Plaintiffs want to stop non-Burley Faction "individuals" from "participat[ing] in the formation of a tribal constitution and tribal law" based on ancestry, Compl. ¶¶ 3, 5, because it would (in Plaintiffs' view) violate the Tribe's purported "laws and rules related to membership." *Id*. at ¶ 136.  But every court to consider the question has rejected the premise that the Burley Faction is the Tribe.  *See supra* at 15–17.  And in any event, such harm has no causal link to the method (CDIB forms) the Bureau chose to collect information for purposes of determining

eligibility.  Further, even assuming Plaintiffs are correct about their membership point (they are not), any harm that might result from the yet-to-be-conducted election is speculative.  The organization process has no effect unless the Community adopts, and the Bureau approves, a constitution.  Supposed harms from Tribal organization therefore cannot presently provide a basis for Article III standing.  *See Oregonians for Floodplain Prot. v. U.S. Dep't of Com.*, 334 F. Supp. 3d 66, 72-73 (D.D.C. 2018).

Third, Plaintiffs' claims are not ripe because the Secretarial election has not occurred, and Plaintiffs would have an opportunity to challenge its outcome.  Mot. to Dismiss 30–37; Fed. Defs.' Reply 20–24.  If the Tribal community votes in favor of adopting a Constitution and the Bureau ultimately approves that Constitution—neither of which is predetermined to take place— there will be a challengeable final agency action within the meaning of the APA.[9]  *See* 25 C.F.R. § 81.43–45; *CVMT IX*, 2023 U.S. Dist. LEXIS 206197, at *11–12; *CVMT VIII*, 2019 U.S. Dist. LEXIS 64432, at *6–8.

Not only are Plaintiffs unlikely to succeed on the merits of their claims, but the claims should be dismissed for lack of jurisdiction and failure to state a claim.

**III.    The Balance of Harms and Public Interest Weigh Heavily in Favor of Allowing the Election to Proceed.**

The final two preliminary injunction factors—balance of the harms and public interest— also counsel strongly in favor of denying Plaintiffs' motion.  When an injunction is sought against the government, these two factors merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Plaintiffs' motion seeks to prevent hundreds of people whom the Department of the

---

[9] Plaintiffs would likely face other jurisprudential hurdles in such a suit.  For example, Plaintiffs may face preclusive consequences from the prior cases they litigated and lost.  Plaintiffs also chose not to register to vote in the election.  *See* Long Decl. ¶ 25.  This may limit Plaintiffs ability to challenge certain aspects of the election process.

Interior has determined to be eligible to participate in the organizational effort from having a voice in how the Tribe "make[s] [its] own laws and [is] ruled by them." *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 332 (1983) (internal citations and quotation marks omitted). The public interest militates strongly in favor of permitting the greater Tribal community to continue to make what progress it can toward organization.

Indeed, "[i]ssuing an injunction preventing the BIA from determining the Tribe's proper government undermines the public policy favoring the promotion of tribal self-governance." *CVMT IV*, 2016 U.S. Dist. LEXIS 147053, at *7–8. And as Judge Lamberth found in denying the Burley Faction's similar 2019 motion, delaying a Secretarial election would impose harm because "[i]t would frustrate hundreds of potential tribe members' attempts to participate in tribal organization[], further denying them access to federal programs, services, and funding". Tr. of Apr. 12, 2019 Arg. at 45:5–14, *CVMT VII,* No. 19-cv-917 (D.D.C. Apr. 12, 2019). Plaintiffs' effort to enjoin the Tribe's organizational process is not in the public interest.

## CONCLUSION

Plaintiffs have not shown any harm (let alone irreparable harm) from the Bureau's use of CDIB forms to collect information necessary to determine those eligible to participate in the Tribal community's efforts to organize under the IRA. Plaintiffs' two claims challenging the Bureau's use of those forms suffer from numerous deficiencies, meaning Plaintiffs will not prevail on the merits. And the public interest weighs in favor of permitting the Tribal community to proceed with its efforts to organize. As Judge Lamberth did in nearly identical circumstances in 2019, the Court should deny Plaintiffs' motion for preliminary injunctive relief.

September 10, 2024

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

*s/ Matthew Marinelli*
Matthew Marinelli
*s/ Kristofor R. Swanson*
Kristofor R. Swanson
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0293
Tel: (202) 305-0248
Fax: (202) 305-0275
matthew.marinelli@usdoj.gov
kristofor.swanson@usdoj.gov
*Attorneys for Federal Defendants*

**Of counsel:**

Janet Fealk
Department of the Interior
Office of the Solicitor
Pacific Southwest Region
Sacramento, CA

24